## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KEVIN ROSSMAN, Individually and For Others Similarly Situated | **Case No. 1:19-cv-5768-EEC** |
| | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| EN ENGINEERING, LLC | CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## ROSSMAN'S MOTION TO DISQUALIFY DEFENDANT'S COUNSEL

Michael A. Josephson
Taylor A. Jones
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

Richard (Rex) J. Burch
BRUCKNER BURCH, P.L.L.C.
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
(713) 877-8788

Douglas M. Werman
Maureen A. Salas
WERMAN SALAS P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

**Attorneys for Plaintiffs**

## TABLE OF CONTENTS

1.  Conferral efforts before filing this motion. ...........................................................................2

2.  Why ENE's advice of counsel good faith defense to FLSA claims requires disqualification........2

3.  Koehler Dinkel deliberately concealed its role to protect itself and prejudice Rossman................4

    a.  Renee Koehler knew from the beginning that she would be a material witness. ........................4

    b.  Koehler Dinkel delayed disclosing its role for months...................................................................5

4.  Rule 3.7 mandates that Renee Koehler and Koehler Dinkel be disqualified................................12

    a.  Renee Koehler is a necessary witness...............................................................................................14

    b.  Koehler Dinkel must be disqualified ...............................................................................................17

5.  ENE and Koehler Dinkel continue to withhold responsive information. ....................................19

6.  Conclusion and Prayer.....................................................................................................................20

# TABLE OF AUTHORITY

*Page(s)*

*Cases*

Bank of Am. v. Saville,
  416 F.2d 265 (7th Cir. 1969) ................................................................................ 13
Bankston v. State of Ill.,
  60 F.3d 1249 (7th Cir. 1995) ................................................................................. 3
Barry v. Medtronic, Inc.,
  2015 WL 12915556 (E.D. Tex. Aug. 14, 2015) .................................................. 17
Berger v. Perry's Steakhouse of Illinois, LLC, No. 14 C 8543,
  2019 WL 7049925 (N.D. Ill. Dec. 23, 2019) ........................................................ 2
Brooklyn Sav. Bank v. O'Neil,
  324 U.S. 697 (1945) .............................................................................................. 2
Burton v. DRAS Partners, LLC,
  2019 WL 5550579 (N.D. Ill. Oct. 27, 2019) ........................................................ 3
Castro v. Chicago Housing Authority,
  360 F.3d 721 (7th Cir. 2004) ................................................................................. 3
Cossette v. Country Style Donuts, Inc.,
  647 F.2d 526 (5th Cir. 1981) ............................................................................... 13
Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.,
  2006 WL 1544621 (W.D. Tex. May 31, 2006) ............................................. 17, 18
Dominici v. Bd. of Educ. of City of Chicago,
  881 F. Supp. 315 (N.D. Ill. 1995) .......................................................................... 3
Edwards v. KB Home,
  2015 WL 4430998 (S.D. Tex. July 18, 2015) ...................................................... 20
Garcia v. Zenith Elecs. Corp.,
  58 F.3d 1171 (7th Cir. 1995) ................................................................................. 3
Hearn v. Rhay,
  68 F.R.D. 574 (E.D. Wash. 1975) ......................................................................... 3
In re Gibrick,
  562 B.R. 183 (Bankr. N.D. Ill. 2017) .................................................................. 13
Jones v. City of Chicago,
  610 F. Supp. 350 (N.D. Ill. 1984) .................................................................. 13, 16
McLaughlin v. Lunde Truck Sales, Inc.,
  714 F. Supp. 916 (N.D. Ill. 1989) .......................................................................... 3
Miller v. Colo. Farms,
  2001 WL 629463 (D. Colo. Jan. 16, 2001) ......................................................... 17
Murray v. Metro. Life Ins. Co.,
  583 F.3d 173 (2d Cir. 2009) ................................................................................ 13
Rego v. Liberty Mut. Managed Care, LLC,
  367 F. Supp. 3d 849 (E.D. Wis. 2019) ................................................................... 3
Sec. & Exch. Comm'n v. Nutmeg Group, LLC, 09-CV-1775,
  2017 WL 3269389 (N.D. Ill. Aug. 1, 2017) ................................................... 12, 15

*Senegal v. Fairfield Indus., Inc.*, CV H-16-2113,
  2018 WL 6079354 (S.D. Tex. Nov. 21, 2018) ............................................................... 12
*Shea v. Galaxie Lumber & Constr. Co.*,
  152 F.3d 729 (7th Cir. 1998) .............................................................................................3
*Southwire Co. v. Essex Grp., Inc.*,
  570 F. Supp. 643 (N.D. Ill. 1983) .....................................................................................3
*Teledyne Indus., Inc. v. Associated Mills, Inc.*,
  1985 WL 686 (N.D. Ill. Apr. 22, 1985)................................................................... Passim
*Times Herald Printing Co. v. Dallas Morning News Co.*, 86 C,
  1987 WL 20411 (N.D. Ill. Nov. 25, 1987) ...................................................................... 16
*Tomeo v. W & E Commc'ns, Inc.*, No. 14 C,
  2016 WL 8711483 (N.D. Ill. Sept. 30, 2016) ...................................................................2
*United States v. Swafford*,
  2004 WL 5575829 (E.D. Tenn. Sept. 15, 2004) ............................................................. 17
*Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.*,
  546 F.2d 530 (3d Cir. 1976)............................................................................................ 14
*Walton v. Diamond*,
  2012 WL 6587723 (N.D. Ill. Dec. 14, 2012)................................................................. 16

**Statutes**

29 U.S.C. § 216(b) .............................................................................................................. 1, 2
29 U.S.C. § 260 .................................................................................................................. 2, 12

**Rules**

FED. R. CIV. P. 23 ...................................................................................................................1

**Regulations**

29 C.F.R. § 790.22(a) ...............................................................................................................2
29 CFR 541.604........................................................................................................... 10, 15, 16
29 CFR §541.604(b)..................................................................................................................1

**Other Authorities**

L.R. 83 ................................................................................................................................... 13
or 2017................................................................................................................................... 19

