# EXHIBIT 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT
CASE NO.: 1:19-CV-05768-EEC

KEVIN ROSSMAN, Individually and For Others Similarly Situated,
Plaintiff,
v.
EN ENGINEERING, LLC,
Defendant.
_______________________________________/

CONFERENCE CALL

January 10, 2020

1:58 p.m. - 2:39 p.m.

APPEARANCES:

On Behalf of the Plaintiff:

JOSEPHSON DUNLAP, LAW FIRM
11 Greenway Plaza, Suite 3050
Houston, TX 77046
(713) 352-1100
mjosephson@mybackwages.com
BY: MICHAEL JOSEPHSON, ESQUIRE
(Appeared telephonically)

JOSEPHSON DUNLAP, LAW FIRM
11 Greenway Plaza, Suite 3050
Houston, TX 77046
(713) 352-1100
jlomax@mbwages.com
BY: JULIE LOMAX, ESQUIRE
(Appeared telephonically)

JOSEPHSON DUNLAP, LAW FIRM
11 Greenway Plaza, Suite 3050
Houston, TX 77046
(713) 352-1100
BY: CARL FITZ, ESQUIRE
(Appeared telephonically)

On Behalf of the Defendant:

KOEHLER DINKEL, LLC
900 S. Frontage Road, Suite 300
Woodridge, IL 30517
(630) 505-9939
rkoehler@kdllclaw.com
BY: RENEE KOEHLER, ESQUIRE
(Appeared telephonically)

KOEHLER DINKEL, LLC
900 S. Frontage Road, Suite 300
Woodridge, IL 30517
(630) 505-9939
sdinkel@kdllclaw.com
BY: STEPHANIE DINKEL, ESQUIRE
(Appeared telephonically)

(Thereupon, the following proceedings were had:)
MR. JOSEPHSON: Okay, whenever you're ready, Court Reporter. I mean, no one needs to be sworn in or anything that I know of but we can certainly make announcements just so we've got that down, okay?
COURT REPORTER: Okay. Ready to go.
MR. JOSEPHSON: All right. Are you ready?
COURT REPORTER: Ready to go.
MR. JOSEPHSON: Okay. Renee, Stephanie, y'all ready?
MS. KOEHLER: We are, yes.
MR. JOSEPHSON: Okay, great. All right. So for the Plaintiff's side we have Michael Josephson, Carl Fitz and Julie Lomax.
MS. KOEHLER: Okay. And for defense side, are you ready for that?
COURT REPORTER: Ready.
MS. KOEHLER: Okay. We have Renee Koehler, K-O-E-H-L-E-R, and Stephanie Dinkel, D-I-N-K-E-L.
COURT REPORTER: Okay.
MR. JOSEPHSON: All right. Great. And, all right, so, Renee, Stephanie, thanks for giving us this window today and we'll cover what we can and then pick up on Monday but we do appreciate y'all's

availability. And so I think that the deficiency letter that we sent y'all is a good starting place for this conference and we can certainly walk through it in the order in which we've laid out these issues if that's okay.
MS. KOEHLER: Yes. And, again, for clarity, your January 7, 2020 deficiency letter, correct?
MR. JOSEPHSON: That's right. January 7, 2020 dealing with your -- the set of discovery that y'all -- you guys served on December 20th.
MS. KOEHLER: And, you know, just for the court reporter -- can I just clarify for the court reporter, this is Renee Koehler.
MR. JOSEPHSON: Oh, sure, go ahead.
MS. KOEHLER: Yeah, just in case you're having a hard time figuring out who's talking on our end.
COURT REPORTER: I was just going to say that. I was just going to say is this Michael and Renee speaking right now?
MS. KOEHLER: For the most part it probably will be an if, for some reason, it's not we'll make sure the person identifies themselves.
COURT REPORTER: Perfect. Thank you so much.
MR. JOSEPHSON: All right. So, Renee, I'm going to kind of -- I'll talk to you and,

Stephanie, chime in as you feel appropriate. So in our discovery deficiency letter the first issue we raised was the use of the global general objections and our concern set forth in our letter was that one, the use of general objections is inappropriate under the rules but also, as a practical matter, when you have these objections and then they're read into everything it makes it difficult to know what you are truly objecting to. And so we would ask that you withdraw those general objections. And to the extent that you have objections to the requests, that you make them specifically in response to each discovery request.

MS. KOEHLER: Okay. So I just want to, you know, clarify that, Michael, that our discovery responses were given prior to seeing your class certification motion where the -- your punitive class has been narrowed. So in line with the narrowing of that, and while we don't agree, and you know this, we don't agree that all the inspectors should be included, but notwithstanding those objections, I will -- I've agreed that I'm going to go back and amend our discovery responses and this might help with a lot of the different areas. But I'm going to go back and amend the

discovery responses, including most likely withdrawing the general objections now that we feel comfortable that there's been an identified class. And so you'll see in the amendments that we're going to be omitting those and we'll be more detailed with the specific responses to what objections we have.

MR. JOSEPHSON: Okay. I appreciate that. So with respect to the general objections, you agree to withdraw them and to include whatever specific objections you might have in the actual body of the response to the interrogatory or the request? Is that fair?

MS. KOEHLER: Yes. Correct.

MR. JOSEPHSON: Okay. And what is your ETA on serving amended discovery responses?

MS. KOEHLER: Oh, we'll probably talk about that a little bit more detailed as to the reasoning but my hope is -- I already have, in line with our discussion that we had earlier in the week and my e-mail -- Taylor and I's e-mails back and forth -- in line with some of the issues that I've talked to my client about and that we've agreed that while we don't agree with the three-year statute of limitations, we're going to supplement our discovery for the three-year period and then now

with this narrowed class, again, while we don't agree that it's all inspectors that are similarly situated, we're going to go ahead and give that discovery.

MR. JOSEPHSON: Sure.

MS. KOEHLER: So with my -- we're mindful of the fact that you do have a 30(b)(6) scheduled for the 27th so --

MR. JOSEPHSON: Right.

MS. KOEHLER: -- our goal is to get most of these documents to you by the 17th but I will have, I think, the list that you're looking for that has the inspectors by inspector type with their information as far as like their employee clock number; similar to what we gave you on the weld inspectors. I hope to have that to you Tuesday or Wednesday. The latest would be Wednesday. And that's when I can serve on you the amended actual interrogatory responses and the request to produce, just with the understanding that it's taking some time for them to pull all of the -- like the daily time records for all the inspectors. But they've been working on this since we resolved, you know, that issue with you.

MR. JOSEPHSON: Sure. Okay. So when you e-

mailed us earlier in the week you had hoped you would have that supplementation today and what I'm hearing is that y'all have been working on it, it's taking some time, and now you expect to have that to us sometime next week and I think I heard Tuesday? Is that right?

MS. KOEHLER: For the list -- yeah, Tuesday for the list and the then the documents are going to be trickling in to go with the list, such as the payroll information and the timesheets. That's what's taking a little bit of time and let me explain why. First of all, they're going back and filling in the gaps on the three-year period for the weld inspectors. There was a different payroll service between 2015 and 2018 so they're pulling from two different services so that's taking a little bit of time.

MR. JOSEPHSON: And that's fine. And then I heard you say that you hoped to have your amended responses by the 17th; is that right?

MS. KOEHLER: Yeah. But I actually think I'm going to be able to get them to you around the same time I give you the list. I just want to make --

MR. JOSEPHSON: That'd be great.

MS. KOEHLER: Yeah, I'm doing my best to get

it to -- get at least the official responses that are amended along with that list by Tuesday of next week.

MR. JOSEPHSON: Okay. And that's the 14th.

MS. KOEHLER: Correct.

COURT REPORTER: Is that -- who's speaking right now? Was that Julie? Was that Stephanie? I'm sorry?

MS. KOEHLER: No, it's still Renee.

COURT REPORTER: Oh, it's still Renee? Okay.

MS. KOEHLER: Sorry.

COURT REPORTER: That's okay.

