**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN ROSSMAN, Individually and For Others Similarly Situated, | Case No. 1:19-cv-5768 |
| Plaintiff, | Honorable Edmond E. Chang |
| | Magistrate Judge Jeffrey Cole |
| v. | |
| EN Engineering, LLC, | |
| Defendant. | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
PROTECTIVE ORDER TO PROHIBIT DISCOVERY OF PRIVILEGED AND
IRRELEVANT DOCUMENTS AND TO QUASH SUBPOENA</u>**

SEYFARTH SHAW LLP
Gerald L. Maatman, Jr.
gmaatman@seyfarth.com
Matthew Gagnon
mgagnon@seyfarth.com
Alex W. Karasik
akarasik@seyfarth.com
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:     (312) 460-5000
Facsimile:      (312) 460-7000

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

      A.     Dispute About Koehler Dinkel Documents .................................................... 3

      B.     Discovery Dispute Regarding Ameren Documents............................................ 6

      C.     The Parties' Conferral Efforts................................................................... 9

ARGUMENT ..................................................................................................................... 9

I.       LEGAL STANDARD................................................................................................. 9

II.     THE COURT SHOULD PROHIBIT DISCOVERY INTO PRIVILEGED
        KOEHLER DINKEL DOCUMENTS .............................................................. 10

      A.     ENE Has And Will Continue To Produce Documents Relevant To Its
             Good Faith And Willfulness Defenses, But It Should Be Shielded From
             Disclosure Of Privileged Documents Outside The Scope Of That Waiver......... 11

      B.     ENE Should Be Protected From Discovery Into The Legal Advice It
             Received To Defend Against This Lawsuit ........................................................ 15

III.    PLAINTIFF HAS FAILED TO ESTABLISH THAT THE AMEREN
        DOCUMENTS ARE RELEVANT OR THAT THE BURDEN OF THEIR
        PRODUCTION IS PROPORTIONAL TO THE CLAIMS IN THIS LAWSUIT .......... 18

CONCLUSION.................................................................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiossa v. Bank of America, N.A.*,
No. 10 CV 1275, 2011 WL 4026902 (E.D.N.Y. Sept. 12, 2011) ......................................12, 13

*Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*,
240 F.R.D. 401 (N.D. Ill. 2007)..........................................................................................22

*Bowne of New York City, Inc. v. AmBase Corp.*,
150 F.R.D. 465 (S.D.N.Y. 1993) ........................................................................................13

*Brodsky v. Human, Inc.*,
No. 08C50188, 2009 WL 1956450 (N.D. Ill. July 8, 2009) ...................................................22

*Calobrace v. Am. Nat. Can Co.*,
No. 93-CV -0999, 1995 WL 51575 (N.D. Ill. Feb. 6, 1995) ..................................................22

*Carr v. O'Leary*,
No. 89 C 9218, 1992 WL 373032 (N.D. Ill. Nov. 20, 1992) *on
reconsideration*, 89 C 9218, 1992 WL 370242 (N.D. Ill. Dec. 2, 1992) ...............................22

*In re County of Erie*,
546 F.3d 222 (2d Cir. 2008).................................................................................................12

*Foster v. City of New York*,
No. 14-CV-4142, 2016 WL 524639 (S.D.N.Y. Feb. 5, 2016).................................................12

*Hickman v. Taylor*,
329 U.S. 495 (1947).............................................................................................................17

*Hobley v. Burge*,
433 F.3d 946 (7th Cir. 2006) ...............................................................................................16

*Johnson v. J. Walter Thompson, U.S.A., LLC*,
No. 16-CV-1805, 2017 WL 3432301 (S.D.N.Y. Aug. 9, 2017)..............................................14

*Kleen Products LLC v. Packaging Corp of America*,
No. 10 C 5711, 2012 WL 4498465 (N.D. Ill. Sept. 28, 2012)................................................22

*Menasha Corp. v. U.S. Dep't of Justice*,
707 F.3d 846 (7th Cir. 2013) .........................................................................................16, 17

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
365 F. Supp. 3d 916 (N.D. Ill. 2019) ...................................................................................10

*Patterson v. Avery Dennison Corp.*,
    281 F.3d 676 (7th Cir. 2002) .............................................................................10

*Precision Dose, Inc. v. U.S.*,
    No. 12-CV-50180, 2012 WL 6172177 (N.D. Ill. Dec. 11, 2020)...........................21

*Pursley v. City of Rockford*,
    No. 18-CV-50040, 2020 U.S. Dist. LEXIS 50513 ................................................19

*Rossman v. Amerin Ill. Co.*,
    No. 20-CV-2214 (C.D. Ill. Apr. 1, 2020) ...............................................................9

*Rowe Intern. Corp. v. Ecast, Inc.*,
    241 F.R.D. 296 (N.D. Ill. 2007)...........................................................................11

*Sandra T.E. v. South Berwyn School Dist. 100*,
    600 F.3d 612 (7th Cir. 2010) ...............................................................................16

*Seyler v. T–Systems N.A., Inc.*,
    771 F. Supp. 2d 284 (S.D.N.Y. 2011).................................................................11

*Simon v. Northwestern Univ.*,
    No. 1:15-CV-1433, 2017 U.S. Dist. LEXIS 2461, 2017 WL 66818 (N.D. Ill.
    Jan. 6, 2017)........................................................................................................19

*Steelcase v. Haworth*,
    954 F.Supp. 1195 (W.D. Mich. 1997) .................................................................13

*Sunlust Pictures, LLC v. Doe*,
    No. 12 C 1546, 2012 U.S. Dist. LEXIS 121368 (N.D. Ill. Aug. 27, 2012)...........19

*Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*,
    837 F.Supp. 616 (D. Del. 1993)...........................................................................13

*Tresona Multimedia, LLC v. Legg*,
    No. 15 C 4834, 2015 WL 4911093 (N.D. Ill. Aug. 17, 2015)...............................19

