**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN ROSSMAN, Individually and For Others Similarly Situated <br><br> v. <br><br> EN ENGINEERING, LLC | Case No. 1:19-cv-5768-EEC <br><br> JURY TRIAL DEMANDED <br><br> COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) <br><br> CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

**ROSSMAN'S REPLY IN SUPPORT OF HIS**
**SUPPLEMENTAL MOTION TO DISQUALIFY**

**1.   Summary.**

KD argues it is not liable for fees under § 1927 because Ms. Koehler was not a necessary witness for ENE and any conflict analysis was premature when Rossman filed his motion to disqualify. Doc. 85 at 7-9 ("It was premature to determine whether any conflict existed in Ms. Koehler's representation, at that juncture"). But the issue before the Court is not whether KD was required to withdraw. This issue is moot. *See Life Fitness, Inc. v. Sears, Roebuck & Co.*, No. 88 C 263, 1988 WL 37835 (N.D. Ill. Apr. 21, 1988). The only inquiry is whether KD unnecessarily required Rossman to expend time and effort filing a motion to disqualify, litigating discovery disputes arising from the disqualification, as well as the unnecessary delays these issues created. *Id.*

Fees are appropriate because KD not only refused to withdraw, but also withheld information related to Ms. Koehler's role for months, repeatedly misrepresented that all documents related to good faith had been produced, and raised privilege to protect communications that are clearly waived as being at issue. Only when it became apparent that the motion to disqualify was forthcoming was Seyfarth brought on, and only after the motion had been filed did KD withdraw. KD never mentioned it was considering withdrawing as counsel and arguably concealed it—even engaging in discovery

1

disputes up until the eleventh hour. KD could have saved Rossman the time and effort of preparing his motion, but it chose instead to ignore the matter until Rossman moved the Court for relief. Rossman is entitled to his fees.

**2. KD unnecessarily multiplied proceedings by failing to communicate or act until after the motion to disqualify was filed.**

As early as January 21 (and only after threatening a motion to compel), Rossman raised the possibility that Ms. Koehler could be a witness because of the advice she provided to ENE in 2011 and 2017. *See* Doc. 73 (timeline). Counsel then made nine more communications in less than a month seeking to address KD's position on withdrawal or disqualification. *Id.* It raised the issue of Ms. Koehler as a witness and repeatedly sought full production of the information and documents underlying ENE's good faith defense, which had been withheld by KD. *Id.* Rossman made every attempt to discuss and resolve these concerns without resorting to the Court. *See, e.g.*, Doc. 56-14 (email chain requesting the courtesy of a response on KD's position without having to file a motion and noting counsel was amenable to working with ENE on this issue).

KD responded three times. *Id.* The first response ignored the withdrawal issue and instead claimed that all documents related to good faith had been produced. Doc. 73-4. This was demonstrably false. *See* Doc. 56 at 19; Doc. 56-18. The second email stated Ms. Koehler would not be called as a witness and that the information could be obtained from ENE's corporate representative, Mitch Hulet, in his upcoming deposition. Doc. 73-5. This was also proven to be false. *See* Doc. 56 at 16. The third communication from KD came after Hulet's deposition and suggested that Rossman just "go ahead and file" the motion for disqualification. Doc. 56-15. At no point was KD willing to even discuss Rossman's concerns. KD knew this motion was coming for weeks. Doc. 85-1 at ¶ 26. Yet it did nothing. Worse, it actively encouraged Rossman to seek the court's interference.

KD now contends that Rossman's motion was unnecessary. Doc. 85. However, nothing in KD's Response ameliorates the plain facts, as reflected in the timeline of communications and

2

discovery, that KD withheld vital information on Ms. Koehler's role and then refused to acknowledge the consequences of her actions. *See* Doc. 56; Doc. 73. Certainly nothing in Ms. Koehler's declaration reflects she or anyone responded to Rossman's repeated efforts to confer. *See* Doc. 85-1. At most, she claims she considered the issue "throughout the litigation" and spoke to ENE about the conflict. *Id.* at ¶¶ 31, 32. But these internal communications are irrelevant to this motion. KD and Ms. Koehler failed to convey any information to Rossman or discuss the issues in any way. Rossman was operating in the dark, forced to contend with KD's evasions, omissions, and misrepresentations on the nature and extent of the legal advice provided by Ms. Koehler.

The plain chronology reflects that KD acted in bad faith in connection with revealing Ms. Koehler's role and communications underlying ENE's good faith defense, and that it had no intention of addressing Rossman's concerns, which it dismissed as mere threats. See *id.*; Doc. 56; Doc. 73. Rossman had no choice but to turn to the Court for relief. Only then did KD make some attempt to reach out to Rossman. This belated act alone reflects that KD understood conferral was necessary; it could have prevented Rossman from filing a motion and saved him time and attorneys fees, had it just made some timely efforts to communicate in good faith. KD chose the hard way, and it should bear the financial consequences of that path.

