IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN ROSSMAN, Individually and ) | | |
| For Others Similarly Situated, ) | | |
| ) | | |
| Plaintiffs, ) | No. 19 C 5768 | |
| ) | | |
| v. ) | Magistrate Judge Jeffrey Cole | |
| ) | | |
| EN ENGINEERING, LLC, ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The plaintiff, who worked for defendant as an oil and gas project consultant/inspector, has filed a motion to compel compliance with a subpoena plaintiff issued to a non-party, Ameren [Dkt. #72], which was one of the companies defendant provided with project consultant/inspectors. In this Fair Labor Standards Act case, the dispute between plaintiff and the defendant is often a simple matter of whether plaintiff was entitled to overtime pay, and, if so, whether defendant paid him the right amount. Things are a bit more complicated by the fact that defendant farmed these project consultant/inspectors out to various gas and oil companies, and by the fact that plaintiff and counsel want to pursue this litigation as a class action. But, perhaps not surprisingly given the unfortunate course of modern discovery,[1] discovery in this relatively young case has become quickly complicated. The subpoena motion is but one that the parties have recently filed. For the following reasons, the

---

[1] *See Rossetto v. Pabst Brewing Co., Inc,* 217 F.3d 539, 542 (7th Cir. 2000); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986)(we " 'must be mindful of the realities of modern litigation. Pre-trial discovery under modern federal practice has become a monster on the loose.... Pre-trial proceedings have become more costly and important than trials themselves.' ").

plaintiff's motion [Dkt. # 72] is denied.

### ARGUMENT

Plaintiff served the subpoena at issue on January 3, 2020, setting January 22, 2020 as the date for compliance. While that is just a bit more than the benchmark fourteen days, *see, e.g., Rutherford v. Jarm*, 2018 WL 4236376, at *2 (N.D. Ill. 2018); *Elliot v. Mission Tr. Servs., LLC*, 2015 WL 1567901, at *4 (N.D. Ill. 2015)(collecting cases), the subpoena – again, to a non-party – was rather broad. It demanded production of nearly a dozen categories of documents:

1. The DOCUMENTS which contain information regarding ENE's alleged violations of the FLSA for failing to pay overtime to Project Consultants/Inspectors.

2. The DOCUMENTS reflecting communications between YOU and ENE regarding the LAWSUIT.

3. The DOCUMENTS that describe or specify the work that ENE performed for YOU in any capacity during the RELEVANT TIME PERIOD.

4. The DOCUMENTS reflecting any agreement(s), including but not limited to the Master Service Agreement, for ENE to provide workers and services to YOU during the RELEVANT TIME PERIOD.

5. The DOCUMENTS reflecting any payments made to ENE by YOU for services or workers received from ENE during the RELEVANT TIME PERIOD.

6. The DOCUMENTS reflecting the locations, project number, and project name where YOU paid for the services of Project Consultants/Inspectors supplied by ENE during the RELEVANT TIME PERIOD.

7. Any DOCUMENTS YOU supplied to ENE's Project Consultants/Inspectors during the RELEVANT TIME PERIOD containing any of YOUR practices, procedures, job requirements, or guidelines.

8. The DOCUMENTS evidencing any steps YOU took to ensure that the Project Consultants/Inspectors supplied by ENE to YOU were paid overtime compensation in accordance with the FLSA.

9. All DOCUMENTS exchanged between YOU and any PUTATIVE CLASS

MEMBER related to assignments to YOUR projects, including but not limited to communications concerning job duties, responsibilities, benefits, pay, emails, reports, handbooks, and policies.

10. All DOCUMENTS describing the job duties for the Project Consultants/Inspectors supplied by ENE to YOU, including the PUTATIVE CLASS MEMBERS, during the RELEVANT TIME PERIOD.

11. All DOCUMENTS evidencing communications between YOU and any PUTATIVE CLASS MEMBER during the RELEVANT TIME PERIOD, including all emails sent to, from, or about any PUTATIVE CLASS MEMBER.

