UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN ROSSMAN, individually and for others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 19-cv-05768 |
| v. | ) ) | Judge Edmond E. Chang |
| EN ENGINEERING, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kevin Rossman brings this proposed collective-action lawsuit against his former employer, EN Engineering, alleging violations of the Fair Labor Standards Act, the Illinois Minimum Wage Act, and the Massachusetts Minimum Wage Act.[1] According to Rossman, EN Engineering paid certain workers the same hourly rate for all hours worked, even for what should have been overtime hours. R. 1, Compl.[2] Rossman has now filed a motion for stage-one conditional certification of a proposed collective under the FLSA, 29 U.S.C. § 216(b). R. 27, Mot. Cond. Cert. For the reasons discussed below, the Court grants the motion and enters a conditional certification.

## I. Background

Kevin Rossman is a former employee of EN Engineering ("ENE" for short), an environmental consulting firm. Rossman was employed at ENE as a Pipeline Welding

---

[1] The Court has subject matter jurisdiction under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a).
[2] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Inspector from April 2018 until April 2019. R. 30, Rossman Decl. ¶ 3 (sealed).[3] For reference, ENE employs four different types of Inspectors, including Utility Inspectors, Welding Inspectors (like Rossman), Coating Inspectors, and Chief Inspectors. *See* R. 38-1, Hulet Decl. ¶ 8.

The Inspector position required Rossman to spend time working on projects in Illinois, Massachusetts, and Missouri across five different work sites. Rossman Decl. ¶ 3 (sealed). According to Rossman, when he was initially hired for the job, he was told that he would be paid by the hour. *Id.* ¶ 5. (sealed). Rossman further asserts that this hourly payment scheme was reflected in both his weekly time sheets and his pay stubs. *Id.* ¶¶ 5, 8 (sealed). Indeed, Rossman alleges, he was only paid for the hours recorded on his time sheet, and if he did not work any hours during a particular week, then he would not be paid for that week. *Id.* ¶ 6 (sealed). Conversely, if Rossman worked more than 40 hours during a particular week, then he would be paid at the same hourly rate for all hours worked with no extra for overtime hours. *Id.* ¶ 7 (sealed). This practice is referred to as "straight time for overtime." *Id.* ¶¶ 8, 10 (sealed).

During his time at ENE, Rossman claims to have worked an average of 60 hours per week. Rossman Decl. ¶ 9 (sealed). Beyond his individual case, Rossman also claims that, based on his personal observations, he knows that other ENE

---

[3]Although the Court denotes when the Opinion cites to a sealed exhibit with the parenthetical (sealed), nothing in this Opinion discloses information that could possibly overcome the Seventh Circuit's high bar for sealing facts that are relied on for judicial decision-making. *Baxter Int'l v. Abbott Laboratories*, 297 F.3d 544, 546-47 (7th Cir. 2002). So no redactions appear in this Opinion.

Inspectors and Project Consultants are also paid straight time for overtime when they work more than 40 hours a week. *Id.* ¶¶ 10-11 (sealed). In addition, just like Rossman, when other ENE Inspectors and Project Consultants work less than 40 hours in a week, they are only paid for the hours that they actually worked. *Id.* ¶ 11 (sealed). For example, Bryan Eickmeyer was employed by ENE as a Gas Utility Inspector from February to July 2017 and worked at two different job sites in Illinois.[4] R. 27-2, Mot. Cond. Cert., Exh. 2, Eickmeyer Decl. ¶ 3. Eickmeyer echoes Rossman's observations in terms of being told that he would be paid on an hourly basis, receiving straight time for overtime, and not being paid for hours that he did not work. *Id.* ¶¶ 5-7.

Rossman now seeks to conditionally certify a collective of other Inspectors who allegedly worked on an hourly basis but were paid straight time for overtime.

## II. Legal Standard

Under the Fair Labor Standards Act, employees—unless they are subject to an exemption—are entitled to receive overtime pay at a rate of 1½ times their regular hourly rate for all hours worked above the standard 40-hour workweek. 29 U.S.C. §§ 207, 213. To enforce this right, employees are allowed to "bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). "If the plaintiffs are able to show that other potential plaintiffs are similarly situated, courts may conditionally certify the case as a collective action and allow the

---

[4] ENE argues that Eickmeyer's potential claims are barred by the FLSA's two-year statute of limitations. Def. Resp. Br. at 12 n.9. Even if that were true, his declaration is still relevant evidence to the conditional-certification analysis.