It is uncontested that Defendant EN Engineering, LLC (ENE) is relying on the advice of Renee Koehler (its trial counsel of record) to support its good faith affirmative defense. Through discovery, it was uncovered that Koehler provided ENE legal advice at the heart of the issues in this case 1) in 2007 when she provided advice regarding compensation for a project consultant's offer letter, 2) in 2011, when determining the classification for the inspector or project consultant positions at issue in this litigation; and 3) in 2017, when responding to the DOL's investigation of its inspector position—an investigation that ENE claims validates its compensation practices. ENE does not dispute it has waived the attorney-client privilege as to at least some of this advice, and it has produced some of Ms. Koehler's communications from these time periods. ENE maintains, however, that it will not call Ms. Koehler at trial, thereby hoping to insulate her from disqualification. This is insufficient. Koehler is a material witness in this litigation who not only helped to craft the illegal pay practice at issue, but also drafted Jeremey Kulik's demonstrably false statement to the DOL concerning the salary basis test—a test which is at the heart of this litigation.[1]

Rossman claims ENE misclassified him and similarly situated workers and failed to pay them overtime as required. ECF 1. Ms. Koehler instructed, advised, crafted, and blessed ENE's decision to classify its inspectors and project consultants as exempt employees and pay them straight time for overtime. **Only** Ms. Koehler can testify as to the bases for the advice she provided to ENE. Thus, she is a material witness. Critically, the repeated efforts of Ms. Koehler and her firm to conceal and withhold responsive discovery pertinent to her role and ENE's good faith defense reflect a conflict and severe prejudice to Rossman. Ms. Koehler and her firm must either withdraw as counsel, or ENE must withdraw its good faith defense. It can't have both.

---

[1] *See* Ex. 9 (Kulik Deposition) at 143:3-11; 153:21-155:16; *see also* 29 CFR §541.604(b) describing the reasonable relationship requirements.

1.     **Conferral efforts before filing this motion.**

Importantly, prior to filing this motion, ENE and its counsel were given multiple opportunities to voluntarily withdraw. As discussed below, Ms. Koehler was revealed to be the attorney who provided advice on or about January 21, 2020. Subsequent to this disclosure, Rossman's counsel conferred no less than five times regarding the relief requested herein:

- On January 21, 2020, Rossman's counsel requested the extent of Koehler Dinkel's involvement in the classification decision and the DOL audit. Ex. 13.

- On January 29, 2020, Rossman's counsel sent an additional e-mail requesting ENE provide alternative sources to the information possessed by Koehler as counsel.  *Id.*

- On February 4, 2020, Rossman's counsel conferred telephonically with Stephanie Dinkel, giving Koehler Dinkel an opportunity to voluntarily withdraw, and requesting ENE's position on Rossman's motion to disqualify. *See* Ex. 14.

- On February 7, 2020, Rossman's counsel sent a follow-up e-mail requesting ENE's position on the present motion. *Id.*

- On February 13, 2020, Rossman's counsel sent another e-mail requesting ENE's position on the present motion. *Id.*

Efforts to meet and confer finally came to an end on February 19 when Stephanie Dinkel—Ms. Koehler's partner—indicated that they were opposed to this motion. Ex. 15.

2.     **Why ENE's advice of counsel good faith defense to FLSA claims requires disqualification.**

The FLSA's liquidated damage provision provides compensation for an employer's failure to timely pay workers. *See* 29 C.F.R. § 790.22(a), at n.137. The FLSA presumes workers are entitled to an amount equal to their actual damages as liquidated damages. 29 U.S.C. § 216(b). "The burden to prove good faith and reasonableness is substantial and lies with the employer." *Berger v. Perry's Steakhouse of Illinois, LLC*, No. 14 C 8543, 2019 WL 7049925, at *7 (N.D. Ill. Dec. 23, 2019). Such damages are compensatory, not punitive. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). A court may reduce or deny liquidated damages only if the employer shows it acted in good faith and had reasonable grounds not to pay its employees. 29 U.S.C. § 260; *Tomeo v. W & E Commc'ns, Inc.*, No. 14 C 2431, 2016 WL 8711483, at *13 (N.D. Ill. Sept. 30, 2016). Double damages are the norm and single damages

the exception. *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 732 (7th Cir. 1998); *see, e.g., Burton v. DRAS Partners, LLC*, No. 2019-CV-02949, 2019 WL 5550579, at *5 (N.D. Ill. Oct. 27, 2019) (liquidated damages awarded where employer failed to plead or prove good faith).

To prove the good faith defense, an employer must prove both its "subjective intent to comply with the Act, as well as evidence of objective reasonableness in the employer's application of the Act." *Castro v. Chicago Housing Authority*, 360 F.3d 721, 730 (7th Cir. 2004). "To meet the good faith defense's subjective standard, the employer 'must show that he took affirmative steps to ascertain the [FLSA]'s requirements.'" *Rego v. Liberty Mut. Managed Care, LLC*, 367 F. Supp. 3d 849, 863 (E.D. Wis. 2019). "For an employer to establish it had objectively reasonable grounds for believing its actions did not violate the FLSA, it must establish that it took affirmative steps to determine FLSA requirements, but nevertheless, violated the FLSA." *Dominici v. Bd. of Educ. of City of Chicago*, 881 F. Supp. 315, 322 (N.D. Ill. 1995). A lack of an inquiry indicates a lack of good faith. *Bankston v. State of Ill.*, 60 F.3d 1249, 1255 (7th Cir. 1995). ENE pled that it acted in good faith to escape liquidated damages. This defense is not without consequence.