MR. JOSEPHSON: Okay. And we appreciate that. So I think that addresses the issue with the general objections.

The next one is the -- our request that you include withholding statements if you are withholding documents subject to objections that you're asserting and let us know what your position is on that request.

MS. KOEHLER: Yeah. We will do that as well in the amended responses.

MR. JOSEPHSON: Okay. Great. All right. And so moving to the -- what we called the improper limitations on the class definition, class

discovery and relevant time periods, it's my understanding that for purposes of the class definition and that -- and for the relevant time period that you have agreed, subject to your objections, to go back the full three-year time period and that you are now going to provide information as to all inspectors as opposed to the weld inspectors that you had limited it to previously. Is that fair?

MS. KOEHLER: Yes. For purposes of discovery, and as you said, without waiting our objections, we are going to supplement to go back for the full three-year period of time that you've requested for the weld inspectors and then when we produce the new information on the other inspectors, that will also be for the three-year period of time.

MR. JOSEPHSON: For all the inspectors? So, in other words --

MS. KOEHLER: Correct.

MR. JOSEPHSON: -- we're dealing with all of the inspectors and for the entire statutory time period?

MS. KOEHLER: Yes.

MR. JOSEPHSON: Okay. That's great. And I do know that as part of our discussion the other day,

we did request that certain topics utilize a longer statute of limitations, or not even statute of limitations, a longer relevant time period; those topics being good faith, willfulness, the decision to treat these folks as exempt and why and so on. Do you know if your supplementation of discovery will include that longer statute of limitations time period for those topics or is that something that we still need to kind of work through or clarify?

MS. KOEHLER: So this is still Renee. We do need to do a little more work. I appreciate you guys identifying which topic areas you would like to go to a 10-year statute of limitations; however, we feel that, again, 10 years is too long of a time period. But I do think we should discuss it again once you get these documents because you'll see that the inspector position was contemplated from the period of time of 2011. So I think we can talk about that once you see the documents that we're going to supplement. And maybe for those particular topic areas we can agree on the 2011 period of time, you know, without waiving any future objections, just for purposes of the 30(b)(6).

MR. JOSEPHSON: And when you say the --

MS. KOEHLER: And --

MR. JOSEPHSON: I'm sorry, go ahead, Renee. I didn't mean to cut you off.

MS. KOEHLER: And, again, that is mainly going to the, you know, affirmative defenses that we have and the issue of willfulness.

MR. JOSEPHSON: Right. And, Renee, what I was asking, you said the inspector position was contemplated in 2011. Does that mean that it was created? I just want to make sure I understand what contemplated means and that there isn't any confusion there.

MS. KOEHLER: With reference -- yeah, sorry, I cut you off. With reference to pay structure and issues relevant to Mr. Rossman, you know, arguably relevant to his claim and our defenses, that time period you'll see there's going to be a specific document with a 2011 date of how the compensation structure was devised.

MR. JOSEPHSON: Okay. And so as part of the supplemental production you're going to include the documentation that relates to how the compensation practice was, you know, came to being or was implemented?

MS. KOEHLER: I wouldn't use the term "practice," but, yes, we will be giving you that specific document. And once you get that next week we're more than willing to have another conversation as that pertains to the 30(b)(6) deposition.

MR. JOSEPHSON: Okay. All right. And do you know, just generally, is EN relying on the advice of counsel in connection with its compensation practices for the inspectors?

MS. KOEHLER: Yeah, I think you asked in there to either withdraw the defense or produce the documents so after some discussion with the client, we're going to be producing the documents, you know, to the best extent that we can that's not privileged for other, you know, they'll be heavily redacted if there's other privileged communications that don't pertain to this lawsuit and inspectors. But, yeah, we -- EN Engineering has agreed to produce even the privileged documents that pertain to its affirmative defense.

MR. JOSEPHSON: This would be for like good faith and willfulness?

MS. KOEHLER: Correct.

MR. JOSEPHSON: And not to be --

MS. KOEHLER: And we know -- we know that

we're not relying exclusively on those documents; we're also relying on the 2017 Department of Labor audit.

MR. JOSEPHSON: Sure. No, I understand that. But to be clear, is EN relying on an advice of counsel defense as part of its good faith, willfulness affirmative defenses in the case?

MS. KOEHLER: Yeah, you'll see that in the -- you'll see the details of that in the specific discovery responses.

MR. JOSEPHSON: Okay.

MS. KOEHLER: And you'll also see -- I'm probably jumping ahead a little bit but you'll also see --

MR. JOSEPHSON: Sure.

MS. KOEHLER: -- in the supplemental responses where we'll detail out the people who were involved in the decision-making process as to the exempt status of --

MR. JOSEPHSON: Okay.

MS. KOEHLER: -- you know, Mr. Rossman's position.

MR. JOSEPHSON: And when you say his position, are you referring to the inspector position as a whole?

MS. KOEHLER: Yes.

MR. JOSEPHSON: Just -- okay. Okay.

MS. KOEHLER: Yes.

MR. JOSEPHSON: So we'll look for that hopefully next week. And then it kind of -- that dovetails into the privilege log. You had asserted a privilege objection I would say mostly throughout the discovery responses or certainly in a large portion of them. Do you anticipate -- well, do you know when you'll be able to provide us with the privilege log?

MS. KOEHLER: Yeah, I'll give you at the same time that I give you our amended discovery responses. And just so you know, the privilege was asserted with a very wide class that you originally had in your complaint so we're obviously going to narrow the privilege, you know, with respect to, you know, our objections and disclose the privilege communications that go to the inspector position.

MR. JOSEPHSON: Sure, I mean, it does help. But in fairness, I mean, it was asserted in response to interrogatories dealing with affirmative defenses, not just interrogatories or requests pertaining the class issue but, you know, kind of information that you are relying on in support of certain defenses that have been pled.

And so --

MS. KOEHLER: Correct.

MR. JOSEPHSON: And so, you know, okay. But whatever you contend is covered by that privilege, that'll be logged in a way that we can at least identify what's being withheld, how many documents, the time period, and, you know, the folks that were involved.

MS. KOEHLER: Yes. And you'll see that there's going to be more produced than what would actually make the privilege log so --

MR. JOSEPHSON: Okay.

MS. KOEHLER: Yes.

MR. JOSEPHSON: Okay.

MS. KOEHLER: And I'll serve that at the same time that I serve the amended discovery responses.

MR. JOSEPHSON: Okay. And that's appreciated. And I assume, you know, we -- the communications that you've had with your client post-lawsuit, those aren't things that you're planning to log?

MS. KOEHLER: No, I'm -- no, not at all.

MR. JOSEPHSON: Okay. All right.

MS. KOEHLER: You're not --

MR. JOSEPHSON: The next --

MS. KOEHLER: Sorry, let's stop -- you're not

expecting that I'm presuming?

MR. JOSEPHSON: No, I'm not expecting that. Based on what I know now I'm not so if that changes I'll reach out and explain why I think our position has changed.

MS. KOEHLER: Okay.

MR. JOSEPHSON: The next topic was the verification.

MS. KOEHLER: Oh, yeah. So you guys know, too, that you haven't verified your discovery, nor has any attorney signed off on your discovery responses so --

MR. JOSEPHSON: What do you mean?

MS. KOEHLER: I haven't -- maybe we missed it but I didn't see a verification --

MR. JOSEPHSON: Okay.

MS. KOEHLER: Or even an attorney -- there's like a Certificate of Service signed but not -- nobody signed off on your discovery responses.

MR. JOSEPHSON: I -- well, okay. So I see a verification and I have no reason to believe that it wasn't sent to you but I will certainly send it to you after our call. And then on the discovery responses, I mean, it says "Respectfully submitted" and then it's got a slash and it says, "Taylor

Jones" and the same signature on the Certificate of Service. Was there something else that you expected or think you're entitled to?

MS. KOEHLER: Can you direct me to that? Because we have a Certificate of Service on Page 2. Like the first page is Plaintiff's Objections and Responses to Discovery Requests and then there's the Certificate of Service where Taylor, you know, had her block signature line on. And then we've got -- maybe we're missing something here because then it goes all the way to Page 24 and then there's -- but there's no signature, there's nothing.