*United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*,
    No. 2:07 CV 358, 2009 WL 3200540 (N.D. Ind. Sept. 25, 2009).........................22

*United Oil Company, Inc. v. Parts Assocs., Inc.*,
    227 F.R.D. 404 (D. MD. 2005).............................................................................22

*United States v. Nobles*,
    422 U.S. 225 (1975)............................................................................................16

*United States v. Smith*,
    502 F.3d 680 (7th Cir. 2007) ...............................................................................16

*Welch v. Eli Lilly & Co.*,
   No. 1:06-cv-0641, 2009 WL 700199 (S.D. Ind. Mar. 16, 2009) ...........................................22

**Statutes**

Freedom of Information Act ...........................................................................................15

**Other Authorities**

Fed. R. Civ. P. 26(a)(1)(A)(i) .........................................................................................5

Fed. R. Civ. P. 26(b)(1)...................................................................................................10

Fed. R. Civ. P. 26(b)(3)...................................................................................................16

Fed. R. Civ. P. 26(c) .......................................................................................................10

Illinois Rules of Professional Conduct Rule 3.7 .............................................................5

63462928v.3

NOW COMES EN Engineering, LLC ("ENE"), by and through its attorneys, Seyfarth Shaw LLP, and for its Motion for Protective Order to Prohibit Discovery of Privileged and Irrelevant Documents and to Quash Subpoena, states as follows:

## INTRODUCTION

Plaintiff Kevin Rossman brought this action on August 27, 2019 to recover overtime pay he alleges Defendant ENE owes to him and other putative members of the classes and collective action he seeks to represent. Since discovery began in October 2019, Plaintiff has served three separate sets of discovery requests, which called for the production of 62 different categories of documents and answers to 11 interrogatories. Defendant ENE has diligently responded to Plaintiff's many discovery demands and has made every effort to comply with its discovery obligations in good faith. To date, it has produced over 5,600 pages of documents and is undertaking an expensive and burdensome review and production of electronically stored information. Plaintiff, however, has subjected ENE to seemingly endless requests for additional information and documents and repeated threats of motion practice. Plaintiff has also sent a subpoena to ENE's former counsel in this lawsuit, Koehler Dinkel, and one of ENE's customers. Those subpoenas are the subject of this motion.

Plaintiff alleges that ENE improperly classified him and others as exempt from the overtime requirements of the FLSA and analogous state laws. ENE's corporate representative testified that ENE made that classification decision in 2011 in good faith and in reliance on the advice of counsel. ENE has conceded that the assertion of that defense results in a limited waiver of privilege over documents that relate to that decision, including documents that could shed light on ENE's state of mind when it received that advice. ENE has and will continue to produce documents relating to that defense, including those that would otherwise have been privileged.

But Plaintiff is insisting that the scope of that waiver is virtually unlimited, exposing to discovery all of ENE's legal advice since 2007 that even touches on the general subject of FLSA classification, regardless of whether it had any bearing on the actual classification decision at issue. The subpoena to Koehler Dinkel seeks 13 broad categories of privileged documents and information over a 13-year time period, including many that relate directly to ENE's strategy and legal advice in defense of this lawsuit. ENE is seeking to quash this subpoena and to prohibit this improper intrusion into ENE's privileged and work-product-protected documents.

The subpoena on one of ENE's customers, Ameren Illinois Company ("Ameren") demands the production of an additional 11 categories of documents. Plaintiff claims that these documents are relevant to show the tasks that Inspectors performed. But ENE has already produced the relevant versions of the Master Service Agreement between ENE and Ameren, time and payroll information, and various job descriptions, employee handbooks, and ESI that relate directly to the tasks performed by Inspectors. The additional documents that Plaintiff is seeking from Ameren and ENE will not materially add to the relevant information that has already been produced in this lawsuit. ENE is also seeking an order protecting it from the undue and disproportionate burden of producing troves of documents that are of little or no relevance.

## FACTUAL AND PROCEDURAL BACKGROUND

ENE is an engineering, consulting, and environmental services firm, which provides inspection services for the gas pipeline and utility industry. (Hulet Decl.[1], ¶¶ 1-9.) Plaintiff Kevin Rossman was hired by ENE as a seasonal, salaried-exempt Weld Inspector on or about April 23, 2018 and was employed by ENE through April 19, 2019. (*Id.*, ¶¶ 14-15, 18.) On August 27,

---

[1] "Hulet Decl." refers to the Declaration of Mitch Hulet, ENE's Chief Risk Officer, which was filed as Exhibit 1 to ENE's Response in Opposition to Plaintiff's Motion for Stage-One Conditional Certification and Notice to Putative Class Members, ECF No. 38-1.

63462928v.3

2019, Plaintiff filed a complaint in the U.S. District Court for the Northern District of Illinois against ENE, asserting class and collective action claims under the FLSA and Illinois and Massachusetts law. (ECF No. 1, Compl., ¶¶ 13, 15, 17, 99-115.) Plaintiff alleges that he and other ENE employees were improperly classified as exempt from state and federal overtime requirements and therefore were not paid overtime they were due. (*Id.* ¶¶ 44, 49, 52.)

### A. Dispute About Koehler Dinkel Documents

Plaintiff served his First Set of Discovery to EN Engineering, LLC on November 12, 2019. (Maatman Decl.[2] ¶ 5, Ex. 1.) Those requests contained many requests for documents regarding ENE's classification of Plaintiff and putative members of the class/collective (i.e., other Inspectors) as exempt employees, (*see, e.g., id.*, ¶ 5, Ex. 1, Interrogatory Nos. 2, 3, RFP Nos. 14, 19, 23, 25, 35), as well as documents relating to the IDOL investigation in general (*see, e.g., id.*, RFP Nos. 31-34). Notably, however, Plaintiff did not ask for documents that specifically relate to ENE's goof faith/willfulness defenses, as stated in ENE's 9th, 10th, or 17th affirmative defenses, even though Plaintiff specifically asked for documents and Interrogatory responses relating to six of ENE's other affirmative defenses. (*See id.* Ex. 1, RFP Nos. 26-31).