KD additionally claims that Rossman's motion to disqualify was not the basis for its withdrawal, but that the decision arose from "myriad issues." Doc. 85 at 1. However, it fails to identify or even hint at any other factor that drove it to withdraw. *Id.*; *see* Doc. 85-1 at ¶ 42. It simply asks the Court to believe that the motion to disqualify was a non-issue, and the timing purely coincidental. This unsupported argument is belied by the plain chronology laid out before the Court. It is also at odds with the remainder of KD's Response.

KD knew on March 6 that the motion to disqualify was pending, as Rossman's counsel had filed an unopposed motion for leave for additional pages, and unopposed motion to seal documents,

3

both in connection with its anticipated motion to disqualify. Doc. 50; Doc. 52. KD then claims that on March 10, 2020, "ENE advised KD that, **rather than proceeding to trial with the possibility that Ms. Koehler may be called to testify as a fact witness** … ENE retained Seyfarth Shaw to act as additional defense counsel." Doc. 85 at 6 (emphasis added); *see also* Doc. 85-1 at ¶ 36 (stating Seyfarth would be "assisting in ENE's defense going forward") and at ¶ 33 ("Additional counsel could also assist ENE if, as this matter moved toward trial, this court were to determine that I was a necessary witness at trial"). KD therefore admits that Seyfarth was brought on as a result of the pending motion to disqualify. This should end the inquiry. Seyfarth was hired because KD and ENE acknowledged the possibility that Ms. Koehler and KD could not act as trial counsel, and this occurred directly because of Rossman's efforts and his motion. Disqualification, even in part, drove these actions. KD and ENE were clearly unwilling to take any action until they realized the motion to disqualify was imminent.

While KD claims that ENE's hiring of Seyfarth was "in process **long before** Plaintiff filed his motion on March 10th," Doc. 85 at 14 n.6 (emphasis added), it fails to support this vague statement with any evidence or testimony. The paragraphs referenced, KD's Ex. A at ¶¶ 31-43, reveal only that ENE informed KD it hired Seyfarth on March 10. *Id.* Ms. Koehler provides no information as to when the hiring process occurred or even reflects that Seyfarth was being considered before March 10. While Ms. Koehler does claim she provided ENE with contact information for other attorneys, in contrast with the majority of the other statements in her declaration, she fails to indicate when exactly this occurred. Again, KD asks the Court to make broad inferences on its behalf, and simply believe that the pending motion to disqualify was irrelevant and unrelated.

Finally, KD cannot contest that it did not withdraw until March 25, after the motion to disqualify had been filed. Doc. 63 (motion to substitute). As Ms. Koehler's statements indicate, she understood that on March 10, prior to the motion to disqualify being filed, that Seyfarth was being

4

brought on as *additional* counsel to assist if she found to be was a necessary witness. Doc. 85-1 at ¶¶ 33, 36. Clearly, KD had no plans to withdraw at that time. Then, Ms. Koehler states that on March 24, after the motion to disqualify had been filed and the ample evidence made public record, ENE informed Ms. Koehler that it decided to substitute Seyfarth for KD. Doc. 85-1 at ¶ 37. KD would nonetheless have this Court believe that its decision to withdraw was unrelated to the motion to disqualify. But the timeline, and KD's own admissions, reflect this is simply not the case. KD cannot show it took any timely action to address the conflicts raised by Rossman. It resisted and delayed until the motion was imminent and even then, made only a half-hearted effort to communicate with Rossman's counsel "within hours" of ENE's decision. Doc. 85 at 6. KD's actions throughout this litigation unnecessarily required Rossman to expend time and effort in preparing and filing a motion to disqualify. He is entitled to his reasonable fees for that effort.[1]

**3.      Ms. Koehler is necessary witness.**

Rather than offer any support to show that its withdrawal is unrelated to the motion to disqualify, KD argues instead that disqualification would have been inappropriate or premature. Doc. 85. This is not the issue before the Court. *See Life Fitness,* 1988 WL 37835, at *2. KD has withdrawn, and any decision on this issue is no longer before the Court. *Id.* This argument is nothing more than a red herring, offered to disguise the flaws in KD's timeline. Rossman raised his concerns about a conflict, and KD refused to discuss the matter, telling him to go ahead and file the motion to disqualify. Doc. 56-15. It cannot now claim that the motion to disqualify was either unnecessary or ineffective.

Even were this Court to look underneath the § 1927 issue to the merits of Rossman's motion, KD's arguments must fail. Ms. Koehler's testimony was necessary to ENE's good faith defense, and nothing in KD's Response refuse this. KD suggests that ENE can satisfy its burden to show it acted

---

[1] Notably, KD does not contest the rates of Rossman's counsel, nor the hours expended in preparing and filing the motion to disqualify and its supporting motions. *See* Doc. 85.