[Dkt. #72-1](Capitalization in original).

Initially, it strikes even an impartial observer that plaintiff ought to be getting a lot of this discovery – categories 1-6, for example – from the party he sued, instead of subpoenaing a non-party. As it turns out, there was a prologue to plaintiff's nonparty subpoena. On November 12, 2019, plaintiff issued discovery requests to defendant, including Requests to Produce the following categories of documents:

5. Produce all DOCUMENTS showing the locations where services were rendered by PLAINTIFF and PUTATIVE CLASS MEMBERS during the FLSA LIMITATIONS PERIOD.

7. Produce any Master Services Agreements, along with any addendums thereto, between ENE and the client(s) identified in Request for Production No. 4 for whom PLAINTIFF and/or PUTATIVE CLASS MEMBERS rendered services and/or performed work during the FLSA LIMITATIONS PERIOD.

8. Produce any Master Services Agreement, along with any addendums thereto, between ENE and each third party for which any PLAINTIFF and/or PUTATIVE CLASS MEMBER performed work on ENE's behalf during the FLSA LIMITATIONS PERIOD.

9. Produce any contracts or agreements, along with any addendums thereto, between ENE and each third party for which any PLAINTIFF and/or PUTATIVE CLASS MEMBER performed work on ENE's behalf during the FLSA LIMITATIONS PERIOD.

3

>21. Produce invoices from any third party to ENE for any work performed by a PLAINTIFF or PUTATIVE CLASS MEMBER during the FLSA LIMITATIONS PERIOD.

[Dkt.#79-1](Capitalization in original). There was obviously significant overlap between the documents plaintiff could get from his opponent in this litigation and the documents he subpoenaed from a third party some two months later.

We may assume that in the two months that passed from the time the request was made to the defendant, counsel were involved in the usual back and forth about whether the requests were "burdensome" and "overbroad," etc. The Federal Rules of Civil Procedure, including Rule 45, demand more than unamplified and unexplained conclusions. Such generalized and unamplified objections, which have become commonplace, are all but meaningless, and thus are in themselves deemed to be meritless. *See, e.g., Wimo Labs LLC v. Polyconcept N.A, Inc*., 358 F. Supp. 3d 761, 763 n.2 (N.D. Ill. 2019)(collecting cases); *Boyer v. Gildea*, 2008 WL 4911267 (N.D.Ind. 2008); *U.S., ex rel. Roberts v. QHG of Indiana, Inc.,* 1998 WL 1756728 at 9 (N.D.Ind. 1998). These kinds of unilluminating objections violate the oft repeated warning that "saying so doesn't make it so." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). Nor does saying it repeatedly make it so. *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012).[2] In any event, we do know that EN's responses were due December 21, 2019, but that it was not until over two months later that plaintiff sought leave from Judge Chang to file a motion to compel. [Dkt. # 52].

It would seem that this was a course of action that should have been taken long before plaintiff sought to supplement whatever EN was producing or not producing by subpoenaing non-

---

[2] Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018).

4

parties. Instead, plaintiff went back and forth with Ameren for a month or so. There were a number of issues raised in the emails between counsel for plaintiff and counsel for Ameren. Suffice it to say, exchanges like these only serve to highlight the wisdom of Local Rule 37.2 not allowing exchanges of emails or letters to substitute for a telephonic or in-person conference. *See Jackson-El v. City of Markham*, 332 F.R.D. 583, 584 (N.D. Ill. 2019)*; BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 343 F. Supp. 3d 742, 744 (N.D. Ill. 2018)(collecting cases).

By the middle of February, the two had gotten to what seemed to be an acceptable arrangement. But then, on the evening of February 14th – ironically, Valentine's Day – Ameren's counsel wrote to plaintiff's counsel, saying: "Michael, we will agree to disagree. In any event, Ameren has decided to authorize EN to produce all of its invoices and purchase orders subject to the confidentiality order previously entered in this case. With this authorization, there is no need for Ameren to be burdened with the production." [Dkt. #72-3]. Plaintiff's counsel quickly responded, asking: "Thank you Phil. Have you already told EN's lawyers?" [Dkt. #72-4]. And Ameren's counsel assured him they just had. [Dkt. # 72-4].