3

plaintiffs to send notice of the case to similarly situated employees who may then opt in as plaintiffs." *Nicks v. Koch Meat Co., Inc.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017).

The Seventh Circuit has made clear that district courts have broad discretion to manage FLSA collective actions. *Alvarez*, 605 F.3d. at 449. "Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process." *Nicks*, 265 F. Supp. 3d at 848 (cleaned up).

The first step of that process—which is the only step at issue in this case—is the conditional-certification stage. In order to make it past this first stage, plaintiffs must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Gomez v. PNC Bank, Nat'l Assoc.*, 306 F.R.D. 156, 173 (N.D. Ill. 2014) (cleaned up). Although modest, the conditional certification standard is "not automatic and is not a mere formality." *Hannah v. Huntington Nat'l Bank*, 2020 WL 2571898, at *6 (N.D. Ill. May 21, 2020) (cleaned up). For instance, step one requires more than "simply claiming that the FLSA has been violated." *Nicks*, 265 F. Supp. 3d at 849 (cleaned up). Rather, plaintiffs must point to "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation." *Id.* (cleaned up). To do this, plaintiffs "must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the

4

law." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (cleaned up).

At the same time, district courts, in evaluating the first step, are not meant to "make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013). To be sure, just as in the class-certification context, it is possible that the governing legal principles will affect the conditional-certification decision. For example, whether employees are subject to a common policy or practice for purposes of certification might very well depend on what the FLSA deems relevant as a payment practice. But at the end of the day, step one is only meant to encompass a "low standard of proof." *Id.* at 855.

### III. Analysis

In this case, Rossman seeks to conditionally certify an FLSA collective action comprising the following members:

> All Project Consultants/Inspectors who worked for ENE at any time during the last three years who were paid the same hourly rate for all hours worked, including those hours in excess of 40 hours in single workweek, or, "straight time for overtime"

R. 28, Pl. Br. at 1. According to Rossman, all of these employees were subject to ENE's common "straight time for overtime" payment scheme, which had the effect of denying the employees overtime pay in violation of the FLSA. *Id.* at 12.

### A. Applicable Standard

As a threshold matter, ENE asks the Court to apply a more stringent, "intermediate" standard of review to Rossman's conditional-certification claim,

5

instead of the "lenient" modest-factual-showing standard, because "significant discovery has already taken place." R. 58, Def. Resp. Br. at 4. The Court declines to do so. Contrary to ENE's implication that the caselaw definitively supports a heightened standard, "courts in this District generally apply the 'modest factual showing' standard to FLSA certification cases where the parties have engaged in some discovery but have not engaged in explicit and substantial class discovery." *Nicks*, 265 F. Supp. 3d at 850; *see also Vargas v. Sterling Eng'g, Inc.*, 2020 WL 1288982, at *2 (N.D. Ill. Mar. 18, 2020) ("Some discovery, however, does not automatically trigger a more stringent standard."); *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, 2016 WL 3693426, at *3 (N.D. Ill. July 12, 2016) ("Although discovery has been ongoing for several months, Defendants have not produced a list of potential plaintiffs, and the parties have not had an opportunity to engage in discovery with the potential class members."). Here, too, some discovery has been completed, but at the end of the day, it is still very much ongoing. And significantly, Rossman has not yet had a full opportunity to engage in targeted discovery with the other potential class members. *See Girolamo*, 2016 WL 3693426 at *3 ("As no notice has gone out, the parties have not had an opportunity to engage in discovery of members of the potential class."). So the usual "modest factual showing" standard applies.

### B. Conditional Certification

Under that standard, Rossman has made the requisite "modest factual showing" that the proposed plaintiffs are "similarly situated" for purposes of