A party who relies on its attorney's advice to establish the good faith defense waives its attorney-client privilege. *See McLaughlin v. Lunde Truck Sales, Inc.,* 714 F. Supp. 916, 920 (N.D. Ill. 1989) (holding "the primary way to assess the validity of [the defendant's alleged good faith] reliance is to investigate attorney/client communications where the defendants' interpretations of DOL actions were established"); *see also Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995) ("the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation"); *Southwire Co. v. Essex Grp., Inc.*, 570 F. Supp. 643, 646 (N.D. Ill. 1983); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (privilege waived where party asserting it has put protected information at issue by making it relevant, and application of privilege would deny opposing party access to information vital to defending claim). "The attorney-client privilege yields to

discovery of all privileged communications regarding the particular advice on which reliance is placed." *Teledyne Indus., Inc. v. Associated Mills, Inc.*, No. 82 C 7525, 1985 WL 686, at *3 (N.D. Ill. Apr. 22, 1985). Importantly, ENE does not contest that it has waived privilege as to its communications with Ms. Koehler prior to this litigation, s*ee* Ex. 5 at 13:18-20 (from Ms. Koehler: "EN Engineering has agreed to produce even the privileged documents that pertain to its affirmative defense"), but it is attempting to limit the waiver by concealing relevant and responsive information and documents.[2]

**3.     Koehler Dinkel deliberately concealed its role to protect itself and prejudice Rossman.**

As addressed below and in Rossman's motion to compel, filed contemporaneously with this motion, ENE's discovery responses and production are severely lacking. Despite the acknowledged waiver of privilege regarding these issues, Koehler Dinkel selectively and deliberately limited ENE's internal search for documents, withholding its own responsive communications regarding payment and classification decisions. Its rationale was self-serving: to foreclose or forestall Rossman from learning Renee Koehler provided the advice underlying the very decisions made the basis of this litigation. Rossman seeks disqualification in part to prevent further delays and misrepresentations arising from this unquestionable conflict of interest.

**a.    Renee Koehler knew from the beginning that she would be a material witness.**

On September 26, 2019, ENE filed an Answer affirmatively pleading that it acted in good faith in paying and classifying Rossman and similarly situated inspectors and project consultants. *See* ECF 14 at 22 (Tenth Affirmative Defense) and 23 (Seventeenth Affirmative Defense). As reflected in the Joint Status Report filed the very next day, the parties acknowledged that a major legal and factual issue in the case was whether ENE's decision to pay Rossman and the putative class members was

---

[2] The waiver of privilege applies only to the advice relevant to the decisions as to the putative class of inspectors and project consultants made the basis of this litigation.

made in good faith. ECF 15 at 3. At this point, Ms. Koehler and Koehler Dinkel knew the advice Koehler provided to ENE was placed at issue, and that her testimony would be crucial for both parties.

It is uncontested that Renee Koehler was the only source of legal advice on the classification and payment of ENE's inspector and project consultant positions.[3] ENE (and Koehler Dinkel) have no other way to show it acted in good faith other than to show it relied on the advice of Ms. Koehler. Thus, Koehler Dinkel understood from the beginning that they should disqualify themselves from this case. Instead, they obfuscated and delayed discovery responses relevant to their role to protect their own interest.

### b. Koehler Dinkel delayed disclosing its role for months.

In keeping with this Court's standing order on the Mandatory Initial Discovery Pilot Project, the parties exchanged disclosures on October 2, 2019. *See* ECF 11, 18, 19. ENE named five witnesses: 1) Plaintiff Kevin Rossman, 2) Michael Simpson, ENE's Chief Human Resource Officer, 3) Jeremy Kulik, ENE Manager, Talent Acquisition, 4) Zach Shoemaker, PMP, and 5) Mitch Hulet, Chief Risk Officer. Ex. 1 at p. 2-4. Of these, only Simpson and Kulik were identified as having any knowledge as to ENE's good faith defense. *See id.* Koehler Dinkel failed to identify Renee Koehler's role, despite its knowledge (and ENE's knowledge) that her advice formed the basis of its defense.

ENE and Koehler also identified only one document relevant to its classification decision: the Illinois Department of Labor Determination dated October 5, 2017. *Id.* at 5. Instead, ENE claimed that its "investigation continues" regarding documents that it may use, and it reserved the right to supplement. *Id.* It is simply inconceivable that additional "investigation" was needed at this time to identify Koehler's role or produce the documents showing her advice. Rossman would not learn of Koehler's involvement for over three months. Rossman propounded his first set of discovery to ENE

---

[3] Ex. 10 (Hulet Deposition) at 90:17-19 (stating the only advice ENE received from counsel was in 2011); 93:12-94:14 (admitting Renee Koehler was the only counsel they sought advice from between 2011 and filing of Rossman's lawsuit); 291:14-16 (representing they pulled emails related to the DOL investigation).

5

on November 12, 2019, including interrogatories and requests for production related to the basis of ENE's classification, payment plan, exemption defenses, efforts made to comply with the law, and the DOL investigation previously raised by ENE. *See* Ex. 2. ENE's responses, issued on December 20, 2019, expressly stated that ENE intended to rely on the advice of counsel in support of its good faith defenses:

> ENE also objects to the extent that the information sought is subject to attorney client privilege and is attorney work product. Subject to the foregoing general and specific objections and without waiving same, when issuing the offer letter to inspectors, Human Resources relied on legal advice, a past audit outside of the statute of limitations, and an audit salary exempt status by the Illinois Department of Labor in October of 2017. Some of the documents relied on include the job description (Bates No. 100-101), 29 C.F.R. 541.604, and the Illinois Department of Labor ruling finding the Inspector position exempt from overtime (Bates No. 104, 288-290). Investigation continues.

*Id.* at ROG 3. It failed to identify its counsel at this time, or produce any documents reflecting its reliance on counsel's advice. *Id.* Instead, it produced only 34 pages related to the DOL's 2017 investigation.[4] See *Id.* Incredibly, ENE again contended that its investigation was continuing, as if it forgot that the sole basis of ENE's good faith defense was Ms. Koehler's advice.

It took multiple demands before Koehler Dinkel would agree to provide the documents related to the internal audit and legal advice referenced in ENE's discovery responses. Ex. 3; Ex. 4. Not until January 10, 2020 during a conference call on outstanding discovery, did Ms. Koehler even reveal the existence of the 2011 investigation. Ex. 5 at 13:6-14:9. At no point in this conversation did Koehler Dinkel reveal that it was Ms. Koehler who provided this legal advice. *See generally id.*

---

[4] The other DOL documents referenced in ENE's discovery responses (ENE 285-306) were not produced until January 8, 2020, after Rossman's counsel followed up on their existence. See Ex. 11.