MR. JOSEPHSON: I mean, the version that I'm looking at right now has a signature on Page 2 above the Certificate of Service.

MS. KOEHLER: Oh, I see what you're saying. Kind of on the cover page? I guess I've never seen that before.

MR. JOSEPHSON: Yeah, the second page where it's signed off on and -- but I -- and it's in -- there's 24 pages and so this is Page 2. And then in terms of the verification, I would have assumed that it was sent but just out of an abundance of caution, I did just e-mail it to you and so you

should have --

MS. KOEHLER: Okay.

MR. JOSEPHSON: You should have that now and if you think that there's still some problem, just let me know.

MS. KOEHLER: Thank you.

MR. JOSEPHSON: And so back to --

MS. DINKEL: This is Stephanie speaking. I would just say that I'm looking at the Page 2 here and it appears that Taylor's signature is regarding that she's serving that on us and not -- yeah, because it says on the very first page 2 Defendant and then it says, "Pursuant," blah, blah, blah, "Plaintiff serves his responses." So we took that as it was a signature on the Certificate of Service.

MR. JOSEPHSON: Well, there's a -- there is a signature on the Certificate of Service but there's also a signature above that as well. So you have a total of two signatures from the attorney. Similar to the two signatures that you provided on 19 and 20 of your discovery.

MS. DINKEL: Okay. I've just never seen a signature at the beginning before signing off by an attorney and responses that follow but --

MR. JOSEPHSON: Yeah. That's okay.

MS. DINKEL: And, I guess, maybe the -- that's okay. The verification maybe just didn't make it in because literally we have 24 pages but the PDF didn't have a verification unless something happened on --

MR. JOSEPHSON: That's fine.

(Crosstalk)

MR. JOSEPHSON: It's been sent now so --

MS. DINKEL: Okay.

MR. JOSEPHSON: -- you do have it. But we don't have EN's verification and so when do you think that'll be provided?

MS. KOEHLER: We'll give you the verification for the current discovery responses I'm hoping -- I wanted it -- I was expecting to have it today but we'll send it over to you on Monday.

MR. JOSEPHSON: Okay.

MS. KOEHLER: And we'll make sure it's the verification with the amended responses as well.

MR. JOSEPHSON: That's correct.

COURT REPORTER: And this is Renee speaking?

MS. KOEHLER: I'm sorry, yes, it's Renee.

COURT REPORTER: Okay. It's okay.

MR. JOSEPHSON: And that's fine. Thank you

for letting us know that. And then so we raised the issue about the supplementation where in different places in your discovery responses you indicated you were supplementing. You now told us that you plan to supplement next week with documents. Are there other requests that you are still working on supplementing or do you have some sense of what's coming next week and what may come in the week or so that follow?

MS. KOEHLER: Yeah, so the -- one of the outstanding issues is we're trying to go through Mr. Rossman's e-mails just to make sure that we haven't missed anything and we were having a hard time trying to retrieve that. So if we're able to get that information, you know, that's one of the supplements that we plan on giving to you.

MR. JOSEPHSON: Okay. I am glad that you raised that. I guess there's -- there does seem to be a little bit of a deficiency in the e-mail production. We have a few of them that came with the Illinois Department of Labor investigation but I haven't seen a lot of other e-mails, you know. I guess -- and that may be because you're planning to supplement and it may be that you're still identifying custodians and so on but is this a good

place to maybe talk about what's being done in terms of the supplementation and what's happening with the overall ESI production?

MS. KOEHLER: So once we do the search of -- we've already attacked, you know, our end regarding Mr. Rossman but once we do a search of his actual e-mail box that will complete that.

MR. JOSEPHSON: Okay. You'll -- that'll complete the anticipated supplementation of his e-mails?

MS. KOEHLER: Correct. Well, e-mails regarding him or inspectors, the lawsuit. You'll see too there'll be some e-mails that are going to be produced with the privilege log so you'll have that next week.

MR. JOSEPHSON: Okay. Do you --

MS. KOEHLER: However, with the caveat I'm not sure on being able to retrieve Mr. Rossman's e-mails. So we're still waiting on that.

MR. JOSEPHSON: And what do you mean by that? Just elaborate if you can.

MS. KOEHLER: So we're trying to figure out how we can access because his is a no longer active account. We're trying to figure out how we can access his account. We have e-mails from him but

we don't know e-mails necessarily other than the ones, you know, we're not sure exactly if there's anything else on his e-mails that might be responsive.

MR. JOSEPHSON: Okay. Has that been an issue with respect to any other custodians that y'all have looked for or that you've tried to access their e-mails?

MS. KOEHLER: No.

MR. JOSEPHSON: Okay. And do you -- are you able to tell me who the custodians are; whose documents you've looked at?

MS. KOEHLER: I mean, not off the top of my head, no.

MR. JOSEPHSON: Okay. Do you think that we can schedule a time next week to maybe talk about the ESI that's in this case and what might be relevant, how the information is stored, and how it's best to be able to produce it?

MS. KOEHLER: Maybe we can fit that in in our call on Monday but --

MR. JOSEPHSON: Okay.

MS. KOEHLER: If not we'll schedule --

MR. JOSEPHSON: Yeah, that's fine. At least a preliminary call on ESI. And if you have a sense

of who the custodians are and can disclose that before Monday I think that would be helpful.

MS. KOEHLER: Well, I'm going to be pretty busy supplementing the discovery so I can't make you any promises that you'll get that before Monday.

MR. JOSEPHSON: Okay. Will you be able to tell us Monday at least when you think you might have a list of custodians put together?

MS. KOEHLER: I don't know. Let's address it on Monday.

MR. JOSEPHSON: And do you know enough about how the company stores its communications and documents and the things that might kind of fall within the document definition in Rule 26 to be able to have a meaningful conversation on Monday? And I just raise that, Renee, to say if you wanted, you know, a few more days to be able to talk to the company a little bit more to find out about their databases and storage systems and how one would go about searching for a responsive document, search terms and so on, I'm okay with that. I don't want to force y'all into a discussion that you're not prepared to have on that topic and so I guess what I would say is we can plan on talking about it

Monday but if you feel like when we have that call that you're not prepared to have an ESI discussion, I don't mind pushing it off until, you know, later in the week.

MS. KOEHLER: Yeah, so we most likely will be pushing it off because we have more, you know, additional things that we were already scheduled to discuss and I'm running on my 1:30 timeframe here. So --

MR. JOSEPHSON: Sure.

MS. KOEHLER: -- let's try to cover as many things as we can first on the January 7th letter for Monday.

MR. JOSEPHSON: Okay. And do you know what days you might have available next week to be able to kind of follow up on the ESI discussion?

MS. KOEHLER: No, I don't. So we'll, again, visit that on Monday.

MR. JOSEPHSON: Do you want us to send you the days that we're available so that you can see if any of those work for your schedule?

MS. KOEHLER: That would be great and I think I would prefer more towards the end of the week.

MR. JOSEPHSON: Okay.

MS. KOEHLER: Because I know my morning -- in

fact, probably Thursday or Friday would be better.

MR. JOSEPHSON: Okay. I know you've got to run so just last question. Do you anticipate sending us any specific objections that you might have to the 30(b)(6) today?

MS. KOEHLER: So really the 30(b)(6) objections really stem with what we talked about at the beginning of the call regarding that extended timeframe for those particular questions.

MR. JOSEPHSON: Right. I thought you had told us that you might have specific objections to the topics now that --

MS. KOEHLER: No.

MR. JOSEPHSON: -- we've talked and clarified some things and so if you did I wanted to make sure we had time to talk about them. And so if you're saying you don't because we've resolved the areas that y'all were concerned about then that's fine. But if you do I think it would be helpful to get them in advance of our call on Monday.