ENE served its Answers and Objections to Plaintiff's First Set Discovery to EN Engineering, LLC on December 20, 2019. (*Id.* ¶ 6, Ex. 2.) Although Plaintiff requested some documents and information going back ten years (August 27, 2009 to the present) (*see Id.* Ex. 1 at 4, "RELEVANT TIME PERIOD"), ENE's discovery responses objected to producing documents or information beyond two years from the date the Complaint was filed. (*Id.* Ex. 2 at 2, General Objection No. 4.) The specific responses relating to ENE's decision to classify

---

[2] "Maatman Decl." refers to the Declaration of Gerald L. Maatman, Jr., filed concurrently herewith.

Inspectors as exempt were therefore expressly limited in temporal scope to a two-year time period. (*Id.*, Ex. 2, Response to RFP No. 14.)

On January 7, 2020, Plaintiff's counsel sent a letter to ENE's counsel that purported to "address various issues with ENE's responses to Rossman's First Set of Discovery."[3] (*Id.* ¶ 8, Ex. 4.) Among other things, Plaintiff asked for a more fulsome production of documents and information relating to ENE's good faith/willfulness defenses, requesting that "ENE supplement its discovery to clarify what steps ENE affirmatively took to ensure its classification and compensation of the Putative Class Members complied with the FLSA (and applicable state wage and hour laws), when such steps were taken, as well as to provide information as to corporate knowledge of the FLSA." (*Id.*, Ex. 4 at 5.) ENE promptly amended its discovery responses on January 21, 2020 and produced documents that relate to its 2011 decision to classify Inspectors as exempt, including documents that would otherwise be privileged. (*See, e.g., id.* ¶ 10, Ex. 6, Responses to RFP Nos. 14, 25.) ENE also supplemented its response to Interrogatory No. 3 to include a fulsome description of ENE's 2011 classification decision, including who participated in that decision, and additional information about a 2017 Illinois Department of Labor investigation, which investigated the classification of Inspectors and concluded that they were properly classified as exempt. (*Id.*, Response to Interrogatory No. 3.)

Even before those amended responses were served, however, Plaintiff's counsel complained that ENE's production "appears that it could be incomplete," noting that the only documents produced regarding the classification decision are from 2011 – when the classification decision was made – and the IDOL investigation. (*Id.* ¶ 12, Ex. 7.) That same day,

---

[3] That letter identified six "general deficiencies" regarding such things as ENE's general objections, limitations on class discovery, privilege log, and other things, and six "specific deficiencies," that raised issues with five of ENE's 11 interrogatory responses and 14 of its responses to Plaintiff's document requests. (Maatman Decl. Ex. 4.)

Koehler Dinkel confirmed that the production was complete and produced a privilege log showing documents that were withheld or redacted. (*Id.* ¶ 12, Ex. 7.)

On January 21, 2020, Plaintiff's counsel again complained that ENE's production "seems very thin," as it relates to ENE's defenses and demanded production back to 2007 based on legal advice that Koehler Dinkel provided regarding a single offer letter for an employee who was hired into a different position (a "Project Consultant"). The email also claims that Koehler Dinkel "may be a witness in this case based on the advice that you provided to EN in 2007, 2011 and presumably throughout the relevant time period concerning the classification of the Project Consultant/Inspector position," and asked Koehler Dinkel to preserve eight categories of documents relating to its representation of ENE back to 2007. (*Id.* ¶ 13, Ex. 8.)

Thereafter, Plaintiff's discovery efforts turned to an aggressive pursuit of privileged documents from Koehler Dinkel's files, including documents that directly relate to the defense of this lawsuit, and repeated threats to seek Koehler Dinkel's disqualification. On February 5, 2020, Plaintiff's counsel sent another email, stating that "we do believe that Renee [Koehler] is a witness within the meaning of FRCP 26(a)(1)(A)(i) and Rule 3.7 of the Illinois Rules of Professional Conduct," and again threatening to seek disqualification. (*Id.* ¶ 14, Ex. 9.) That email also demanded that ENE "produce the 2007 attorney advice documents" and "remove the redactions" on documents relating to the IDOL investigation. (*Id.*)

Plaintiff's counsel reiterated his demand for privileged documents and his threat to seek disqualification on February 7, 11, 13, 14, 18, 2020. (*Id.* ¶ 16, Exs. 11-15.) On March 10, 2020, Plaintiff filed a Motion to Disqualify Defendant's Counsel. (ECF No. 56.) That motion was dismissed as moot when ENE voluntarily substituted counsel. (ECF Nos. 63 and 69.)

Finally, on March 24, 2020, Plaintiff served a subpoena on Koehler Dinkel, calling for the production of 13 categories of documents from Koehler Dinkel's files and submitting ten written deposition questions. (Maatman Decl. ¶ 20, Ex. 18.) Among the documents requested in the subpoena are the following:

- All documents, including invoices and bills, that relate to the services rendered by Koehler Dinkel to ENE regarding the classification of the Inspector or Project Consultant positions (*id.*, RFP Nos. 1, 2, 7), including a request for the search and production of emails between Koehler Dinkel and ENE relating to same (*id.*, RFP No. 13);

- All communications between Koehler Dinkel and any federal or state Department of Labor regarding the classification of Inspectors or Project Consultants (*id.*, RFP No. 3);

- All communications between Koehler Dinkel and ENE regarding the 2017 Illinois Department of Labor investigation (*id.*, RFP No. 4);

- Koehler Dinkel's internal notes, analysis, documents, and "legal opinions" regarding the classification of the Inspector or Project Consultant positions, regardless of whether those documents were shared with ENE(*id.*, RFP Nos. 5, 6);

- Documents in Koehler Dinkel's possession that directly relate to the defense of this lawsuit, including (1) documents and drafts relating to Koehler Dinkel's interviews of ENE employees or contractors relating to the claims and defenses of this lawsuit (*id.*, RFP No. 8); (2) drafts of ENE's Mandatory Initial Discovery Pilot Program Responses, including Koehler Dinkel's internal communications relating to same (*id.*, RFP No. 9); and (3) Koehler Dinkel's legal advice to ENE regarding the claims and defenses in this lawsuit, including Plaintiff's Motion for Disqualification and deposition preparation (*id.*, RFP Nos. 10, 11, 12).