5

in good faith simply by having its 30(b)(6) witness establish the single fact that ENE obtained legal advice. Doc. 85 at 11-12. It even suggests that, at most, Ms. Koehler "would simply be required to testify that she had, indeed, advised ENE regarding classification…" *Id.* at 12. But an employer does not establish this defense solely by showing it reached out to counsel.

"To meet the good faith defense's subjective standard, the employer must show that he took affirmative steps to ascertain the [FLSA]'s requirements." *Rego v. Liberty Mut. Managed Care, LLC*, 367 F. Supp. 3d 849, 863 (E.D. Wis. 2019) (internal quotations omitted). "For an employer to establish it had objectively reasonable grounds for believing its actions did not violate the FLSA, it must establish that it took affirmative steps to determine FLSA requirements, but nevertheless, violated the FLSA." *Dominici v. Bd. of Educ. of City of Chicago*, 881 F. Supp. 315, 322 (N.D. Ill. 1995). ENE premises its good faith defense on the advice of counsel (Ms. Koehler). "To establish an advice of counsel defense, a defendant must show that he (1) 'made a complete disclosure to counsel; (2) sought advice from counsel as to the legality of his actions; (3) received advice that his conduct was legal; and (4) relied on such advice in good faith.'" *Sec. & Exch. Comm'n v. Nutmeg Grp., LLC*, No. 09-CV-1775, 2017 WL 3269389, at *4 (N.D. Ill. Aug. 1, 2017) (quoting *In re Reserve Fund Securities and Derivative Litig.*, 2012 WL 4774834, at *2 (S.D.N.Y. Sept. 12, 2012)). The act of seeking advice satisfies only one of these elements. ENE must also have someone testify as to what was provided to counsel and demonstrate that it relied upon and implemented the advice received. KD's argument, that the basis of Ms. Koehler's advice "is not relevant to the issue of ENE's good faith reliance[,]" is flatly incorrect. Doc. 85 at 12.

KD repeatedly contends that Ms. Koehler is not a necessary witness because someone else can testify to what she knows. But at no point does it identify exactly who that is or how they would show it. It either speculates that ENE can just find someone or suggests that this role can be filled by ENE's 30(b)(6) representative. *Id.* It even alleges that Mr. Hulet, ENE's corporate representative

6

"clearly and thoroughly testified to the **basis and scope** of the Company's good faith defense and references the operative documents which the Company is asserting as the basis of that defense."[2] *Id.* at 11 (emphasis added). But this too is grossly incorrect.

As reflected by Rossman's original motion to disqualify, Mr. Hulet admitted he knows only that ENE spoke to Ms. Koehler; he does not know what she was told or the extent of the advice she provided:

> **Q. Okay. But in preparation for the deposition today, did you uncover what feedback and advice Renee gave to the company that allowed them to conclude this new position would be exempt?**
>
> A. No. Only related to the documents you have, and you provided back to me and some general conversation, I mean, related to that. So it's my understanding that there was a discussion at the time, but I don't have any of the facts related to that.
>
> …
>
> **Okay. In your preparation for today's deposition, did you learn any information that would inform you as to what steps, if any, were taken back in 2011 to determine that this position was exempt?**
>
> A. No, I did not.

Doc. 56 at 16. Ms. Koehler is a necessary witness because ENE's designated corporate representative cannot establish anything more than the *fact* that ENE sought advice. *Compare with Reyes v. Collins & 74th, Inc.*, No. 16-24362-CIV, 2017 WL 7796321, at *1 (S.D. Fla. Nov. 14, 2017) (attorney was not a necessary witness where the clients were able to testify about the FLSA advice they received). This alone is not enough to show good faith. ENE cannot water down its burden to shield Ms. Koehler's communications or prevent her from being a necessary witness. ENE claims it relied on advice it

---

[2] In support of this statement, KD cites to its Ex. A at ¶ 34. This paragraph states "After taking substantial time to fully consider the issue, ENE decided to hire additional counsel. That was ENE's decision to fully analyze and ultimately make." Doc. 85-1 at 10. KD points to no testimony by Hulet showing he was able to testify as to the basis or scope of Ms. Koehler's advice, the sole source of ENE's good faith defense.

obtained from her, and Ms. Koehler appears to be the only one who can testify to those communications.