Unfortunately, that didn't get it done. Two weeks later, on February 26th, plaintiff's counsel wrote Ameren's counsel to inform them that EN had not produced the documents and that plaintiff would be going ahead with a motion to compel compliance with the subpoena to Ameren. Ameren's counsel expressed surprise and said it would take some time to produce the documents if plaintiff wanted them from Ameren instead. Plaintiff's counsel wasn't having it, and accused Ameren's counsel of game-playing, and told Ameren's counsel that the judge would not appreciate their (claimed) obstruction. [Dkt. #72-4]. And so, here we are; plaintiff wants full compliance with the subpoena, regardless of what is going on in discovery between him and defendant, and he contends

that Ameren has waived any objections it might have had. But, we need not get to the waiver issue, because the subpoena to Ameren was improper *ab initio*.

Moreover, the course plaintiff's counsel pursued after serving the subpoena was somewhat harsh – and needlessly so. Rule 45 of the Federal Rules of Civil Procedure governs subpoenas directed to nonparties to litigation. While the public is entitled to every man's evidence, *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996); 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940), use of subpoenas to obtain that evidence is not unlimited, especially when the target is a nonparty. Under the Federal Rules of Civil Procedure, the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). Relevance alone is not outcome determinative. Accordingly, the attorney choosing to issue "a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(1).

Rule 45 also instructs courts that they "must protect" non-parties "from significant expense resulting from compliance" with a subpoena. Rule 45(d)(2)(B)(i) and (ii). Accordingly, courts have consistently held that "non-party status" is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *See, e.g., Little v. JB Pritzker for Governor*, 2020 WL 1939358, at *1 (N.D. Ill. 2020); *HTG Capital Partners, LLC v. Doe(s)*, 2015 WL 5611333, at *3 (N.D. Ill. 2015); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013); *United States v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, at *4–5 (N.D. Ill. 2005); *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, at *4 (N.D. Ill. 2005). Non-parties are afforded this special consideration, because "[they] have a different set of expectations" than parties. *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 WL 5026228, at

\*2 (N.D.Ill. 2015). To put it colloquially, while plaintiff and defendant have different horses in this race, Ameren has none and it is understandable if it is unenthusiastic about being forced to enter the race when the plaintiff has not required EN Engineering to first fulfill the particular discovery obligations it has in the case. *Robinson v. Stanley,* 2010 WL 1005736, at \*3 (N.D. Ill. 2010).

As already noted, it is beyond dispute that about half of the categories of documents demanded by the subpoena are duplicative of the discovery requests plaintiff properly served on the defendant. A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative. *See* Fed. R. Civ. Proc. 26(b)(2). *See also Tresona Multimedia, LLC v. Legg,* 2015 WL 4911093, at \*3 (N.D. Ill. 2015)("A plaintiff does not demonstrate a compelling need to seek duplicative third-party requests simply because a party in the underlying action fails to comply with document requests for the same information."); *Parker*, 291 F.R.D. at 188 (quashing the plaintiff's subpoena served upon a non-party because either the documents sought were duplicative of discovery requests directed to the defendant or the requests were invalid as overly broad, burdensome, irrelevant or previously could have been the subject of discovery); *Ameritox, Ltd. v. Millennium Labs, Inc.*, 2012 WL 6568226, at \*2–3 (N.D.Ill. 2012) (granting a motion to quash nonparty subpoenas "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation"); *In re Heartland Inst.*, 2011 WL 1839482, at \*4 (N.D.Ill. 2011) (granting third-parties' motion to quash a subpoena because other reasonable sources existed for the plaintiff to obtain the information via document requests to the defendants in the underlying action for the same information went unanswered). This is reason enough to deny plaintiff's motion.