conditional certification. The crux of the supporting evidence comes from Rossman himself. In his declaration, for instance, Rossman clearly alleges that he was hired as an hourly employee, worked an average of 60 hours per week, and was paid the same hourly rate for all hours worked. Rossman Decl. ¶¶ 5, 7, 9 (sealed). In support of his hourly status, Rossman points to a roughly a year's worth of his pay stubs, which all bear the designation "Payment Basis: Hourly" and list his overtime compensation in an "Overtime - Straight Time" category. R. 27-3, Mot. Cond. Cert., Exh. 3. Rossman also points to a May 2018 email in which an ENE Human Resources Representative informed Rossman that he was accidentally paid for overtime at the time-and-a-half rate and that he should have only received straight time. R. 27-4, Mot. Cond. Cert., Exh. 4. *See also* Mot. Cond. Cert. Exh. 3 at 3. Rossman's experience is also broad because he worked at five different job sites across three different cities but continued to receive the same straight-time-for-overtime pay throughout his employment. Rossman Decl. ¶¶ 3, 7 (sealed). This is not a case, for instance, where he is only able to point to his individualized experience with a single manager at a single branch of a company. *See Hannah*, 2020 WL 2571898, at *7 (rejecting conditional certification of national class where plaintiff "failed to present evidence that anyone outside *his own office* had a similar experience") (emphasis in original); *Black v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *10 (N.D. Ill. 2017) (rejecting conditional certification outside of two specific restaurant locations).

But importantly, Rossman does not stop there. Rather, he also provides a declaration from Eickmeyer, who worked in a slightly different Inspector role, under

7

a different supervisor, at two different jobsites, yet was subject to the exact same straight-time-for-overtime payment practice that Rossman alleges. Eickmeyer Decl. ¶¶ 3-4. Eickmeyer also alleges that he was told that he was being hired as an hourly employee, that he was not paid for hours that he did not work, that he typically worked 50-60 hours per week, and that he was paid his regular hourly rate for all hours worked, including overtime. *Id*. ¶¶ 5-9. So, at least one other person is "similarly situated" for purposes of this inquiry.

Then, on top of that, both Rossman and Eickmeyer assert that they each personally knew of other Inspectors who regularly worked more than 40 hours per week and were paid straight time for overtime, regardless of which type of Inspector they were, their job location, or any other individualized factor. Rossman Decl. ¶¶ 10-11 (sealed); Eickmeyer Decl. ¶¶ 10-11. Indeed, Rossman backs up his assertions with roughly 400 pages of pay stubs from other employees. *See* R. 30-4, Mot. Cond. Cert., Exh. 8 (sealed); R. 30-5, Mot. Cond. Cert., Exh. 9 (sealed). Although the names are redacted, the pay stubs do include employee numbers (not Rossman's or Eickmeyer's), showing that other Inspectors beyond just Rossman and Eickmeyer are receiving straight time for overtime in alleged violation of the FLSA. Like Rossman's pay stubs, these pay stubs also include the "Pay Basis: Hourly" designation and list overtime compensation under an "Overtime – Straight Time" category. *Id*. (sealed).

Finally, Rossman proffers evidence suggesting that, despite the fact that there were multiple types of Inspectors, all Inspectors performed similar job duties. Specifically, Rossman points to ENE's own job description for the role, which uses a

8

single job title, "Project Consultant/Inspector," without distinguishing between the different types of Inspectors. *See* R. 27-13, Mot. Cond. Cert., Exh. 13. The job description page goes on to list the primary duties and responsibilities for the "Project Consultant/Inspector" role, again, without distinguishing between the different types of Inspectors. *Id*. Not only that, but ENE's own executives testified that Inspectors are hired without regard to any particular Inspector role, R. 44, Exh. B, Kulik Dep. Tr. at 52:18-53:8, and that Inspectors are all paid the same way, *id*. at 176:3-14.

In short, Rossman has successfully made the modest factual showing that Inspectors, no matter what type or where they were assigned to work or who their supervisors were, frequently put in more than 40 hours of labor per week but were all compensated on a straight time for overtime basis. Without delving into the merits of these allegations, which will undoubtedly come later, the requirements for conditional certification have been met for purposes of this motion.

ENE offers several counterarguments, but none are persuasive. ENE's main response to the conditional certification motion is that all four Inspector positions are properly classified as "exempt," and thus not entitled to overtime, under the FLSA's executive, professional, administrative, and highly compensated exemptions. Def. Resp. Br. at 8 (citing 29 C.F.R. § 541.100, § 541.200, § 541.300). Whether an employee is exempt largely depends on two inquiries: a salary-basis test and a job-duties test. Given this analytical framework, ENE argues, there is no way that Rossman can be considered "similarly situated" to any of the other potential class members; any determination of liability in this case will ultimately come down to individualized

9

questions about whether Rossman himself was paid a guaranteed salary and whether Rossman himself performed non-exempt job duties. *See* Def. Resp. Br. at 9, 12.