Ms. Koehler's role was finally revealed when Rossman received supplemental production from ENE on January 20th. ENE produced 15 pages of emails between Koehler and ENE related to her 2011 advice.[5] Ex. 6 (ENE 5109-5124). These documents also indicated that Ms. Koehler provided relevant advice in September 2007 when she ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████. This memo reflects that at the time (2011) the author ████████████████████████████████████████████████████████████ *Id.* These 2007 emails have not been produced, nor are they mentioned on the privilege log. *See* Ex. 7.

Following this production, Rossman's counsel specifically asked for confirmation that these new pages and the previously produced DOL documents represent the complete production on good faith and willfulness. Ex. 8. Koehler Dinkel responded affirmatively and unequivocally:

---

**Sent:** Monday, January 20, 2020 4:48 PM
**To:** Michael A. Josephson <mjosephson@mybackwages.com>; Stephanie Dinkel <sdinkel@kdllclaw.com>
**Cc:** Carl Fitz <cfitz@mybackwages.com>; Julie Lomax <JLomax@mbwages.com>; Taylor Jones <tjones@mybackwages.com>; 'dwerman@flsalaw.com' <dwerman@flsalaw.com>
**Subject:** RE: Rossman v. EN

Hi Michael – our plan was to provide you the actual amended answers today but have not received it back yet from our client.  I will forward as soon as we receive it back.  Regarding your question below, ==we have produced all documents regarding the good faith defense.== Also attached is the privilege log which we thought made it onto the flash drive – sorry about that.  Thanks.

*Renee L. Koehler, Esq.*
**Koehler | Dinkel** LLC

---

*Id.* This was soon revealed to be untrue. ENE and Koehler Dinkel failed to disclose Ms. Koehler's role in the 2017 DOL audit, and they continue to withhold responsive documents.

---

[5] Renee Koehler was notified at this time that Plaintiffs considered her a possible witness. Ex. 13.

In November 2019, Rossman sent a Rule 30(b)(6) deposition notice that included topics related to classification decisions, exemption defenses, good faith and willfulness, and the DOL investigation.[6] Ex. 3. ENE designated its Chief Risk Officer, Mitch Hulet, as its corporate representative.[7] At Hulet's deposition, in his capacity as the representative of ENE's corporate knowledge, he repeatedly stated that ENE's basis for its good faith defense was 1) its reliance in 2011 on Renee Koeher's advice and 2) the favorable finding by the DOL after its 2017 audit.[8] Hulet testified that Ms. Koehler only provided advice as to construction of the position in 2011:

> **Q. Okay. Did Renee provide advice to EN as it relates to FLSA classification prior to August of 2019?**
> A. Yes.
> MS. DINKEL: Objection to the extent it calls for privileged information. You can answer.
> BY MR. JOSEPHSON: Q. Yes?
> A. Yes.
> **Q. Did she provide any advice outside of what's reflected in the 2011 documents in this case?**
> A. Not that I'm aware of. Not that I can remember.
> **Q. So between 2011 and August 27 of 2019, is it fair to say that EN received no legal advice as it relates to the FLSA classification of its employees?**
> MS. DINKEL: Hold on. Objection to the extent it calls for attorney-client privilege. Objection to the extent it's outside the scope of the 30(b)(6), and form of the question. You can answer.
> THE WITNESS: Yeah. I apologize. Can you read that question back again?
>  (Question read.)
> MS. DINKEL: Same objection.
> BY THE WITNESS: A. As it relates to inspectors, right, that's what we're --
> **BY MR. JOSEPHSON: Q. We can talk about that.**
> A. The only -- the only advice that we received from counsel during that time period was back in 2011.[9]
> …

---

[6] No deposition was scheduled at that time, and the parties conferred several times to narrow the scope of these topics and specify the time frame applicable to ENE's underlying decisions. *Id*.; Ex. 5.  In response to the Amended Notice of Deposition, sent on January 21, ENE stated that it "does not object to the time period beginning in 2011, to the extent the questions relate to ENE's good faith defense." Ex. 11.

[7] Hulet had been previously identified as a person with knowledge, though not specifically in connection to the exemption or good faith defenses. Ex. 1.

[8] Ex. 10 at 79:4-14; 86:11-24; 299:1-19.

[9] Ex. 10 at 89:9-90:19.

**Q. Between the advice that she provided in 2011 and my lawsuit being filed in August 27th of 2019, EN had not sought the opinion from any lawyers inside or outside as it relates to its compliance with the Fair Labor Standards Act?**
MS. DINKEL: Objection to the extent it's outside the scope of 30(b)(6).
BY MR. JOSEPHSON: Q. Correct?
A. Again, I think you said -- because I -- maybe I was jumping ahead in your question, but I believe you said between 2011 and the lawsuit –
**Q. Correct.**
A. -- we did not seek any advice.
**Q. Or receive any advice?**
A. Or receive any advice.
**Q. And you're not here today to say --**
A. Not that I'm aware of, no.[10]

Renee Koehler and Stephanie Dinkel prepared Hulet in advance of his deposition.[11] ENE and Koehler

Dinkel affirmatively represented that Ms. Koehler's only role was to provide legal advice in 2011.

However, a mere two days later at the deposition of Jeremy Kulik, ENE's Talent Manager,

Kulik testified Ms. Koehler provided legal advice as to this position in 2017: he sent her an email to

review in connection with the DOL audit, and she had revised it and returned it to him.[12] Rather than

offering to produce these communications, Stephanie Dinkel repeatedly tried to shield Renee

Koehler's role and resurrect the attorney-client privilege ENE waived:

**Q. Did anybody draft any part of the e-mails on your behalf?**
MS. DINKEL: Objection to the extent it calls for attorney-client privileged information, and I would instruct you not to answer.
**MR. JOSEPHSON: Whoa, hold on. Attorney-client --**
**BY MR. JOSEPHSON: Q. Was there an attorney involved in drafting any of those e-mails?**
A. Can I still answer or --
**MR. JOSEPHSON: Yes.**
MS. DINKEL: You can answer that.
THE WITNESS: There was a review.
**BY MR. JOSEPHSON: Q. By an attorney?**
A. Yes.
**Q. Who?**
A. Renee.
**Q. Renee Koehler? Is that who you're referring to when you say "Renee"?**
A. Yes.