MS. KOEHLER: Yeah, no, our intent of our prior call, you know, was to get those things ironed out. So the two remaining issues though are that time period and then we do still have an issue on the third party -- the contract -- the client

contract. And just so you know, I -- my client is legally prohibited from divulging the information of the customers and I noticed that you had specifically requested in subpoena requests with Ameren directly for the same documents so my client cannot produce those without having a potential breach of contract action.

MR. JOSEPHSON: You're talking about the MSAs?

MS. KOEHLER: Yeah, you're referring to the Master Service Agreement? Yes.

MR. JOSEPHSON: Okay. And so they can't produce them because they've got some kind of confidentiality with their client; is that --

MS. KOEHLER: Yes. You know, in particular, the contents of that agreement.

MR. JOSEPHSON: Are there parts of the agreement that can be produced without those concerns that you might have about confidentiality or is it your view that the whole Master Services Agreement is confidential for some reason?

MS. KOEHLER: So my position is I can't disclose that agreement period because of the confidential information within it. And, quite frankly, I don't want my client to take a chance of disclosing any of the provisions and being

subjected to a lawsuit, especially if you guys have a subpoena for that very information directly to that third party.

MR. JOSEPHSON: And that's fine. I mean, I guess -- I don't mind getting it from the third party if you have these concerns. I would just ask, you know, have you or your client reached out to those third parties and asked if the documents can be produced subject to the protective order that we have in the case?

MS. KOEHLER: So yes, I've given the appropriate notice about the discovery request and really that's all I can say.

MR. JOSEPHSON: And I'm sorry, but I -- the notice to -- you're talking about to the third party or your client? I didn't catch that.

MS. KOEHLER: To the third party.

MR. JOSEPHSON: But are you instructing the third party not to produce it or are you telling them that they can produce it subject to the protective order?

MS. KOEHLER: No, I haven't given any opinion as to whether or not they can produce their document.

MR. JOSEPHSON: Okay. But have you asked or

do you plan to ask if it can be produced or if y'all can produce it subject to the protective order that we have?

MS. KOEHLER: No, I have not. It's -- so the terms of the agreement don't even allow that.

MR. JOSEPHSON: I'm sorry, the agreement itself prevents you from asking if it can be produced or you just have to -- just clarify. I don't want to argue with you about it. Just tell me so that I kind of understand where you're coming from. Are you saying that the terms of the agreement itself prevent you from even asking the client if it can be produced subject to a protective order?

MS. KOEHLER: No, that's not what I'm saying. What I'm saying is I can't produce it period so, you know, whether or not the client chooses to produce it has nothing to do with what I may or may not ask.

MR. JOSEPHSON: Okay. But that's what, I guess, I was confused on. I thought you said that the terms of the agreement prevent you from even asking the client --

MS. KOEHLER: No. No, no, no. No.

MR. JOSEPHSON: Okay.

MS. KOEHLER: No. But --

MR. JOSEPHSON: But you -- go ahead.

MS. KOEHLER: So if I may? The terms of the agreement would prevent me from even producing it pursuant to a protective order.

MR. JOSEPHSON: Sure. And my question was a little different. It was have you or your client reached out to the third party to see if they would allow those agreements to be produced subject to a protective order?

MS. KOEHLER: I provided notice and, you know, that's all that I'm willing to provide you at this time. And I'm already seven minutes late.

MR. JOSEPHSON: Sure. No, I understand that. Well, if you will let the third party know that we are fine maintaining the confidentiality of the agreement subject to the protective order and maybe that'll alleviate the need for a dispute over this.

MS. KOEHLER: So you --

MR. JOSEPHSON: Because we have no trouble keeping it confidential.

MS. KOEHLER: So you have also issued discovery directly to Ameren, for example. I think you could --

MR. JOSEPHSON: Right.

MS. KOEHLER: -- easily do that as well.

MR. JOSEPHSON: Yeah, I will and perhaps me making that offer and you making that offer to them will expedite the production of the responsive documents.

MS. KOEHLER: So are we still scheduled then for our call on Monday?

MR. JOSEPHSON: That's right.

MS. KOEHLER: Okay. Do -- are there other things that we need to discuss on Monday though regarding your January 7th, 2020 letter?

MR. JOSEPHSON: Yeah, I mean, we have -- we've gone through the first part that addressed kind of the general deficiencies and then the second part are the specific deficiencies that we start with on Page 4.

MS. KOEHLER: So -- and we -- we're still open, obviously, to a call so we can still do that but --

MR. JOSEPHSON: Okay.

MS. KOEHLER: Maybe I can even --

MR. JOSEPHSON: That works for us.

MS. KOEHLER: Yeah, maybe I can even try to get some of these amendments -- the amended documents to you before then. I'm not making any

promises but I just think it might be streamlined.

MR. JOSEPHSON: That's fine.

MS. KOEHLER: It might be streamlined.

MR. JOSEPHSON: If you do and we can eliminate some of those that would be great with us and we would certainly, you know, work quickly to do that before the call. But let's keep the call for now and if we can cancel because everything's been taken care of or streamline it, you know, that's definitely fine with us and appreciated. Okay?

MS. KOEHLER: Yeah. And so just so we're clear; what time do you guys have that call at?

MR. JOSEPHSON: I just -- as you were talking I just exited out of my computer but I think you proposed the time and we accepted.

MS. KOEHLER: Oh, it's 2:00.

MR. JOSEPHSON: It's at 2:00. 2:00 on Monday.

MS. KOEHLER: Okay, that sounds great.

MR. JOSEPHSON: Okay. Well, you guys have a nice weekend, all right?

MS. KOEHLER: You too. Thanks everybody.

COURT REPORTER: Thank you.

MR. JOSEPHSON: All right.

(Thereupon, the conference concluded at 2:39 p.m.)

CERTIFICATE OF REPORTER

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

I, Tareva Jumpp, Court Reporter, certify that I was authorized to and did report the conference call of Kevin Rossman, Individually and For Others Similarly Situated vs. EN Engineering, LLC; and that the transcript is a true and correct record of my notes.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

Dated this 24th day of January 2020.

____________________________________

Tareva Jumpp, Court Reporter

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT
CASE NO.: 1:19-CV-05768-EEC

KEVIN ROSSMAN, Individually and For Others Similarly Situated,
Plaintiff,
v.
EN ENGINEERING, LLC,
Defendant.

* * * *

CONFERENCE CALL

JANUARY 13, 2010

* * * *

THIS TRANSCRIPTION OF CONFERENCE CALL was taken regarding the above-styled and numbered cause on the 13th day of January, 2020, from 2:00 PM to 2:55 PM, transcribed by Lea Abbott Sturm, Certified Shorthand Reporter, in and for the State of Texas, at Josephson Dunlap Law Firm, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046.

A P P E A R A N C E S

FOR THE PLAINTIFFS:
Mr. Michael Josephson
Ms. Taylor Jones
Mr. Carl Fitz
JOSEPHSON DUNLAP LAW FIRM
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

FOR THE DEFENDANT EN ENGINEERING, LLC:
Ms. Renee Koehler (telephonically)
Ms. Stephanie Dinkel (telephonically)
KOEHLER DINKEL, LLC
900 S. Frontage Road, Suite 300
Woodridge, Illinois 60517
(630) 505-9939

MR. JOSEPHSON: All right. So this is a continuation of our discovery deficiency call from last week. On behalf of the plaintiffs is Michael Josephson, Taylor Jones, and Carl Fitz.

MS. DINKEL: On behalf of defendants, Stephanie Dinkel and Renee Koehler.

MR. JOSEPHSON: Okay. All right. So last week we made it through kind of the general issues and so we're picking up today with the specific deficiencies set out in the January 7th deficiency notice. And so this starts on page 4 of our letter.

So I'm going to go in order just like I did the other day.

So the first topic and corresponding discovery requests are the good faith/willfulness request and objections to the time period. And looking at Interrogatory No. 3 -- and, again, not -- just to kind of repeat but not, you know, completely start over on this, we did discuss some of the limitations last week on the issue of good faith and willfulness.

And my understanding is that the position at issue was -- I think your word was "contemplated" or "came into inception" sometime in

2011. And so for purposes of this interrogatory and the corresponding request, can we agree that the time period for responding for these topics will be 2011 to the present?