These requests cover a time period of over 12 years, from January 1, 2007 to the onset of this litigation on August 27, 2019, except those that directly relate to legal advice provided by Koehler Dinkel to defend ENE in this litigation. (*Id.*, *passim*.)

## B. Discovery Dispute Regarding Ameren Documents

Plaintiff's First Set of Discovery to ENE demanded, among other things, the production of contracts and agreements with clients where Plaintiff and other members of the putative class/collective action rendered service and all invoices for that work. (*Id.* Ex. 1, RFP No. 7-9, 21.) ENE objected to that discovery on the basis that such production would be "overly broad in scope and time, vague . . ., unduly burdensome, not proportional to the needs of the case, and

said documents are highly confidential and subject to contractual non-disclosure provisions." (*Id.* Ex. 6, Response to RFP Nos. 7-9, 21.) ENE also objected on the basis of relevance: "client and/or third parties for whom services were rendered have absolutely no relevance to the exempt status of Rossman and the other Inspectors," and that "client contracts are simply not relevant to establish whether ENE properly paid its inspectors in accordance with the FLSA." (*Id.*)

In his counsel's January 7, 2020 letter, Plaintiff argued that those documents are relevant to Plaintiff's claims because "such documentation will provide information as to the rates ENE billed out these employees and whether ENE included its purported base salary in its contractual arrangements with its clients." (*Id.* ¶ 8, Ex. 4 at 6.) In his counsel's February 5, 2020 letter, Plaintiff again demanded production of those documents, arguing that they are "discoverable and any concerns about confidentiality are addressed by the protective orders in place." (*Id.* ¶ 14, Ex. 9.) On that same day, Ameren gave ENE permission to produce the current version of the Master Engineering Services Agreement between ENE and Ameren. (*Id.* ¶ 15, Ex. 10.) ENE then produced that agreement to Plaintiff. (*Id.* Ex. 10.)

On February 7, 2020, Plaintiff's counsel sent another email to ENE's counsel, demanding, among other things, that ENE produce other versions of the MSA between ENE and Ameren, and that ENE produce "MSAs with the other clients who utilized the services of the putative class members." (*Id.* ¶ 17, Ex. 11.) The email also stated "[w]e are missing all of the invoices between Ameren and [ENE] covering the services of Project Consultants/Inspectors," and demanded the production of those documents as well. (*Id.*)

ENE's counsel responded to Plaintiff's counsel's recent emails by letter, dated February 7, 2020, in which ENE explained that it had now produced the prior version of the MSA between ENE and Ameren, which along with the 2018 agreement that was previously produced, covers

the entire time period from January 2017 through December 2019 that is relevant to Plaintiff's claims in this lawsuit. (*Id.* ¶ 18, Ex. 16, at 1.) ENE reiterated its objections as stated in their responses and objections to Plaintiff's first set of discovery requests, adding that "[t]here is absolutely no relevant link between invoices for services and whether ENE complied with the FLSA." (*Id.*) ENE's counsel also noted that "ENE also produced the daily reports for Rossman and the other weld inspectors and Rossman's daily journal," and that Plaintiff had failed to identify "what additional information he seeks from the invoices that has not previously been provided related to working time." (*Id.* at 3.)

In the meantime, Plaintiff's counsel had continued to correspond with Ameren's counsel regarding the production of documents called for in Plaintiff's subpoena to Ameren. Ameren agreed to provide a sample of Purchase Orders that it had located up to that time, with pricing and payment information redacted, but maintained its right to object to any further production on the basis of relevance and burdensomeness. (*Id.*, Ex. 14.) Plaintiff rejected Ameren's offer, stating that the sample "is not going to cut it," and demanding "the actual invoices and supporting data that [ENE] submitted . . . for the work performed by Project Consultants/Inspectors in accordance with the MSA and the SOW." (*Id.*, Ex. 14 at 2.) After some further back and forth with Plaintiff's counsel, Ameren's counsel told Plaintiff that Ameren had authorized ENE to produce all of its invoices and purchase orders subject to the Confidentiality order entered in this case, stating that there was therefore "no need for Ameren to be burdened with the production." (*Id.*, Ex. 14 at 1.) Plaintiff's counsel promptly forwarded that email to ENE's counsel and – ignoring ENE's many objections on the basis of burden, relevance, etc. – demanded that ENE "please forward all of the invoices and purchase orders that you've been withholding." (*Id.*.)

8

On April 1, 2020, Plaintiff filed his Motion to Compel Compliance with Non-Party Subpoena in the Central District of Illinois. *See* Mot. to Compel, *Rossman v. Amerin Ill. Co.*, No. 20-CV-2214 (C.D. Ill. Apr. 1, 2020), ECF 1. That action was thereafter transferred to the Northern District of Illinois so that it could be heard by the Judge in this lawsuit. On April 10, 2020, Plaintiff re-filed his Motion to Compel in this case and served it on all parties by ECF. (ECF No. 72.) Ameren responded on April 24, 2020. (ECF No. 79.)