The case KD relies upon actually supports Rossman's position. *Foster v. City of New York*, No. 14-CIV-4142-PGG-JCF, 2016 WL 524639, at *5 (S.D.N.Y. Feb. 5, 2016) dealt with the extent of a waiver of privilege in discovery, rather than what a defendant must show to satisfy a good faith defense based on legal advice. There, the plaintiffs sought to obtain both attorney-client communications and internal attorney communications. The Court granted production of the former but denied the latter. It recognized that learning what the City told its legal counsel was vital to determining whether the City acted in good faith:

> the reasonableness of the City's reliance on the advice of counsel could be undermined if, for example, the plaintiffs showed that counsel's legal analysis was cursory or otherwise obviously flawed. However, this information would be of limited use to the plaintiffs unless they could show that the City knew (or should have known) that the analysis was deficient.

*Id.* at *5. The Court held the communications between the legal departments and non-attorney employees would reveal what the client knew about the sufficiency of the analysis of FLSA compliance. It denied production only of the legal work product—the exclusively internal privileged communications between attorneys. *Id.*

KD cites this case to show that Ms. Koehler will not have to testify about the basis of her advice, Doc. 85 at 12, but nothing in *Foster* stands for this premise, or even addresses the issue of an attorney as a trial witness. To the contrary, the clear holding of *Foster* is that what a client communicates to its legal counsel to form counsel's basis for advice is not privileged and is relevant to the good faith defense. In fact, it could even open the door to further production of internal communications, where the plaintiff can show that the client provided partial or flawed information. KD's argument, that only the *fact* of her advice is at issue, is completely without support. *See* Doc. 85 at 12. ENE's good faith

8

defense depends on what it told Ms. Koehler and what it learned from her. Despite knowing this was a topic of his deposition, ENE's corporate representative could not provide this information.

Ms. Koehler alone can testify as to whether ENE had a reasonable basis for its good faith defense, and she is therefore a necessary witness. *See Walton v. Diamond*, No. 12 C 4493, 2012 WL 6587723, at *2 (N.D. Ill. Dec. 14, 2012) ("A 'necessary' witness under Rule 3.7 is one whose testimony is unobtainable elsewhere"). KD's Response fails to offer anything more than speculation and hyperbole to dispute this. It therefore has not shown that Rossman's motion to disqualify was inappropriate or premature. Rossman's motion to disqualify was not a "litigation tactic" but rather a response to the sword and shield tactics utilized by KD and ENE to hide the advice (or lack thereof) KD provided to ENE—advice that led to the creation of the pay practice at issue **and** representations to the Department of Labor. Ms. Koehler's advice and the basis for it are at issue in this action due to ENE's affirmative defense of good faith reliance on legal advice. ENE waived privilege as to these communications and could only regain it by withdrawing its defense. It chose not to do so, and Ms. Koehler is therefore a necessary witness.

Nothing requires Rossman to wait until trial to raise the issue of a conflict, particularly where the information held by Ms. Koehler needed to be timely developed through discovery. KD offers no authority reflecting Rossman erred in raising the issue to the Court; it argues only that disqualification, if appropriate, would impact trial. Doc. 85. But that isn't the question here. KD delayed and withheld discovery on Ms. Koehler's role, failed to instruct ENE's witnesses to search for communications from Ms. Koehler, and refused to respond to Rossman's attempt to discuss the conflict. There is simply no justification for this behavior, and § 1927 fees are appropriate.

4.  **Conclusion.**

For these reasons, Rossman respectfully prays the Court grant him the relief requested in his Supplement to his Motion to Disqualify.

**Dated: May 26, 2020**　　　　　　　　Respectfully Submitted,

　　　　　　　　By:　*/s/Taylor A. Jones*
　　　　　　　　　　Michael A. Josephson
　　　　　　　　　　Taylor A. Jones
　　　　　　　　　　JOSEPHSON DUNLAP
　　　　　　　　　　11 Greenway Plaza, Suite 3050
　　　　　　　　　　Houston, Texas 77046
　　　　　　　　　　(713) 352-1100
　　　　　　　　　　Richard (Rex) J. Burch
　　　　　　　　　　BRUCKNER BURCH, P.L.L.C.
　　　　　　　　　　8 Greenway Plaza, Suite 1500
　　　　　　　　　　Houston, Texas 77046
　　　　　　　　　　(713) 877-8788

　　　　　　　　　　Douglas M. Werman
　　　　　　　　　　Maureen A. Salas
　　　　　　　　　　WERMAN SALAS P.C.
　　　　　　　　　　77 West Washington, Suite 1402
　　　　　　　　　　Chicago, Illinois 60602
　　　　　　　　　　(312) 419-1008

　　　　　　　　　　**Attorneys for Plaintiffs and
　　　　　　　　　　the Putative Class Member**

## CERTIFICATE OF SERVICE

　　　　The undersigned attorney hereby certifies that on May 26, 2020 the foregoing was filed electronically with the Clerk of Court using the ECF system, which sent notice to all known parties of the case in accordance with the Federal Rules of Civil Procedure.

　　　　　　　　By:　*/s/Taylor A. Jones*
　　　　　　　　　　**Taylor A. Jones**