Plaintiff's counsel insists that he satisfied his acknowledged burden to avoid harassing a non-

7

party because he "conferred with Ameren's counsel over the course of 3 months to resolve this dispute . . . ." [Dkt. #81, at 5]. But that assertion ignores the underlying legal issue in the case, and, if taken to its logical limits, would allow a litigant to seek information from a non-party without or before first seeking it from a party in the case. Under our Local Rules an exchange of emails was not really "confer[ring]" – certainly not in the Local Rule 37.2 sense. *See* Dkt. # 94. And steadfastly returning to the position taken at the start of negotiations may well not qualify as the kind of good faith interchange envisioned by Local Rule 37.2. *See, e.g., Infowhyse GmbH v. Fleetwood Grp*., 2016 WL 4063168, at *1 (N.D. Ill. 2016); *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc*., 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Gunn v. Stevens Security & Training Servs., Inc*., 2018 WL 1737518, at *3 (N.D. Ill. 2018)("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."). And, obdurate insistence on a position without support is, more importantly, a violation of the Federal Rules of Civil Procedure and the most basic principles governing the conduct of lawyers conducting discovery.

Plaintiff's counsel also contends that his attempt to exhaust all other avenues of obtaining the documents is shown by the fact that he sought leave to file a motion to compel production from defendant on March 6th. [Dkt. #81, at 2]. This is just a head-scratcher. How is filing a motion to compel production from your opponent *over two months* after serving a subpoena on a non-party exhausting all other avenues *before* going after a nonparty? This would certainly seem to be no more than a case of putting the cart before the horse and targeting a nonparty rather than following through with the ordinary course of discovery from an opponent in the litigation. This much is highlighted by plaintiff's counsel's characterization of the dispute with Ameren:

8

> Rather than producing responsive documents . . . Ameren has shifted the blame to ENE. But Ameren authorized ENE to produce the invoices and purchase orders, and then seemingly abdicated its own responsibility to do so under Rule 45.

[Dkt. #81, at 1]. This would seem to be an obvious case of question-begging. It is not Ameren shifting blame, but rather plaintiff shifting responsibility for producing the documents – a responsibility that is, in the first instance, defendant's and which would seem easy to fulfill or require be fulfilled by a party to the case.

The upshot of all this is that plaintiff ought to have pursued discovery from the company he sued before targeting a non-party. The legitimacy of the subpoena to a non-party is determined by far more than an examination of the relevancy of the materials sought or the fact that it may be simpler for the subpoenaing party to insist on production from a non-party rather than taking reasonable steps to require the non-cooperative party to comply with its basic discovery obligations. In sum, the subpoena to Ameren violated the basic prohibition against heaping unnecessary burdens on non-parties because the plaintiff did not exhaust other avenues before targeting a non-party to the lawsuit. Accordingly, the plaintiff's Motion to Compel Compliance With the Non-party Subpoena [Dkt. #72] is denied. Plaintiff's motion wisely does not ask the court to parse whatever appropriate requests he may have made on Ameren from those that may have been inappropriate for one reason or another. [Dkt. ## 72, at 6; 81, at 9]. Nor should it. It is not a court's job to become, in effect, a lawyer for one of the parties. *See Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008); *Kay v. Brd. of Ed of City of Chicago*, 547 F.3d 736, 738 (7th Cir. 2008); *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1214 (7th Cir. 1993); *United States v. Lanzotti*, 199 F.3d 954, 960 (7th Cir. 1989). *See also* cases collected in *Minemyer v. R-Boc Representatives, Inc.,* 605 F.Supp.2d 797, 802-803 (N.D.Ill. 2009).

## CONCLUSION

The plaintiff's Motion to Compel Compliance with the Non-party Subpoena [Dkt. #72] is denied. This does not mean that appropriate requests by plaintiff can be ignored with impunity. They cannot. Judge Easterbrook's opinion in *Rickels v. City of South Bend, IN*, 33 F.3d 785, 786-87 (7th Cir. 1994) ought not be overlooked.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 6/16/20