This is all beside the point. Eventually, it will be up to ENE to prove that an exemption applied, and at that point, ENE will be free to point to evidence that the plaintiffs did in fact receive a guaranteed salary, or that their job duties did not entitle them to overtime pay, or any other argument related to the classification of the employees as exempt. But for now, ENE's response constitutes a "premature merit-based argument" that is far too fact-intensive and thus inappropriate for the conditional certification stage. *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *5 (N.D. Ill. Mar. 16, 2016).

For example, ENE challenges Rossman's "straight time for overtime" characterization of the Inspector payment basis, arguing that, instead, Inspectors were paid a "pre-determined guaranteed base salary basis with additional compensation." Def. Resp. Br. at 13-14. But nothing in that argument undermines the *commonality* of the policy articulated by Rossman: that ENE paid straight time for overtime to Inspectors in violation of the FLSA's overtime provisions, as demonstrated by Rossman's own declaration, Eickmeyer's declaration, as well as the 400 pages of pay stubs collected from other employees. Whether these employees were *in fact* paid some sort of guaranteed salary (and whether an exemption applies as a *legal* matter) is a purely merits-based determination that does not undermine that Rossman has sufficiently shown a common policy for purposes of proceeding to conditional certification.

10

ENE also argues that Rossman has failed to show how he is similarly situated to other employees given that the four different types of Inspectors (Utility, Welder, Coating, and Chief) perform vastly different job duties. Def. Resp. Br. at 11-13. In support, ENE devotes substantial portions of its briefing to outlining the various job duties for the four Inspector roles and emphasizing how different they are from one another. But, as explained above, Rossman has already put forth evidence that the job duties are the same. And that is enough to make it to conditional certification because at this stage, the Court is not supposed to (generally speaking) "make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman*, 949 F. Supp. 2d at 855-56.

Nor is Rossman required to show that other potential class members are interested in joining the lawsuit, as ENE claims. Def. Resp. Br. at 10, 13. There is no blanket rule in the caselaw supporting such a requirement. *See Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) ("Requiring a plaintiff to make an advance showing that others want to join would undermine the broad remedial goal of the FLSA.") (cleaned up); *Allen v. City of Chicago*, 2013 WL 146389, at *9 (N.D. Ill. Jan. 14, 2013) ("[C]ourts in this district generally do not require a plaintiff to produce evidence that other employees desire to join the collective action."). And in any event, even if such a requirement existed, Rossman has in fact located two opt-in plaintiffs: Eickmeyer, R. 24, and Steven Wright, R. 39.

11

## IV. Conclusion

For the reasons discussed above, Rossman's motion for conditional certification is granted as to the proposed collective action. To repeat, the following collective is conditionally certified on the federal claim and the state law claims:

> All Project Consultants/Inspectors who worked for ENE at any time during the last three years who were paid the same hourly rate for all hours worked, including those hours in excess of 40 hours in single workweek, or, "straight time for overtime."

That just leaves Rossman's proposed notice and consent forms. *See* R. 27-15. As an initial matter, Rossman asks the Court the approve his Method of Delivery and Reminder Notice proposals. Pl. Reply Br. at 14. The Court approves both. On methods of delivery, ENE does not take issue with Rossman's proposal for mail and email communication, but does object to text message and job-posting delivery. Def. Resp. Br. at 20. But, given the fact that potential class members are assigned to jobsites all over the country and oftentimes in remote locations, the Court agrees with Rossman that text message and job posting communications are reasonable in this case. With regard to telephone communications, however, the Court will hold off on deciding whether phone calls will be allowed until after the parties meet and confer about the content of the proposed phone script. Similarly, the Court finds that it is reasonable to approve Rossman's proposal to send a reminder notice given how far-flung the potential class members are.

As for the rest of the notice, however, ENE has highlighted several objections to the content of the proposed forms. Def. Resp. Br. at 19-20. Rossman has agreed to confer with ENE about those specific objections. Pl. Reply Br. at 14. The parties shall

confer on the content of the notice proposal by September 17, 2020. For what it's worth, the Court notes that ENE's concerns about using the title "Project Consultants/Inspectors" might be valid, Def. Resp. Br. at 19, and might require a modification of the proposed collective. In any event, after the conferral, Rossman shall file a motion proposing the agreed-upon notice (or, if not agreed-on, Rossman's version) by September 24, 2020.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 3, 2020