---

[10] *Id.* at 93:23 to 94:16.
[11] *See id.* at p. 2; 89:2-4; 107:21-109:5; 123:23-124:21.
[12] Ex. 9 at 151:22-152:2.

**Q. Renee Koehler was involved in reviewing communications between you and the Department of Labor?**

A. Not all communications.

**Q. I didn't ask all communications. But she was involved in reviewing communications that you exchanged with the Department of Labor?**

A. Yes.

**Q. How do you know that?**

A. Could you please be more elaborate?

**Q. How do you know Renee Koehler was involved in reviewing your communications with the Department of Labor?**

A. I had asked for an e-mail to be reviewed.

**Q. Which e-mail did you ask for a lawyer to review?**

MS. DINKEL: Objection to the extent it calls for attorney-client privileged communications.

**MR. JOSEPHSON: There's no privilege here. And you affirmatively represented to me that the only thing that Renee did was back in 2011 and this is inconsistent with your representation to me.**

MS. DINKEL: It is absolutely not inconsistent.

**MR. JOSEPHSON: I have multiple witnesses who were there when you said the only thing she did was in 2011.**

MS. DINKEL: And my statement was very specific and it remains specific.

**MR. JOSEPHSON: It was not specific. It was not. I'm sorry. It was not. You flat-out lied to us. Flat-out lied to us.**

MS. DINKEL: Absolutely not.

**MR. JOSEPHSON: You 100 percent did, and you will have to deal with the consequences of that. BY MR. JOSEPHSON: Q. How do you -- what communication did Renee review?**

A. An e-mail I wrote.[13]

…

**Q. Okay. Who made the determination that the pay complied with 29 CFR 541.604?[14]**

MS. DINKEL: Objection to the extent it called for attorney-client communications and I would instruct you not to answer.

**BY MR. JOSEPHSON: Q. Are you refusing to answer my question?**

A. I've been asked to.[15]

…

**Q. Okay. When you got Ms. Koehler's changes to your draft, did you have any communication with her about why those changes were made?**

MS. DINKEL: Objection to the extent it calls for attorney-client privileged communications. I would instruct you not to answer as to the content if there was any.[16]

---

[13] *Id.* at 138:8 to 140:21.

[14] ENE's compliance with 29 C.F.R. 541.604 was at issue in the so-called DOL audit and is significant part of ENE's affirmative defenses in this case. *See* Ex. 16 (ENE 285-306). Koehler's involvement in this decision is the exactly the type of concerns addressed by Rule 3.7—Lawyer as a Witness.

[15] Ex. 9 at 154:5-12.

[16] *Id.* at 158:10-17.

ENE's agent admitted that Renee Koehler drafted the final email submitted to the DOL pursuant to its audit, but Koehler Dinkel prevented him from answering questions regarding ENE's subjective basis for its good faith defense. In doing so, Koehler Dinkel is attempting to exert privilege to protect itself, not its client. However, this subterfuge isn't just limited to depositions.

Koehler Dinkel has actively interfered with the discovery process by either failing to have ENE search for these responsive documents, or actively instructing it not to:

> **Q. Have you looked for any of the correspondence between you and Renee about the audit?**
> A. No.
> **Q. Do you know where they are?**
> A. No.
> **Q. And you haven't made any attempt to try to locate them for purposes of this lawsuit?**
> A. No.
> **Q. Why not? Why not?**
> A. I don't know.
> **Q. Well, you've looked for other documents, haven't you?**
> A. I've provided what has been requested.
> **Q. Did anybody request your communications with Renee about the DOL audit?**
> MS. DINKEL: Objection to the extent it calls for attorney-client privileged communications in anticipation of litigation.
> **BY MR. JOSEPHSON: Q. Did anybody ask you to pull your communications with Renee about the DOL audit?**
> MS. DINKEL: Objection to the extent it comes from attorney-client communications in anticipation of litigation.
> **MR. JOSEPHSON: That's not privileged. We need to know what's out there. You didn't log it on a privilege log, and he's saying he hasn't looked for it.**
> MS. DINKEL: And you haven't even let me speak.
> **MR. JOSEPHSON: You can talk. I need answers from him.**
> MS. DINKEL: And if it's privileged, he's not going to speak to that.
> **MR. JOSEPHSON: What's privileged about whether he was instructed to look for documents about an audit?**
> MS. DINKEL: If it came from us, it would be privileged communications.
> **MR. JOSEPHSON: You don't think that's responsive information to our request?**
> MS. DINKEL: No.
> **MR. JOSEPHSON: You don't?**

MS. DINKEL: No, because you specifically --we discussed legal advice regarding the
exempt status and not responding to an audit on anticipation of litigation.[17]

Kulik testified that he thought he had more documents related to the 2017 DOL audit that had not

been produced,[18] but indicated that ***no one had asked him to look for documents related to his***

***communications with the DOL***.[19]

The pattern here is clear. Despite ENE's reliance on advice of counsel to prove its good faith

defense, Koehler Dinkel has affirmatively and repeatedly acted to suppress information and

responsive documents. Koehler Dinkel is prejudicing not only Rossman's ability to prosecute his

claims, but also its own client's ability to prove its defense. Renee Koehler's role in 2007, 2011, and

2017 is at the heart of this litigation, and the Court must disqualify her and her firm to prevent further

interference or prejudice.