MS. DINKEL: Are you referring only to Interrogatory No. 3 when you make that statement?

MR. JOSEPHSON: Yeah. The time period that we're talking about for good faith and for willfulness as it relates to that particular objection is going to be 2011 to the present.

MS. DINKEL: I don't know that it would go all the way to the present, but 2011 would be okay to start.

MR. JOSEPHSON: Sure. And at least through the filing date of the lawsuit.

MS. KOEHLER: This is Renee. So we'll update and supplement that response to include the answer to the question that will go back to 2011, if that answers your question.

MR. JOSEPHSON: It does. And then your stop date will be what?

MS. KOEHLER: If there was a different decision, then I would think that would be a new date, the start date.

MR. JOSEPHSON: It would. I don't

disagree, except that the 3 C asks about when that decision would have been tested for compliance. And so it may be that it wasn't tested from inception to 2017 and then hadn't been tested again; but to the extent that it was reviewed, for any reason, for compliance, we would ask that you include that information in your supplementation.

MS. KOEHLER: We'll do that.

MR. JOSEPHSON: And then -- and I assume, kind of consistent with our discussion last week, to the extent that there is information pertaining to this subject that is privileged or you are not waiving privilege at this point, that is stuff that you will log for?

MS. KOEHLER: Yes, absolutely. I was just going to say I think a lot of these issues will be ironed out when you have our supplement.

MR. JOSEPHSON: Okay. I hope so.

And then for purpose of -- and this kind of relates to the time period and this covers the requests in 2, 10, 14, 19. Just start with those.

I assume that the -- our agreement that you will identify all of the inspectors, subject to your objection, would resolve the

objections that you had in response to those particular requests. And, again, that's 2, 10, 14, and 19.

MS. KOEHLER: Hold on one second. Yeah, so -- I'm not saying it resolves our objection; but we've agreed, subject to those objections, to produce anything from the group of inspectors for the three-year period that you are requesting.

MR. JOSEPHSON: Yeah, and that's a better way of putting it. So thank you.

And then for 22 through 25, I assume that right now you've got objections lodged in response to those requests, in part, because of the definition of the putative class member and that there is a conflict that it seeks information outside of the statute of limitations and so on.

But I just want to make sure that your supplementation based on these agreements as to the scope of the class and the time period, to the extent it's relevant, will be reflected in your supplementation of those particular requests as well.

MS. KOEHLER: Yes.

MR. JOSEPHSON: Okay. And then I

think that -- and then for 25, that kind of goes back to more of the good faith/willfulness discussion that we had. And so for that, the time period -- or at least I would suggest that the time period be 2011 until the lawsuit was filed.

MS. KOEHLER: Yes.

MR. JOSEPHSON: Okay. All right. Interrogatories -- I'm moving on now to page 5, the section Interrogatory No. 7 through 10, if that's okay, unless y'all had any other questions. Are you okay to move on?

MS. DINKEL: Yeah, totally.

MR. JOSEPHSON: Okay. So Interrogatory No. 7 deals with your affirmative defense No. 4 and right now you've got an objection on grounds of privilege, attorney-client work product. You say that the interrogatory -- the contention interrogatory is premature at this stage of litigation.

And so I would like, at least -- it's our view that the objections to that particular interrogatory are improper and we would ask you to go ahead and supplement the interrogatory or amend your response to actually include an answer to support that affirmative defense that you pled.

MS. KOEHLER: So we are removing the attorney-client privilege objection at this time. I still think it's premature and it's better to infer at deposition but I'm not withholding any documents and you will see that in my response and you will also see, you know -- I also cite you to our response in opposition to the Motion for Certification which will give an extremely thorough support for this affirmative defense. So any document that we are relying on will have already been produced in discovery; and if I have anything else that's going to go with my motion, it will be produced.

MR. JOSEPHSON: I appreciate all of that, but we are asking you to supplement or amend this response with an actual answer and are asking you to do that now so that -- or tell us that you are not going to and we can take it up with the Court. I just don't want to wait around and if you have a response, you know, I think we're entitled to it and we're certainly entitled to know the documents, if you are relying on documents, in lieu of providing an actual response because the documents contain information that's responsive and can be -- and if the answer can be derived from

those documents, I would like you to say that. I don't want to have to guess.

MS. KOEHLER: I will do my best to supplement that.

MR. JOSEPHSON: Do you know when we can get your supplementation?

MS. KOEHLER: I already told you on the phone last time that we would supplement these this week, right?

MR. JOSEPHSON: Yes, but we hadn't reached the specific deficiencies and so I don't mind if you want to refer back to the discussion last week. I just want, at least, our discovery dispute record to be clear that this particular interrogatory will be supplemented without the objection and that you will do it this week.

MS. KOEHLER: Yes, I will do it this week.

MR. JOSEPHSON: Okay. Interrogatory No. 8 deals with the legal and factual bases for the defendant's fifth affirmative defense and in the fifth affirmative defense you assert that the class is overbroad and that the classes failed to exclude supervisors and officers of the company. And so, I guess, are you able to tell me more about what you

mean with that objection?

MS. KOEHLER: You want me to put a case cite, or like what are you looking for?

MR. JOSEPHSON: No, no. I mean, you said it doesn't exclude supervisors and officers of the company. Are you referring to people -- sorry. Go ahead.

MS. KOEHLER: To the extent that the class would have been inclusive of that, which was more applicable at the time prior to you narrowing your punitive class definitions. So at the time when the original answer was given, the class was very broad and it could have potentially included supervisors or other individuals who wouldn't have been proper in accordance with the case law. So that's where that comes from.

I'm obviously going to be supplementing that now that you've narrowed your class.

MR. JOSEPHSON: Is that objection going to stand, or are you withdrawing it?

MS. KOEHLER: Well, I'm standing on the objection to the extent it ever becomes relevant but I'm going -- you'll see when you get these. Like, I don't know if this is a productive use of

time; but I'm not withholding any documents based on these objections.

MR. JOSEPHSON: I know, but this is an interrogatory and so --

MS. KOEHLER: I'm not sure what you're asking of me, because I -- you know, I told you to the extent that your class would include supervisors, that would be improper.

MR. JOSEPHSON: Uh-huh, but --

MS. KOEHLER: And I mean --

MR. JOSEPHSON: Are you still maintaining that objection? Do you still feel like it includes supervisors and officers as drafted?

MS. KOEHLER: I'm not (telephone/technical difficulty) -- what you're going to do.

MR. JOSEPHSON: Huh?

MS. KOEHLER: So, I mean, if it's narrowed to purely inspectors, at this point then likely not but we will still keep the objections to the scope of your current class, obviously given the fact that it is our position that it is overly broad, given the welds and the utility and the coating inspectors as well.

MR. JOSEPHSON: Okay. So are you

going to amend this affirmative defense or you are saying -- I guess I'm not clear. Are you keeping the affirmative defense?

MS. KOEHLER: Yeah, no, but you didn't amend your complaint yet; so my affirmative defenses have to stand based on the complaint that's in place. So if you amend your complaint, I will amend my affirmative defenses. I mean, I can't amend based on your motion. I mean, that's the issue we're facing here is your complaint still remains as drafted. And so to some extent, I stand on my affirmative defenses, given that that's still there. And you could change your motion at any time.

MR. JOSEPHSON: I could. But do you think with our existing motion, that there is still a conflict?

MS. KOEHLER: Potentially, given -- you know, it's our position that your class is still overly broad but, like I said, I'm not withholding any documents on it and if you amend your complaint to mirror your motion, I would be happy to reevaluate my defenses.

MR. JOSEPHSON: I know, but this interrogatory asks you to provide the information that supports your affirmative defense and so what

is the information or can you supplement your interrogatory to identify the documents and/or information that you think supports your fifth affirmative defense?

MS. KOEHLER: I'll supplement as I see fit and then you will decide whether -- what you want to do with that.

MR. JOSEPHSON: Okay. But you are going to supplement it this week?