### C.     The Parties' Conferral Efforts

On April 7, 2020 and April 16, 2020, Plaintiff's counsel and ENE's counsel met and conferred by telephone regarding the parties' many outstanding discovery disputes. (Maatman Decl. ¶ 22.) Among other things, the parties' discussed Plaintiff's demand for the Koehler Dinkel and Ameren documents. ENE's counsel restated ENE's objections to the production of Ameren invoices, purchase orders, and any additional agreements between ENE and Ameren on the basis of relevance, burdensomeness, and proportionality. (*Id*.) Plaintiff's counsel stated that the invoices and purchase orders would be relevant to how ENE charges clients for services performed by Plaintiff and putative members of the alleged class/collective actions, but he could not or would not state how those charges were relevant to Plaintiff's claims regarding how he was paid. (*Id.* ¶ 22.) Plaintiff's counsel also refused to meet and confer regarding the burden and proportionality of any such production, stating instead that ENE had agreed to produce such documents if Ameren consented to such production. But ENE never agreed to that; it has always objected to such production on the basis of relevance, burden, and proportionality. (*Id.* ¶ 23.)

**ARGUMENT**

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) allows this Court to issue an order forbidding or limiting discovery into certain matters and protecting a party from undue burden or expense,

9

upon a showing of good cause. Moreover, the scope of permissible discovery is limited by

Federal Rule of Civil Procedure 26(b)(1), which permits discovery of "any nonprivileged matter

that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R.

Civ. P. 26(b)(1). Although relevance for purposes of discovery is generally construed broadly,

"relevance alone does not translate into automatic discoverability . . . [a]n assessment of

proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d

916, 924 (N.D. Ill. 2019). Rule 26(b)(1) instructs the Court to determine proportionality,

"considering the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court has "broad discretion in matters

relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

## II.     THE COURT SHOULD PROHIBIT DISCOVERY INTO PRIVILEGED KOEHLER DINKEL DOCUMENTS

ENE has produced and continues to produce documents relating to its good faith defense

and its defense to Plaintiff's claims of "willfulness," including documents that would otherwise

be privileged. It also has and will continue to protect its privileged information by withholding

and logging privileged documents that are responsive to Plaintiff's discovery requests, but that

are not within the scope of what was waived. Plaintiff has consistently refused to accept that

ENE's waver of privilege is limited in scope. According to Plaintiff, ENE's assertion of its

statutory defenses has exposed to discovery virtually all documents relating to Koehler Dinkel's

representation of ENE since 2007, including the defense of this lawsuit, regardless of any

relevance to ENE's good faith/willfulness defenses or whether those documents are held by ENE

or are the internal files of ENE's counsel. Plaintiff's demand for such discovery goes far beyond what is allowed by the Federal Rules and should be prohibited.

> **A.** **ENE Has And Will Continue To Produce Documents Relevant To Its Good Faith And Willfulness Defenses, But It Should Be Shielded From Disclosure Of Privileged Documents Outside The Scope Of That Waiver**

ENE has already produced documents relating to its good faith defense, including legal advice that ENE received when it decided to classify the Inspector position as exempt and non-privileged documents that relate to the IDOL investigation. (Maatman Decl. ¶ 11) ENE will continue to do so to the extent that additional relevant documents are uncovered in discovery. But ENE should not be made to disclose privileged documents that are not within the "narrow" scope of that subject matter waiver. *Seyler v. T–Systems N.A., Inc.*, 771 F. Supp. 2d 284, 287–88 (S.D.N.Y. 2011); *see also Rowe Intern. Corp. v. Ecast, Inc.*, 241 F.R.D. 296, 301 (N.D. Ill. 2007) (holding that the "widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all of the communications relating to the same subject matter"). In addition, in determining the scope of a waiver of the attorney-client-privilege, the Court must consider the overriding issue of fairness. *Rowe*, 241 F.R.D. at 302.

ENE's corporate representative, Mitch Hulet, testified that the pay practice at issue in this litigation was decided upon and implemented in 2011. (*Id.* ¶ 9, Ex. 5, Hulet Dep. Tr. at 74:10, 79:4.)  ENE concedes that its good faith defense puts at issue the legal advice it received regarding that 2011 classification decision and that fairness requires ENE to search for and produce communications from Koehler Dinkel that reveal the totality of that legal advice.

But Plaintiff's subpoena improperly invades ENE's privilege to the extent it seeks Koehler Dinkel's internal documents, including notes, analyses, and "legal opinions" that were never shared with ENE (Maatman Decl. ¶20, Ex. 18, RFP Nos. 5, 6), and it is overbroad as to temporal scope and subject matter because it seeks all privileged communications that relate to

11

"FLSA classification" generally, rather than the specific legal advice that ENE received when it made the decision to classify Inspectors as exempt in 2011, including: all emails between Koehler Dinkel and ENE since 2007 (*id.*, Ex. 18, RFP No. 13); (2) Koehler Dinkel's invoices and bills to ENE for the same 12-year time period (*Id.*, RFP Nos. 1, 2); (3) privileged communications relating to the IDOL Audit (*id.*, RFP No. 4); and (4) documents relating to an offer of employment ENE made to an employee in 2007 for a non-Inspector position. (*id.* RFP No. 7).

First, Plaintiff has no right to Koehler Dinkel's purely internal legal notes and communications to the extent they were not shared with ENE. ENE's good faith defense implicates its state of mind when it made the classification decision in 2011. The communications between Koehler Dinkel and ENE are sufficient to ascertain the totality of the legal advice received by ENE; documents that were never shared with ENE could not have impacted ENE's state of mind. Courts routinely acknowledge and enforce this distinction. For example, in *Foster v. City of New York*, the City asserted a good faith defense to an FLSA claim. No. 14-CV-4142, 2016 WL 524639 (S.D.N.Y. Feb. 5, 2016). Like here, the plaintiffs argued that privilege was waived as to a broad swath of documents and communications, including those "between the New York City Law Department . . . and the City's outside counsel," and "between outside counsel and other City employees." *Id.* at *2. The Court disagreed, holding that "the fact that a privileged communication may merely be relevant to a claim or defense is insufficient to forfeit protection." *Id.* at *3 (citing *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008); *Aiossa v. Bank of America, N.A.*, No. 10 CV 1275, 2011 WL 4026902, at *5 (E.D.N.Y. Sept. 12, 2011). Rather, the waiver is limited to circumstances where a defendant has "assert[ed] a factual claim the truth of which can only be assessed by examination of a privileged communication,

12

even if he does not explicitly rely on that communication." *Id.* (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993). The court limited production to legal advice shared between attorneys and non-attorney City employees, deciding that it would be unfair to force the disclosure of "exclusively internal privileged communications." *Id.* at *4-5; *see also Steelcase v. Haworth*, 954 F.Supp. 1195, (W.D. Mich. 1997): *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F.Supp. 616 (D. Del. 1993).