## 4. Rule 3.7 mandates that Renee Koehler and Koehler Dinkel be disqualified

Reasonable reliance on the advice of counsel can be a valid defense to an award of liquidated

damages. See 29 U.S.C.A. § 260; *see Senegal v. Fairfield Indus., Inc.*, CV H-16-2113, 2018 WL 6079354, at

*7 (S.D. Tex. Nov. 21, 2018) ("by providing evidence that Defendant sought and followed the advice

of counsel before implementing the pay plan at issue, Defendant has provided evidence supporting

its good faith defense"). In the Seventh Circuit, "[t]o establish an advice of counsel defense, a

defendant must show that he (1) "made a complete disclosure to counsel; (2) sought advice from

counsel as to the legality of his actions; (3) received advice that his conduct was legal; and (4) relied

on such advice in good faith." *Sec. & Exch. Comm'n v. Nutmeg Group, LLC*, 09-CV-1775, 2017 WL

3269389, at *4 (N.D. Ill. Aug. 1, 2017). Ms. Koehler is a necessary witness for at least three of these

four factors. The viability of an advice of counsel defense will turn on whether ENE can prove it

honestly sought and acted upon the reasonable advice of competent counsel in good faith. ENE must

---

[17] *Id.* at 146:17-148:16.

[18] *Id.* at 246:24-248:8.

[19] *Id.* at 156:19-24.

establish that it completely disclosed all material facts to Ms. Koehler, sought her advice as to the legality of its actions, received advice that the pay and classification complied with the FLSA, and relied on that advice in good faith.

This District adopted the American Bar Association's Model Rules of Professional Conduct, where applicable, to govern attorneys practicing here. N.D. Ill. L.R. 83.50. Rule 3.7(a) provides that a lawyer "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."  Model Rule of Prof'l Conduct ("Model Rule") 3.7(a). The rule is designed to alleviate several concerns, including:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009); *see Jones v. City of Chicago*, 610 F. Supp. 350, 357 (N.D. Ill. 1984) (identifying similar factors). Several of these factors are at issue here.

When disqualification is sought under Rule 3.7, the court engages in "a two-part inquiry." *See In re Gibrick*, 562 B.R. 183, 187–88 (Bankr. N.D. Ill. 2017). "The court must first determine whether the attorney is likely to be a 'necessary witness.' If the attorney is likely to be a necessary witness, the court must then decide whether the attorney's disqualification would 'work a substantial hardship on' the client." *Id.* (internal citations omitted). "The Seventh Circuit has suggested that an attorney's testimony is likely to be necessary when it is "foreseeable" [s]he will testify." *Id.* (citing *Bank of Am. v. Saville*, 416 F.2d 265, 272 (7th Cir. 1969)); *see also Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530–31 (5th Cir. 1981) (testimony is necessary when the attorney is aware of facts making it "obligatory" for him to testify in order to represent his client "completely and zealously"); *Universal Athletic Sales*

*Co. v. American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 538–39 n.21 (3d Cir. 1976) (an attorney ought to testify if he "has crucial information in his possession which must be divulged").

### a. Renee Koehler is a necessary witness.

In 2007, Ms. Koehler advised ENE on how to compensate a project consultant, revising a draft offer letter and informing ENE that they could ███████████████████████████████ ████████ Ex. 6 at ENE 5110. This pay policy, as it applies to project consultants and inspectors, is at the very heart of this litigation. Clearly, ENE obtained advice from Ms. Koehler in 2007 as it relates to these workers, and it reviewed this advice in 2011. At that time, ENE once again reached out to Ms. Koehler to obtain her advice in connection with the new job positions it was creating for project consultants.[20] It contends that those personnel responsible for the decision communicated with Ms. Koehler on classification and pay.[21] The only documents produced, however, reflect that ENE simply told Ms. Koehler the position was exempt and she questioned the basis for this decision:

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Ex. F (ENE 5116). Ms. Koehler apparently blessed the exemption, as the final version keeps Ms. Koehler's addition noting this position is exempt. Rossman will need to determine what, if anything, Ms. Koehler relied upon to confirm or deny the exemption status.

Rossman needs Ms. Koehler's testimony. Despite being tasked with testifying as to ENE corporate knowledge on these topics, and preparing for 40-50 hours in advance of his deposition,[22]

---

[20] Ex. 10 (Hulet) at 75:15-76-1; 274:9-18.
[21] *Id.* at 120:11-121:4.
[22] Ex. 9 at 108:10-109:5.

Mr. Hulet could provide no insight as to any communications with Renee Koehler regarding her 2011 advice:

> **Q. Okay. But in preparation for the deposition today, did you uncover what feedback and advice Renee gave to the company that allowed them to conclude this new position would be exempt?**
>
> A. No. Only related to the documents you have, and you provided back to me and some general conversation, I mean, related to that. So it's my understanding that there was a discussion at the time, but I don't have any of the facts related to that.
>
> **Q. Okay. But you understood that would be one of the topics for today's deposition?**
>
> A. Yes, I did, yeah. [23]
>
> …
>
> **Okay. In your preparation for today's deposition, did you learn any information that would inform you as to what steps, if any, were taken back in 2011 to determine that this position was exempt?**
>
> A. No, I did not.[24]

ENE knew its good faith defense would be the subject of its corporate representative's deposition. Counsel agreed on narrowed topics and a time frame prior to noticing the deposition. Yet ENE was unable to provide any facts supporting its advice of counsel defense. *See Nutmeg Group*, 2017 WL 3269389 (requiring the party to show it made a complete disclosure to counsel, sought and received advice as to legality and relied on that advice in good faith).

Similar implications arise from the 2017 DOL audit. As previously shown, Mr. Kulik prepared a draft response to the DOL's inquiry which he then forwarded to Ms. Koehler.[25] He admits she revised the response and he submitted the new email to the DOL which contains an express misrepresentation that the pay practice at issue complied with 29 C.F.R. §541.604—even though it 100% does not meet the requirements of the reasonable relationship test set forth in 29 C.F.R.

---

[23] Ex. 10 at 121:5-17.
[24] *Id.* at 123:1-6.
[25] Ex. 9 at 140:19-141:20; 142:12-21.