MS. KOEHLER: Yeah, I said I would get you a supplement of all of this. Like I said, I don't know that this is a productive use of time.

MR. JOSEPHSON: Well, we talked last week about the general deficiencies and these are specific and I just thought it would be better for us to have a clear record as to what you're going to do with each of these affirmative defenses.

No. 9 asks you to state the basis, both legal and factual, supporting your eighth affirmative defense and identify any documents supporting the same. And your eighth affirmative defense claims that the plaintiff is similarly situated to any individuals who may be attempting to represent and that the plaintiff and the members of the classes aren't similarly situated.

And then it goes on to say that the potential claims of the purported class members, which are based on alleged misclassification as an exempt employee, reflect variability and lack commonalty, lack predominance, and lack typicality, and that they're subject to individualized defenses.

Do you plan to remove any of your objections to this particular interrogatory which right now are attorney-client privilege and work product prematurity?

MS. KOEHLER: This goes exactly similar to our prior conversation. Yes, I -- I'm not removing the prematurity objection; but, like I said before, I'm not withholding any documents based on those objections.

So we'll update the response accordingly; but, again, this is based on the current complaint.

MR. JOSEPHSON: I understand that, but what's the prematurity objection about? Like, I didn't see that in Rule 33.

MS. KOEHLER: I mean, it's early in the case. We haven't had depositions. We haven't exchanged full discovery. You've already changed your purported class.

MR. JOSEPHSON: Well, I narrowed it. I don't know that that's changing it.

I guess what is it that you are claiming makes the named plaintiff not similarly situated to the class that he is attempting to represent and that plaintiff and the putative class members aren't similarly situated and that --

MS. KOEHLER: Are you ask- --

MR. JOSEPHSON: I mean, you've pled a lot of things in your eighth affirmative defense and you haven't provided any information to explain that, state the basis, as we asked.

And so are you going to now provide that to us or is it something that has to be taken up with the Court?

MS. KOEHLER: You asked me that question based off the way your complaint is pled or the way your motion is pled, because --

MR. JOSEPHSON: Well, I thought that when we spoke last week, that we were in agreement that we had narrowly defined the class and that that had -- that would now allow you to answer some of the discovery that you weren't able to answer.

And so I'm asking, is Interrogatory No. 8 an interrogatory that you can now answer,

knowing that the class has been defined in our Motion for Conditional Certification?

MS. KOEHLER: Yes, I will supplement my answers but you have -- yes. That's it. I will supplement the answers.

MR. JOSEPHSON: Okay. And will your supplementation explain why you think there's variability and lack of commonalty and predominance and typicality?

MS. KOEHLER: I will do my best.

MR. JOSEPHSON: I know. And I know you will and I appreciate that; but if there was a part of your answer, for example, that you didn't intend to supplement and you could let us know, I think we would appreciate it.

MS. KOEHLER: I -- no, I intend to supplement my answer but, again, you are dealing with a complaint that's different from a motion.

MR. JOSEPHSON: Is there any part of your eighth affirmative defense that you are not going to address in response to Interrogatory No. 9?

MS. KOEHLER: I don't believe so.

MR. JOSEPHSON: And Interrogatory No. 10 asks you to state the basis, both legal and factual, supporting your sixteenth affirmative

defense and identify any documents supporting the same. And your sixteenth affirmative defense says that plaintiff in any class or collective member is or was exempt from the overtime and under Federal law and state law under the administrative professional executive exemption or combination exemption or highly compensated exemption, those are a lot of exemptions to claim.

I mean, is there -- what are you really claiming is the exemption that's applicable to the inspector universe?

MS. KOEHLER: Yeah, we'll supplement.

MR. JOSEPHSON: But what are you claiming? Is it more than one? Is it -- like, what are we dealing with, from your perspective?

MS. KOEHLER: Again, subject to our objections that the inspectors are even similarly situated, we will spell out the specific exemptions as they apply to the different inspector positions. Of course (telephone/technical difficulty) -- an individual determination.

MR. JOSEPHSON: But what you are going to do is if you think there is a weld inspector, you are going to say these -- these exemptions apply to this type of inspector, something to that effect,

and here is why.

MS. KOEHLER: We're going to supplement the answer. We might not do it exactly how you want us to do it, but we will be supplementing now that you narrowed your purported class.

MR. JOSEPHSON: I understand. But, I mean, are you going to tell us which exemptions you think apply to the different inspector types and the documents or information that -- that support that?

MS. KOEHLER: Yeah.

MR. JOSEPHSON: Okay. And are you going to remove your objections to Interrogatory No. 10?

MS. KOEHLER: Well, we already told you we still have objections to Interrogatory No. 10. So --

MR. JOSEPHSON: What are you going to continue to object to?

MS. KOEHLER: I misunderstood you. I think -- I thought --

MR. JOSEPHSON: No, no. What objections to Interrogatory No. 10 are you going to assert?

MS. KOEHLER: I don't believe we will

be asserting any at this time. But if I need to, I will respectfully respond.

MR. JOSEPHSON: Okay. All right. So the next category or request for production, No. 3 and 4 -- and I think we've reached an agreement on these two requests which asks for this data and information pertaining to the Illinois and Massachusetts class; and it's my understanding from our conversation last week that you are going to supplement 3 and 4 with the actual class information for all of the inspectors who worked in Mass. or Illinois during the statutory time period.

MS. KOEHLER: We're going to be supplementing for the list of inspectors for that time period, for the three-year time period.

Just so you know, we're not aware at this time of -- our client continues to find a method or means; but there is no document that lists by an employee's workweek the location they worked at. So we intend on doing the same thing we did for you when we just had the weld inspectors which is on the last column, I believe, we listed the different states in which they worked.

MR. JOSEPHSON: Right. And I appreciate that. You have locations of work on

that, the last date worked, what their employee number was, and the type of inspector that you said that they were.

And so -- and I appreciate that and I guess to identify where each person would have worked in any particular time period, it would just require going through those different daily work reports and connecting those work reports with the individual and the location.

MS. KOEHLER: The actual time sheets have the locations and we're trying to find some sort of a printout that will explain the job code and where that's located, if it's not already implied by the name of the job.

MR. JOSEPHSON: That would be helpful.

MS. KOEHLER: We're looking on trying to get a key, so to speak, that explains the location of the project that they worked on.

MR. JOSEPHSON: Yeah, that would be great.

MS. KOEHLER: We're also -- on the issue of that list, we are also supplementing to give you hire dates because that will give you an idea too about where they fall as far as the statute of limitations that you are purporting.

MR. JOSEPHSON: Okay. That would be helpful. And is your ETA on that this week?

MS. KOEHLER: Yeah. So my hope was to have this list to you tomorrow so at least you can have that list prior to -- you know, with enough time to look at it, even if we don't have all the documents available and Bates-stamped and ready to go until Friday.

MR. JOSEPHSON: Okay. That would be fine.

MS. KOEHLER: We're also -- just so you know schedulewise, we're also meeting with our client tomorrow. So if we don't get to it until Wednesday morning, we just didn't get enough time to turn it back around.

MR. JOSEPHSON: Okay.

MS. KOEHLER: Meaning that list.

MR. JOSEPHSON: Sure. I understand. But I think your outside deadline is to get it all to us this week.

MS. KOEHLER: By the end of the week. Yeah.

MR. JOSEPHSON: That's fine.

Okay. Request for Production 7 through 9 pertain to the master services agreements

and addendums thereto and the contracts or agreements which may be the same thing as the master services agreements.

And my understanding from our conversation last week was that -- that you aren't able to produce that information because of terms or restrictions in those terms which prevent you from disclosing that information to third parties such as ourselves, right?

MS. KOEHLER: Yes.

MR. JOSEPHSON: I think you said you were legally prohibited from providing the information.

MS. KOEHLER: That's my understanding, based on the contract language, that we wouldn't be able to provide that to you.

MR. JOSEPHSON: Do you know if someone within EN is going to reach out to those clients to see if we can't get the information produced, subject to our protective orders?