Similarly here, the substance of legal advice would be reflected in documents in ENE's possession or in testimony from ENE fact witnesses. Those documents have already been produced and deposition testimony has been given on this topic. Seeking any additional documents or testimony from Koehler Dinkel is an unwarranted invasion of ENE's privilege.

Second, ENE's assertion of its good faith defense does not waive privilege beyond the substance of the legal advice that ENE relied upon to make the 2011 classification decision. Plaintiff is not entitled to scour ENE's legal bills or other documents reflecting "services performed" by Koehler Dinkel over a 12-year time period to find evidence of when and how legal advice was provided.[4] Nor is it entitled to privileged communications that might relate to FLSA classification generally, but that do not relate to the actual 2011 classification.

For example, in *Johnson v. J. Walter Thompson, U.S.A., LLC*, No. 16-CV-1805, 2017 WL 3432301 (S.D.N.Y. Aug. 9, 2017), a defendant in a discrimination lawsuit argued that it had exercised reasonable care to prevent and correct harassing behavior, pointing to an investigative report prepared by its outside counsel. Plaintiff sought, among other things, the documents generated during the investigation, including interview notes and invoices. The court first held

---

[4] Plaintiff seeks, among other things, "all invoices, gross receipts, purchases, purchase orders, expenses, W-2 Forms, 1099 Forms, cancelled checks, or other [documents] reflecting payment or requests for payment for services performed by [Kohler Dinkel]." (Ex. 18,  RFP No. 1.)

that invoices are privileged because they "would only conceivably be relevant to the claims and defenses in this action to the extent they are sufficiently detailed to reveal privileged communications." *Id.* at *4. With respect to waiver, the court concluded that the totality of the legal advice defendant received regarding that report might be discoverable – after *in camera* review by the Court – but "there is no waiver with respect to the categories of the Proskauer Documents that could be relevant, if at all, only to the accuracy of the findings in the report, specifically, notes of interviews of JWT employees, drafts of the report, and invoices." *Id.* at *8.

Similarly here, there is no conceivable relevance to "invoices, gross receipts, purchases, purchase orders, expenses, W-2 Forms, 1099 Forms, cancelled checks," etc. except to the extent that they would reveal legal advice or when and how that legal advice was provided. But both the substance and manner of Koehler Dinkel's legal advice regarding the 2011 classification decision would be readily apparent from documents and testimony already produced by ENE, which relate to that advice much more directly. Plaintiff's attempt to fish through the entire financial history of Koehler Dinkel's representation of ENE over a 12-year time period is an unwarranted invasion of ENE's attorney-client privilege.

Finally, Plaintiff has no right to privileged documents relating to the IDOL investigation.[5] ENE has already produced documents pertaining to the 2017 IDOL investigation, including communications exchanged between ENE and the IDOL. (*See* Maatman Decl. ¶ 11.) Plaintiff also sought discovery from the IDOL relative to the same investigation by way of a Freedom of Information Act request. (*See id.* ¶ 11.) Privileged documents related to that investigation were logged on a privilege log. (*Id.* ¶ 11.) Accordingly, ENE has produced or logged all relevant

---

[5] Plaintiff's Subpoena seeks, among other things, all communications between Koehler Dinkel and any federal or state DOL regarding the classification of Inspectors or Project Consultants (Maatman Decl. Ex. 18, RFP No. 3), and all communications between Koehler Dinkel and ENE regarding the 2017 IDOL investigation (*id.*, RFP No. 4).

documents regarding the IDOL investigation. That investigation occurred in 2017, six years after ENE made the 2011 classification decision, and therefore could have no bearing on ENE's state of mind when it made that decision. Although the IDOL investigation related to the classification of Inspectors, that classification had been in place for six years and no changes were made because of the investigation. Privileged documents about that investigation relate to legal advice relating to ENE's response to the IDOL, not how ENE should classify its employees.

ENE and Koehler Dinkel should be protected from any further discovery of documents called for in Subpoena RFP Nos. 1-7 because they are either duplicative of what has already been produced or an attempt to obtain privileged documents that do not fall within the scope of waiver associated with the assertion of the good faith defense. Plaintiff has not demonstrated any need for this information, nor could he, because ENE has already agreed to produce all materials relevant to ENE's good faith defense. Accordingly, the Court should protect ENE and Koehler Dinkel from any further discovery into Subpoena RFP Nos. 1-7.

### B.  ENE Should Be Protected From Discovery Into The Legal Advice It Received To Defend Against This Lawsuit

Plaintiff's Subpoena also seeks several categories of discovery that relate directly to legal advice ENE received to defend this lawsuit. Specifically, Plaintiff seeks: (1) documents and drafts relating to Koehler Dinkel's interviews of ENE employees or contractors relating to the claims and defenses of this lawsuit (*Id.*, Ex. 18, RFP No. 8); (2) drafts of ENE's Mandatory Initial Discovery Pilot Program Responses, including Koehler Dinkel's internal communications relating to same (*id.*, RFP No. 9); and (3) Koehler Dinkel's legal advice to ENE regarding the claims and defenses in this lawsuit, including Plaintiff's Motion for Disqualification and deposition preparation (*id.*, RFP Nos. 10, 11, 12). This information is shielded from disclosure by the attorney-client privilege and the work product doctrine.