§ 541.604.[26] Ms. Koehler is the **only** person with knowledge of her basis for those revisions.[27] What facts she considered, the origins of this information, what changes she made to Mr. Kulik's email, and her legal basis for doing so are solely within her knowledge. She is a necessary witness, and her advice, which underlies the DOL's opinion, is clearly at issue here. *See Walton v. Diamond*, No. 12 C 4493, 2012 WL 6587723, at *2 (N.D. Ill. Dec. 14, 2012) ("A 'necessary' witness under Rule 3.7 is one whose testimony is unobtainable elsewhere").

Importantly, ENE's corporate representative could not identify a basis for ENE's good faith defense outside of Ms. Koehler's advice.[28] Additionally, Ms. Koehler played a significant role in the events leading up to this litigation, including meetings, phone calls, and emails with ENE personnel, reviewing and revising the initial memorandum on payment and classifications of these workers, and aiding ENE in navigating the DOL's top-sheet audit. She will undoubtably be a fact witness to these events, which could conflict with her role as counsel for ENE. The fact that ENE claims it will not call Ms. Koehler as a witness is immaterial. *See Times Herald Printing Co. v. Dallas Morning News Co.*, 86 C 8738, 1987 WL 20411, at *2 (N.D. Ill. Nov. 25, 1987) ("Times Herald's averment that it will not call its counsel as a witness does not control here"). Ms. Koehler's testimony would create at least three of the four risks that Rule 3.7(a) was designed to alleviate, namely (1) that she might be vouching for her own credibility; (2) some might fear she may distort the truth because of bias on behalf of ENE, and (3) the line between argument and evidence might be blurred and the jury confused. *See Jones*, 610 F. Supp. at 357. Rossman's counsel will be entitled to attack Ms. Koehler's credibility, thus creating potential jury confusion and prejudice against Rossman. *See Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2015 WL 12915556, at *10 (E.D. Tex. Aug. 14, 2015). Therefore, her disqualification is appropriate.

---

[26] Ex. 10 at 151:22-152:2; 153:21-154:4. In fact, both Hulet and Kulik admit no efforts were made to apply the reasonable relationship test. Ex. 9 (Kulik) at 74:18-20; 75:8-10; Ex. 10 (Hulet) at 172:22-173:2; 174:1-6; 175:11-13; 185:8-12; 282:2-9;

[27] *See* Ex. 9 at 153:21-154:4.

[28] Ex. 10 at 299:1-19.

### b. Koehler Dinkel must be disqualified

Multiple courts have found that utilizing the affirmative defense of reliance on the advice of counsel can implicate the advocate-witness or conflict of interest rules. *See, e.g.*, *Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*, No. A-03-CA-754-SS, 2006 WL 1544621, at *10 (W.D. Tex. May 31, 2006); *United States v. Swafford*, No. 1:04–CR–138., 2004 WL 5575829, at *5 (E.D. Tenn. Sept. 15, 2004); *Miller v. Colo. Farms*, No. 97WY2015WD, 2001 WL 629463, at *3 (D. Colo. Jan. 16, 2001). Here, ENE admits that it intends to establish its good faith defense by showing that it consulted her and followed her advice in paying and classifying its Inspectors and Project Consultants and in responding to the DOL audit. Her advice on payment and classification led ENE to take the actions resulting in Rossman's lawsuit. Rossman will seek to refute the accuracy and validity of Ms. Koehler's advice, as well as her research and work underlying the formulation of that advice. He cannot refute ENE's defense without addressing Ms. Koehler's thoughts and conclusions underlying her (and ENE's) actions.

The *Crossroads* case is analogous. While the case involved a dispute over a patent, rather than claims under the FLSA, reliance on advice of counsel represented an affirmative defense available to the defendant, as it does here. 2006 WL 1544621, at *9. Members of Morgan & Finnegan, the firm representing the defendant, had provided the defendant with non-infringement opinions in relation to the accused products at issues. *Id.* The defendant indicated it intended to rely on that advice in support of its defense to the plaintiff's willfulness allegations, but that it would not call those Morgan & Finnegan attorneys as witnesses at trial. *Id.* In contrast, the plaintiff, expected to call at least one of those attorneys "as part of its case-in-chief to demonstrate that [the defendant's] reliance on the opinions was not reasonable." *Id.* As a consequence, the Court disqualified all 8 members of Morgan & Finnegan as trial counsel, relying in part on case law from this District:

> "Crossroads will be seeking to attack the reasonableness of Dot Hill's reliance on the opinions given by Morgan & Finnegan attorneys, in part, by **attacking the accuracy and validity of the opinions themselves as well as the work underlying the formulation of the opinions**. Moreover, the reasonableness of Dot Hill's reliance on

the opinions will necessarily raise other factual questions, such as what relevant, non-privileged facts (besides those contained in the opinion letters) were communicated between Dot Hill and its opinion counsel. Since both the credibility and legal acumen of Morgan & Finnegan attorneys will be in issue at the trial, if other Morgan & Finnegan attorneys were permitted to serve as trial counsel, **they would be placed in the awkward and unseemly position of having to advocate for the credibility and reliability of the testimony of their law partners**. Even worse, if the testifying Morgan & Finnegan attorneys were to give testimony that was adverse to Dot Hill's interests, the attorneys serving as trial counsel would be squarely confronted with a conflict of interest in grappling with competing duties to the client and to the firm.

*Id.* (emphasis added)(citing *Teledyne Indus.*, 1985 WL 686, at *2). ENE's reliance on Ms. Koehler's advice is directly analogous. Her role as a witness necessarily precludes the remaining three attorneys at Koehler Dinkel from acting as ENE's trial counsel.

As seen in Kulik's deposition testimony above (and the contemporaneously filed Motion to Compel), Stephanie Dinkel of Koehler Dinkel has repeatedly acted to aid ENE and Renee Koehler in unfairly suppressing Ms. Koehler's role and communications at to these issues. Moreover, ENE's corporate representative, Hulet, admitted in his deposition that ENE gathered and spoke to its them about the lawsuit.[29] He testified that ENE's Counsel was aware of ENE's intentions and involved in the discussions leading up to it.[30] The entire firm of Koehler Dinkel must be disqualified.