MS. KOEHLER: First of all, I'm not going to disclose any of our attorney-client communications, nor our work product.

MR. JOSEPHSON: I don't think I'm asking you to. If you think -- is somebody within

that organization going to attempt to get permission to disclose that -- those documents, subject to our protective order?

MS. KOEHLER: If I answered your question and I'm presuming that -- how are you doing on your subpoena request with respect to the third parties?

MR. JOSEPHSON: Doing how, like have they been served? Is that what you are --

MS. KOEHLER: Do you have any?

MR. JOSEPHSON: I have not had any conversations. I haven't -- say it again?

MS. KOEHLER: Have you guys received any of the documents?

MR. JOSEPHSON: No, we haven't. We haven't. But I will certainly produce them when we do.

MS. KOEHLER: What was the deadline that they had to respond by? Do you know that?

MS. JONES: January 22nd.

MR. JOSEPHSON: Could you hear Taylor? She said January 22nd.

MS. KOEHLER: So they haven't served you with any objections or anything at this point, then?

MR. JOSEPHSON: That's right. But I do think if -- I mean, again, if you have folks on your side that can have that conversation about the confidentiality part of it, I think that would help move the ball forward, maybe let those folks know that we can certainly keep the documents confidential, pursuant to our protective order.

And if there is some other impediment, you know, we're obviously happy to work with whoever we need to, to try to resolve that issue. But we do think it's the kind of information that we should be entitled to.

MS. KOEHLER: I think you can take that up with your subpoena responses. However you handle that is up to you.

MR. JOSEPHSON: I will, and I appreciate that. But I would -- I do think there is an argument to be made that that kind of information is within your possession, custody, and control and that there is an obligation on your part to procure the release of those documents. And even if it's done in a way that requires some heightened level of protection, you know, I still think it's important to try to get them.

And since you are claiming that you

can't provide them because of a term in the agreement, I think it's incumbent on EN to at least make the effort to try to produce what it can in the meantime.

MS. KOEHLER: So my understanding is I don't have the authority to do that.

MR. JOSEPHSON: But when you say you, are you talking about like you as an individual or EN doesn't have the authority to --

MS. KOEHLER: Our client does not have the authority to disclose that information. So EN Engineering does not have the authority to disclose that information.

MR. JOSEPHSON: But are there any, like -- we touched on this, I think, last week. You guys told me you gave notice to whoever you needed to give notice to, I think, about the request.

Is there anything that we can do on our end to address any concerns about the confidentiality of the documents, you know, further our agreement to protect them under the protective order or something to that effect?

MS. KOEHLER: I think that you need to take that up with your subpoena request and to the entity that is maintaining the confidentiality of

the document.

MR. JOSEPHSON: And we can certainly do that, but just to kind of run this issue to the ground, I mean, you guys have not had any of those communications with the third parties, you being --

MS. KOEHLER: I'm not going to disclose my work product to you. I've already gone so far as to tell you that we've given notification.

MR. JOSEPHSON: Okay. You also objected that the invoices from the third party to ENE or vice versa, that those -- those are confidential and can't be produced.

MS. KOEHLER: Correct.

MR. JOSEPHSON: And so the invoices themselves, is that a provision of the MSA? I've just never seen that before.

MS. KOEHLER: Again, I'm not going to go through the provisions of the MSA with you.

MR. JOSEPHSON: I know, but you are withholding informa- -- let me just say this: In your supplementation where you have a withholding statement, you are going to list these documents in that withholding, right?

MS. KOEHLER: So with the specific provision, I would be happy where that question is

asked, to update the response that we're withholding any invoices.

MR. JOSEPHSON: No, I know you are withholding them; and I know you are withholding the MSAs. But to the extent that we've requested a log of what's being withheld, is that something that you would agree to include in that log so we know exactly what we're fighting over?

MS. KOEHLER: We'll respond accordingly that we're not producing the invoices that you are requesting. I don't know what else you expect beyond that.

MR. JOSEPHSON: I think some effort to quantify the number of pages being withheld and quantify the number of documents being withheld, some type of -- something that identifies what the document is, how many pages it is, and why you think it's not being -- it doesn't have to be produced. I think that would be useful in kind of narrowing the issue for the Court.

MS. KOEHLER: So that really has nothing to do whatsoever with any kind of a privilege log that would be required. It's just plain and simple. We're not producing the invoices. To go through and belabor and count how many pages

are the invoices for how many different projects over the course of three years is completely burdensome.

MR. JOSEPHSON: Well, but you are not even producing anything. I mean, you are not giving us the basics. And you are saying you are not doing it because of the contractual nondisclosure provisions, and then you object to relevance and other things as well.

MS. KOEHLER: Right.

MR. JOSEPHSON: I just wanted to know what we're fighting about; and if you have the ability to quantify it, that's great. If you are refusing to, that's okay. We can take that up with the Court. I was just hoping to be able to, at least, narrow that issue for the Court.

MS. KOEHLER: Not on the invoices, no.

MR. JOSEPHSON: Is that true with the MSAs as well? I'm sorry. You cut out. What did you say? Hello?

MS. KOEHLER: I said "yes." I'm sorry if you can't hear me.

MR. JOSEPHSON: Yeah, it cut out.

Let me ask you this: Do you have an attorney that you've been dealing with at these

companies that we can reach out to or contact?

MS. KOEHLER: No, like I said, we gave proper notice under the contract provisions; and that's -- that's that.

MR. JOSEPHSON: Okay.

MS. KOEHLER: I do think, like, for example, you could probably do a LinkedIn search or even a company search. Like specifically for Ameron you can probably find out who their general counsel is. I don't know who you sent your subpoena to, but I'm pretty sure that's all public record.

MR. JOSEPHSON: Right, but if you have a contact there that you've been in touch with, that's not something you are going to reveal to us?

MS. KOEHLER: I just told you you could do the same thing I did, which is look at LinkedIn.

MR. JOSEPHSON: I know. I mean, these are both big companies. If there is somebody that is working on this that you've been communicating with and you have their name and phone number, I'm happy to reach out to them to kind of move the ball forward on this issue. Seems like one we could work out.

MS. KOEHLER: I don't have anybody to

give you contact information for.

MR. JOSEPHSON: So you would agree then, at least, on Request 7 through 9 and 21, we're at an impasse? Hello?

MS. KOEHLER: I said "yes." I'm sorry it's not coming through.

MR. JOSEPHSON: It just sounded like silence, crickets.

MS. KOEHLER: I said "yes." We're at an impasse on those.

MR. JOSEPHSON: All right. 12 and 13 go back to the identification of the class members in Illinois and Massachusetts and we addressed this earlier and I think we've reached a consensus on that.

Is there anything about those particular requests that you think we're not in agreement on from y'all's perspective?

MS. KOEHLER: Not that I'm aware of, based on what we've already said earlier.

MR. JOSEPHSON: Okay. And then 18, we talked about it with respect to the interrogatories and what it is you are going to rely on to show that they are not similarly situated and that is something that's going to be addressed in your

supplementation of 'rogg -- I guess it's like 7 through 9.

MS. KOEHLER: We already answered this originally by saying that, you know, you can look at a job description, the daily log, the daily job reports. None of that's changed.

MR. JOSEPHSON: Right, but there is only one job description for the inspector position, that I've seen. Is that right?

MS. KOEHLER: Yeah.

MR. JOSEPHSON: Do all inspectors get this -- get paid with the straight-time system?

MS. KOEHLER: So we're not here to answer your questions. We're here to talk about the discovery responses and the deficiencies you've raised. So let's move on.

MR. JOSEPHSON: Hold on.

MS. KOEHLER: You are going to let me finish. For once you are going to let one of us finish our sentences and get a word in edgewise.

MR. JOSEPHSON: But you cut me off.

MS. KOEHLER: You just did it again. Let me finish, please.

We're here to discuss the deficiencies that are raised in your January 7, 2020 letter.

This is second day of doing this. I'm putting time aside to do that. We're going to supplement areas of the discovery that we've already committed several times now of supplementing.