15

The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. *See* Fed. R. Civ. P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 238–39 (1975); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). "The core of attorney work product consists of 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Menasha Corp. v. U.S. Dep't of Justice*, 707 F.3d 846, 847 (7th Cir. 2013) (citation omitted). Plaintiff's Subpoena RFP Nos. 8-12 are aimed directly at discovery of Kohler Dinkel's work product on behalf of ENE and should be prohibited.

First, Plaintiff's request for documents and drafts relating to Koehler Dinkel's interviews of ENE employees or contractors relating to the claims and defenses of this lawsuit, (RFP No. 8), is overly broad. Plaintiff is asking for every communication exchanged between ENE's management and Kohler Dinkel for 12 years regarding any matter that is potentially related to the compensation of Inspectors. To grant such a request would result in "all the files and mental processes of lawyers [being] opened to the free scrutiny of their adversaries," in blatant contradiction of U.S. Supreme Court authority. *Hickman v. Taylor*, 329 U.S. 495, 515 (1947).

Second, Plaintiff's request for drafts of ENE's Mandatory Initial Discovery Pilot Program Responses, including Koehler Dinkel's internal communications, is unfounded. Draft discovery responses and a law firm's internal communications involve "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *See Menasha*, 707 F.3d at 847.

Third, Plaintiff's request relative to Koehler Dinkel's legal advice to ENE regarding the claims and defenses in this lawsuit, including Plaintiff's Motion for Disqualification and deposition preparation, is also an improper attempt to uncover information that is purely work

product. (Ex. 18, RFP Nos. 10, 11, 12.) For instance, Plaintiff's request for documents regarding Kohler Dinkel's potential disqualification bear no relevance to the claims or defenses at issue in this litigation and would not advance the case. Rather, this request amounts to a backdoor attempt to uncover ENE's strategic litigation decisions.

All of these documents are protected from disclosure and Plaintiff has not and cannot demonstrate any substantial need for Kohler Dinkel's work product defending ENE in this lawsuit. Plaintiff is attempting to gin up an argument of bad faith, stating in numerous places, including his pending motion to sanction Koehler Dinkel (ECF No. 73), that ENE and/or Koehler Dinkel somehow concealed the fact that Koehler Dinkel had provided legal advice in connection with the 2011 classification decision. That argument has no basis in fact. Plaintiff's initial set of discovery requests did not ask for documents relating to ENE's good faith/willfulness defenses even though he did ask about six other defenses. (*See id.* Ex. 1, RFP Nos. 26-31). Moreover, the 2011 classification decision was far outside of the relevant time period of this lawsuit and therefore did not fall within the temporal scope of ENE's initial discovery responses, as limited by its General Objection to producing documents prior to August 27, 2017. (*Id.* Ex. 2 at 2.) And when Plaintiff asked ENE to supplement its responses with documents relevant to its good faith defense, ENE promptly did so. (*Id.* ¶ 10, Ex. 6, Responses to RFP Nos. 14, 25.) The course of discovery plainly shows that ENE has complied with its discovery obligations in good faith.

In sum, the vast majority of Plaintiff's Subpoena seeks materials that have already been produced, or alternatively, are protected by the work-product doctrine because they were prepared by attorneys in conjunction with the DOL's investigation and the instant litigation. Plaintiff has not demonstrated a substantial need for any of this information, including how any of the requests are relevant to the good faith defense it could potentially seek to rebut. This Court

17

should issue an order prohibiting any further discovery into the documents requested in Plaintiff's Subpoena to Koehler Dinkel.

The subpoena to Koehler Dinkel should also be quashed in its entirety.[6] ENE has standing to move to quash the Subpoena because it "has a claim of privilege in the information sought or the subpoena impinges on the movant's privacy interests." *Pursley v. City of Rockford,* No. 18-CV-50040, 2020 U.S. Dist. LEXIS 50513, at *4 (N.D. Ill. Mar. 24, 2020). Courts have conferred standing even where the movant's privacy interest is "minimal at best." *Sunlust Pictures, LLC v. Doe*, No. 12-CV-1546, 2012 U.S. Dist. LEXIS 121368, at *2 (N.D. Ill. Aug. 27, 2012). Here, the Subpoena unquestionably seeks privileged communications between ENE and Koehler Dinkel. Further, ENE has significant privacy interests in much of the information sought in the Subpoena; e.g., billing records for legal services. Moreover, Plaintiff's tactic of issuing the Subpoena to a third-party is an improper ploy designed to circumvent the party discovery process and should be quashed in its entirety as duplicative and cumulative. *Tresona Multimedia, LLC v. Legg*, No. 15-CV-4834, 2015 WL 4911093 at *3 (N.D. Ill. Aug. 17, 2015) (holding that a subpoena "seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative").

## III. PLAINTIFF HAS FAILED TO ESTABLISH THAT THE AMEREN DOCUMENTS ARE RELEVANT AND PROPORTIONAL TO THIS LAWSUIT

Plaintiff has consistently refused to explain how his requests for all MSAs, invoices, and purchase orders between ENE and Ameren are relevant and proportional to the claims in this lawsuit. Plaintiff's Motion to Compel against Ameren merely states that the subpoena requests seek "documents reflecting the work, dates, hours, and pay of those workers, as well as relevant

---

[6] The Subpoena also seeks a deposition of Koehler Dinkel by way of written questions, which seeks answers to ten questions. (*See* Maatman Decl. Ex.18.) Those deposition questions should also be quashed because they relate solely to the source and authenticity of the documents requested in the subpoena.

communications, contracts, policies, and other similar documents related to those workers paid 'straight time for overtime' who were supplied to Ameren by ENE." (ECF No. 72 at 3.)