DR 5–101(B) holds that "A lawyer shall not accept employment in contemplated or pending litigation if [s]he knows or it is obvious that [s]he **or a lawyer in [her] firm** ought to be called as a witness," unless the testimony relates "to an uncontested matter," "a matter of formality," "the nature and value of legal services," or disqualification of the lawyer "would work a substantial hardship on the client." ABA Model Code DR 5–101(B) (emphasis added); *see also* DR 5–105(D) ("[i]f a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such

---

[29] Ex. 10 at 254:15-258:21 (admitting ENE discussed the lawsuit with the Inspector).
[30] *Id.* at 380:13-24 (admitting Counsel was involved and aware ENE intended to discuss the lawsuit with the Inspectors).

employment"). Koehler Dinkel will be in the position of having to examine or cross-examine Ms. Koehler, her credentials, and her diligence in representing ENE. This has already created conflict and led Koehler Dinkel to try to assert a privilege ENE has waived. Disqualification of all four attorneys at Koehler Dinkel is appropriate.

**5. ENE and Koehler Dinkel continue to withhold responsive information.**

On March 4, ENE produced its responses and objections to Rossman's requests for admissions. Ex. 17. Every single response contained a privilege objection. *Id.* ENE has waived its privilege as to its affirmative defense of good faith. It has produced attorney communications and it has allowed its employee and corporate representative to testify as to counsel's role. Ex. 6; Ex. 7. Even on these admissions, ENE acknowledges it received legal advice on the compensation of a project consultant in 2007. Ex. 17 at 2. It has not produced these communications, however, and not updated its disclosures or interrogatory responses to identify Ms. Koehler as a person with knowledge.

On March 5 and 6, ENE supplemented its production to provide additional email between it and Ms. Koehler in 2011 and 2017. Rather than satisfy Rossman's outstanding requests, these documents confirm that ENE and Koehler Dinkel withheld relevant documents, that counsel was involved from the beginning of the 2017 DOL investigation, and ███████████████████████ ███████████████████████.[31] *See* Ex. 18 (ENE 5628-5665) at 5658. Neither Hulet or Kulik were able to provide any details on the 2007, 2011, or 2017 communications with Ms. Koehler and documents are being actively withheld on specious objections. *See* Ex. 17; Ex. 19. Ms. Koehler's advice provides the foundation for ENE's payment and classification of these workers, and Rossman is entitled to a complete discovery on this issue from ENE and Koehler Dinkel.

ENE's attempt to revive privilege, by claiming either statute of limitations or anticipation of litigation, is simply unavailing. *See* Ex. 19. The privilege was waived when ENE placed its reliance on

---

[31] Ms. Koehler's emails and documents were neither produced nor searched. See Ex. 19 (3/6/20 RRFPs).

its counsel's advice at issue. It is uncontested that ENE obtained and considered Ms. Koehler's advice in 2007, 2011, and 2017 in connection with these positions, and all information pertinent to that advice must be produced. ENE may not withhold relevant documents by claiming that it does not intend to rely on them at trial. *See* Ex. 13. Indeed, court reject this type of sword and shield tactic, acknowledging it leads to a:

> "'heads I win, tails you lose' result-in which a party asserting good faith could use attorney communications that help its cause, but shield the communications when they do not by characterizing the defense as one that does not rely on advice of counsel—would undo, and is at odds with the fairness concerns that animate, the longstanding recognition that asserting a claim or defense that depends on a belief in the lawfulness of one's conduct waives privilege.

*Edwards v. KB Home*, No. 3:11-CV-00240, 2015 WL 4430998, at *3 (S.D. Tex. July 18, 2015). Ms. Koehler's advice has been placed at issue and may not be withheld or shielded to ENE's advantage. The continued efforts to withhold and obstruct discovery to protect Ms. Koehler's communications emphasizes why her testimony is necessary and why she and her firm must be disqualified.

**6.    Conclusion and Prayer.**

Koehler Dinkel has delayed production and withheld crucial information in response to discovery requests in an effort to protect itself, rather than to advance the defenses of its client. The pattern of counsel's activity reflects a knowing conflict between it and its client, ENE. And while ENE supplemented production twice, it has still failed to produce all responsive documents in its possession <u>or control</u>. It has also failed to amend its interrogatories and disclosures to accurately reflect the true role of Renee Koehler in providing legal advice regarding its payment and classification of these workers. This advice represents the sole evidence that ENE acted in good faith. It is not protected by privilege and Ms. Koehler's testimony is necessary to ENE and Rossman. Disqualification is appropriate.

Rossman therefore respectfully asks the Court to disqualify Renee Koehler and Koehler Dinkel from representing Defendant EN Engineering, LLC in this matter.

Dated: March 10, 2020        Respectfully Submitted,

By:    */s/Taylor A. Jones*
        Michael A. Josephson
        Taylor A. Jones
        JOSEPHSON DUNLAP
        11 Greenway Plaza, Suite 3050
        Houston, Texas 77046
        (713) 352-1100

        Richard (Rex) J. Burch
        BRUCKNER BURCH, P.L.L.C.
        8 Greenway Plaza, Suite 1500
        Houston, Texas 77046
        (713) 877-8788

        Douglas M. Werman
        Maureen A. Salas
        WERMAN SALAS P.C.
        77 West Washington, Suite 1402
        Chicago, Illinois 60602
        (312) 419-1008

        **Attorneys for Plaintiffs and
        the Putative Class Member**

## CERTIFICATE OF CONFERENCE

Prior to filing this motion, Counsel for Plaintiffs repeatedly raised the issue and asked whether Renee Koehler would disqualify herself as counsel for ENE. Ex. 14. Koehler Dinkel refused, stating that "[i[f Plaintiff feels such a motion is proper, go ahead and file it." Ex. 15.

By:    */s/Taylor A. Jones*
        Taylor A. Jones

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 10, 2020 the foregoing was filed electronically with the Clerk of Court using the ECF system, which sent notice to all known parties of the case in accordance with the Federal Rules of Civil Procedure.

By:    */s/Taylor A. Jones*
        Taylor A. Jones