We're not going to answer any questions regarding the factual basis of this lawsuit in this discussion.

MR. JOSEPHSON: Well, how can you confer if you don't talk about the facts that you are relying on?

MS. KOEHLER: I just answered your question. Do you have a particular request now that you are asking whether or not we're going to supplement?

MR. JOSEPHSON: Yeah, in 18, I was asking if the inspectors are all paid according to the straight-time system that is at issue.

MS. KOEHLER: 18 does not ask that question; and, again, I'm not a deponent. We will be responding to the discovery requests in the manner that we've already stated.

MR. JOSEPHSON: Well, let me ask it another way. You are not sworn in, and I agree you are not a deponent.

But is everybody that's an inspector

paid using the straight-time system? I mean, is that something that you are claiming makes these folks not similarly situated?

MS. KOEHLER: Again, I'm not going to answer your questions. Okay?

We will supplement our discovery. You have just recently reduced the purported class; so we're going to take that into account when we do supplement. Have I sat here and had a chance to look at the pay for every person that we're supplementing for at this point? No, I have not had that opportunity. So I cannot answer your question.

MR. JOSEPHSON: Will you supplement to say whether or not the inspectors are all paid the same way?

MS. KOEHLER: No. There is not a specific discovery request, that I'm aware of, that asks that question. You are more than welcomed to --

MR. JOSEPHSON: I'm sorry. Go ahead.

MS. KOEHLER: There is not a specific discovery request, that I'm aware of, that asks that question. We will be supplementing the discovery responses.

MR. JOSEPHSON: I think that there are

a whole bunch of requests that asks you why you think people aren't similarly situated, and I'm just asking you to clarify. Are you claiming that they aren't similarly situated because they are all paid according to a different compensation system, or is that something that's not part of the equation?

MS. KOEHLER: I don't know the answer to that question at this point. Now that you've narrowed your purported class, I do not know the answer to that question.

MR. JOSEPHSON: Well, we would like your supplementation to address whether you are claiming that the inspectors were paid something other than straight time for overtime.

MS. KOEHLER: And I will look at the discovery requests; and if that is a specific request, we will supplement accordingly.

MR. JOSEPHSON: Okay. I just don't want to see it in opposition to certification when we've asked for what it is you are claiming as it relates to being similarly situated.

MS. KOEHLER: Well, because of the timing of your narrowing of the scope and the timing of when we've responded to the discovery based on the overly broad scope in your complaint, which

still hasn't been amended, the likelihood of that happening is at your own creation and it probably will happen that way.

MR. JOSEPHSON: Well, for example, when you claimed that this DOL inspection formed the basis of your good faith defense, were you doing that for a particular type of inspector or for inspectors as a whole?

MS. KOEHLER: The discovery will establish that.

MR. JOSEPHSON: Well, I know, but this is an affirmative defense that you've pled and so I feel like you are being a little bit evasive, and all I'm asking is are you claiming that all the inspectors are paid the same or are you claiming that they get paid according to different types of compensation systems?

MS. KOEHLER: That's the same question you've asked me, just a different way, probably three times in this call, of which I've responded I've not had an opportunity to look at the pay for everybody now in your narrowed purported class. So I don't know the answer to that question.

MR. JOSEPHSON: Okay. So it was one of those defenses that you maybe haven't had a

chance to go back and revisit?

MS. KOEHLER: So, again, our affirmative defenses are based on the complaint as it's currently pled. We're trying to -- we're trying to make things a little more comprehendible by responding with supplemental discovery now that you have narrowed that purported class.

MR. JOSEPHSON: Okay. And I don't know if it's a bad connection on y'all's end, but you are breaking up a little bit. And if we have the same problem, just let me know and I will repeat myself.

On Request for Production No. 26, this deals with CAFA jurisdiction. I guess, is -- does your position on CAFA jurisdiction change with the agreement to provide information about all the inspectors?

MS. KOEHLER: Don't have jurisdiction under that; so I'm not sure how that would change.

MR. JOSEPHSON: Well, but I didn't know if it was you were limiting it to a particular group of inspectors or something else and now that we've reached a consensus on the universe of inspectors, do you still contend that there is not CAFA jurisdiction?

MS. KOEHLER: I said "yes." I don't know if that came through.

MR. JOSEPHSON: It didn't and I don't know -- I don't want to blame anybody for technical difficulties. Did you say that that was your -- that was still your position, that there is no CAFA jurisdiction?

MS. KOEHLER: Yes.

MR. JOSEPHSON: Okay. I heard that. Thank you. It sounds like y'all are -- y'all are talking to us next to a waterfall, which I know isn't the case, but that's how it sounds on our end.

Request No. 27 through 31 pertain to the -- the defenses that we've talked about -- I'm sorry, through 30 -- pertain to the defenses that we've talked about earlier. And my understanding is that those interrogatories and the corresponding requests are part of what you will be supplementing this week and this would cover 27 through 30. Is that right?

MS. KOEHLER: Did you hear that?

MR. JOSEPHSON: The court reporter is shaking her head no. I asked if you were supplementing 27 through 30 this week and your response was?

MS. KOEHLER: Yes.

MR. JOSEPHSON: Okay. She got that. She is nodding affirmatively. Okay.

And so that -- right now I think the best thing for us to do is to get your supplementation this week, review it, and then reconvene on any outstanding issues that we may -- we may have once we've had a chance to review them. Okay?

MS. KOEHLER: Okay.

MR. JOSEPHSON: And so I think that's it from our perspective. I do know that we talked about having an ESI discussion today.

Are you in a position where you can talk about kind of the custodians that the company has and how they have preserved -- how their documents are stored, how their information is stored?

MS. KOEHLER: What I think we said last week is that we would schedule that for later in the week and we needed proposed -- you were going to give us some dates. We were hoping for Thursday or Friday.

MR. JOSEPHSON: Okay. Is there a time on Friday that works well with y'all?

MS. KOEHLER: Actually, yeah, hold on one second. We're thinking about 11 o'clock. And we're Central Standard time. I presume you are, too.

MR. JOSEPHSON: That's right. So Friday the 17th at 11:00.

MS. KOEHLER: Correct.

MR. JOSEPHSON: That would be great. All right. We will circulate a call-in number for that call and we will visit with you then. Okay?

MS. KOEHLER: Michael, do you intend on -- with the production of the supplemental documents that's going to occur by Friday of this week, do you still intend on going forward with the 30(b)(6), I believe, on the 27th?

MR. JOSEPHSON: I mean, the answer is yes, with the qualification that if what we get is not what, you know, we thought we would receive based on our conversations, you know, we may -- we may need to take that -- that discussion to the next level and, perhaps, get the Court involved.

You know, obviously we want to go forward with both depositions. That's our plan. It's booked and unless we think there is, you know, a big problem, you know, we do plan to go forward;

and I assume y'all are still in the same boat with Rossman on the 28th.

MS. KOEHLER: Yeah, we definitely are. For us, you know, it's not canceling a flight or anything like that. So, yes.

Of course if there is something with a pending motion on the 30(b)(6) we can work around that as well; but as it stands, yes, we do plan on going forward the 27th and the 28th.

MR. JOSEPHSON: Okay. Sounds good.

MS. KOEHLER: Thank you.

(Conference call concluded at 2:55 PM.)

STATE OF TEXAS

I, Lea Abbott Sturm, Certified Court Reporter in and for the State of Texas, do hereby certify to the following:

That the transcript of the conference call from page ____ to page ____ is a true record of the proceedings;

I further certify that I am neither counsel for, nor related to, nor employed by any of the parties or attorneys to the action in which this proceeding was taken. Further, I am not a relative or employee of any attorney of record in this cause, nor am I financially or otherwise interested in the outcome of the action.

Subscribed and sworn to on ___ day of _________, 2020.

______________________________

Lea Abbott Sturm, TX CSR 6611
Expiration Date: 4/30/22
Compass Reporting Group
Registration No. 795
7020 Portwest Drive, Suite 140
Houston, Texas 77024
P: (844) 817-1080