ENE has already produced extensive documentation regarding the pay and hours worked by Inspectors who are potential members of the classes and collective action Plaintiff purports to represent. Among other things, ENE has produced earning statements, payroll documents, and the timesheets used to bill clients of Weld, Utility, and Coating inspectors for the three-year statute of limitations period relevant to this lawsuit. ENE has also produced job descriptions and extensive email communications and other sources of ESI that relate to the nature of Inspectors' job duties. It has also produced the Master Service Agreements in effect between ENE and Ameren during the relevant time period. Those documents are more relevant and reliable sources of information than the Ameren documents.

Moreover, to the extent Plaintiff is claiming that those documents would show "the rates ENE billed out these employees and whether ENE included its purported base salary in its contractual arrangements with its clients" (Maatman Decl., Ex. 4 at 6), those documents are not relevant to any claims or defenses in this lawsuit because no claim or defense rests on how ENE's clients and customers were charged for the services ENE provided. It is of no moment how those customers were charged; Plaintiff's claims rest entirely on how he and other putative class and collective action members were paid. And those payments are readily apparent in the timesheets and payroll documents that have already been provided. According to Plaintiff, "[ENE's] records reflect the fact that Rossman and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks." (ECF No. 1, Compl., ¶ 48.)

Even if these documents did have some tangential relevance to Plaintiff's claims, "the court must balance the possibility that the document requested will lead to beneficial material

19

against the burden of the production of the documents." *Precision Dose, Inc. v. U.S.*, No. 12-CV-50180, 2012 WL 6172177, at *2 (N.D. Ill. Dec. 11, 2020) (denying requests for production of documents regarding "the training, instruction, or procedures of I.R.S. employees; or exploration into every I.R.S. [domestic production deduction] determination" as not relevant to a company's claim that it was improperly denied that deduction by the IRS). Here, Plaintiff's requests for invoices and purchase orders would impose a significant cost on ENE. ENE's Manager - Field Services has estimated that ENE performed approximately 500 projects for Ameren from 2016 to the present, which equates to approximately 3,000 invoices. (Shoemaker Decl. ¶¶ 3, 8.)[7] ENE would not be able to assign more than one person to collect those documents without significant interruption of its business operations. (*Id.* ¶ 9.) ENE has estimated it would take that person approximately 250 hours to complete that collection at a cost to the Company of $18,100. (*Id.*) Plaintiff's requests would call for the production of approximately 150 purchase orders, which would take another 40 hours to gather and produce, at a cost to ENE of approximately $2,900. (*Id.* ¶ 10.) The total cost of complying with Plaintiff's demands for Ameren documents would be $21,000. (*Id.* ¶ 11.)

Courts in the Seventh Circuit frequently find a discovery request is unduly burdensome when compliance would cost the responding party tens of thousands of dollars. *See Kleen Prods. LLC v. Packaging Corp of Am.*, No. 10-CV-5711, 2012 WL 4498465, at * 9 (N.D. Ill. Sept. 28, 2012) (granting protective order against discovery request seeking personnel data for approximately 400 persons due to undue burden); *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, No. 2:07-CV-358, 2009 WL 3200540, at *5-6 (N.D. Ind. Sept. 25, 2009) (denying motion to compel discovery request as unduly burdensome where would impose

---

[7] "Shoemaker Decl." refers to the Declaration of Zach Shoemaker filed concurrently herewith as Ex. 19.

significant cost and require hundreds of hours of labor); *Brodsky v. Human, Inc.*, No. 08-CV-50188, 2009 WL 1956450, at *3 (N.D. Ill. July 8, 2009) (finding that discovery request was improper because a full response would take a substantial amount of time and cost over $80,000). [8] Alternatively, should the Court grant Plaintiff's request for the documents that he seeks, Plaintiff should assume the cost of collecting and producing it. *See, e.g., Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 412 (N.D. Ill. 2007).

## CONCLUSION

For all of the foregoing reasons, this Court should issue an order: (1) quashing the subpoena to Koehler Dinkel in its entirety; (2) prohibiting any further discovery into the categories of documents requested in the Koehler Dinkel subpoena except for those that relate directly to the totality of the legal advice ENE received to make the 2011 classification decision; and (3) prohibiting any further discovery into the documents requested in the Ameren subpoena.

---

[8] *See also Calobrace v. Am. Nat. Can Co.*, No. 93-CV -0999, 1995 WL 51575, at *4 (N.D. Ill. Feb. 6, 1995) (denying request to compel because the document sought were irrelevant); *Carr v. O'Leary*, No. 89 C 9218, 1992 WL 373032, at *2 (N.D. Ill. Nov. 20, 1992) *on reconsideration*, 89-CV-9218, 1992 WL 370242 (N.D. Ill. Dec. 2, 1992) (finding a request overbroad and denying the party's motion to compel same); *see also Welch v. Eli Lilly & Co.*, No. 1:06-cv-0641, 2009 WL 700199, at *10 (S.D. Ind. Mar. 16, 2009) (denying motion to compel because plaintiff failed to establish the need for company-wide discovery because it would "subject Defendant to an undue burden"); *United Oil Company, Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 414 (D. MD. 2005) (holding that requests that seek "all documents that relate or refer to" are too broad).

**DATED: May 6, 2020**                                  Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Gerald L. Maatman, Jr.*
      One of Its Attorneys

Gerald L. Maatman, Jr.
gmaatman@seyfarth.com
Matthew Gagnon
mgagnon@seyfarth.com
Alex W. Karasik
akarasik@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:      (312) 460-5000
Facsimile:      (312) 460-7000

*Attorneys for Defendant EN Engineering, LLC*

22

63462928v.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of May, 2020, I filed the foregoing document with the Court's CM/ECF system, which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Michael A. Josephson
Taylor A. Jones
Carl A. Fitz
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046

Richard (Rex) J. Burch
BRUCKNER BURCH, P.L.L.C.
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

Douglas M. Werman
Maureen A. Salas
WERMAN SALAS P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602

/s/ *Gerald L. Maatman, Jr.*
One of the Attorneys for Defendant
EN Engineering, LLC