IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN ROSSMAN, Individually and For Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 19 C 5768 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| EN ENGINEERING, LLC, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

This is a conditionally certified FLSA collective action, covering a class defined as "[a]ll Project Consultants/Inspectors who worked for EN at any time during the last three years who were paid the same hourly rate for all hours worked, including those hours in excess of 40 hours in single workweek, or, 'straight time for overtime.'" [Dkt. #131, at 12]. The current discovery issue involves the attorney-client privilege. Unfortunately excessive claims of privilege are commonplace in modern litigation, and that they are often indiscriminately and improperly used on documents that do not truly qualify for protection. *Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 154–55 (N.D. Ill. 2020). *See also Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*, 2015 WL 2069280, at *6 (E.D. Pa. 2015)*; Falin v. Condo. Ass'n of La Mer Estates, Inc.*, 2012 WL 760831, at *1 (S.D. Fla. 2012); *Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co.*, 213 F.R.D. 422, 430 (D. Kan. 2003). The claims of privilege often are proved unsustainable when a party is required to properly support them. That is what happened here.

Defendant is withholding from discovery about 80 documents — over 400 pages of materials – under a claim of privilege – a claim the plaintiff thinks is inappropriate and excessive. More specifically, the parties present dispute stems from two affirmative defenses the defendant lodges against the plaintiff's claims back in September 2019. [Dkt. #14]. For the following reasons, the plaintiff's "Motion to Compel Documents on Privilege Log" [Dkt. #117] is granted in part and denied in part.

## ARGUMENT

### A.

First, as is *de rigueur* in the countless opinions resolving claims of privilege and challenges thereto, we begin with certain undisputed principles. The attorney-client privilege is one of the oldest and most widely recognized privileges of confidential communication. *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). It is intended to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Not all communications between the attorney and the client are privileged; "the privilege is in derogation of the search for the truth and, therefore, must be strictly confined." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir.2000).

The privilege applies "only if [the communications] constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir.1990). *See also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010)(party must show legal advice was sought, and communication was related to that purpose); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007)("Only those communications

which 'reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance' fall within the privilege."); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2019 WL 2774126, at *3 (N.D. Ill. 2019)(. . . documents do not acquire protection under the attorney-client privilege merely because they were transferred from client to attorney."); *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 895 (N.D. Ill. 2018) ("Merely communicating with a lawyer or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer."); *Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 3624084, at *2 (N.D. Ill. 2017)("... copying an attorney does not make a communication privileged, and it is not apparent that the purpose of the email was to solicit legal advice as opposed to business advice."); *Microproducts, Inc. v. Relational Funding Corp.*, 2002 WL 31133195, at *1 (N.D. Ill. 2002)(instruction from an attorney to employees to copy him as a recipient on any emails or documents was not by itself enough to make the document privileged).

 Since the attorney-client privilege only shields communications that were intended to be confidential, communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged. *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir.1997); *United States v. White*, 950 F.2d 426, 430 (7th Cir.1991). A fair number of the documents defendant characterizes as "privileged" fall into these categories, and will have to be produced without the question of waiver ever coming up.

 It cannot be stressed enough that there is no presumption in favor of finding a document to be immune from discovery under the attorney-client privilege. The privilege may serve its purpose,

3

but it is a limited purpose, and, unfortunately, it also serves to shield the truth from the fact-finder and runs counter to the right to every person's evidence. *Swidler & Berlin v. United States*, 524 U.S. 399, 411 (1998); *United States v. Nixon*, 418 U.S. 683, 709 (1974); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007); *In re Grand Jury Proceedings (Thullen)*, 220 F.3d 568, 571 (7th Cir. 2000). Accordingly, as has been said time and again, courts construe the privilege narrowly, *Swidler & Berlin*, 524 U.S. at 411, and are "reluctant to . . . read a[] [privilege] expansively unless to do so will serve a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *See also Shaffer*, 662 F.3d at 446. The party hoping to withhold evidence from the proceedings – and, to degrees that vary from case to case, thwart the fact-finders' efforts at uncovering the truth – has the burden of establishing the applicability of the privilege it asserts on a document-by-document basis. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011); *Logan*, 96 F.3d 977; *Binks Mfg.*, 709 F.2d at 1119.

Waiver comes to play when a party advances reliance on counsel's advice as evidence that it acted in good faith. *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502, DuPage Cty., Illinois*, 2019 WL 3386966, at *6 (N.D. Ill. 2019); *United States ex rel. Derrick v. Roche Diagnostics Corp.*, 2019 WL 1789883, at *1 (N.D. Ill. 2019). Most courts here have followed the Third Circuit's holding in *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994), for the general proposition that legal advice:

> is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

32 F.3d at 863. *See also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL 1804350, at *5

4

(N.D. Ill. 2018). A "party [impliedly] waives the privilege only when he or she 'has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.'" *U.S. Fire Insurance Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999). *See also Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995) ("[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation."). Clearly, a party cannot hide behind the privilege if he is relying upon privileged communications to make his case. Or, to quote the overused admonition: "the attorney-client privilege cannot at once be used as a shield and a sword." *Willy v. Administrative Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005). *Accord Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

That is, a party cannot use privileged information both offensively and defensively at the same time. *In re County of Erie*, 546 F.3d 222, 229 (2nd Cir. 2008); *Willy v. Administrative Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005). *Cf. Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995) ("We note that the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation").

In the end, the courts that have found implied waiver have concluded that a party may not advance a claim or defense that relies on materials that the adversary needs to effectively contest or impeach the claim. *See e.g., Sanofi-Synthelabo v. Apotex Inc.*, 363 F.Supp.2d 592, 594 (S.D.N.Y. 2005); *Motorola Sols., Inc.,* 2018 WL 1804350, at *7. But, while the sword stays sheathed, the privilege generally stands. *Id.* at *5.

**B.**

Here, waiver is implicated by two statutorily provided defenses. One, as the defendant concedes, came at the cost of waiver of the privilege. Sections 260 and 255(a) of the FLSA allow

5

employers to avoid liquidated damages and/or a longer statute of limitations if they can establish that they took steps in a good faith effort to ascertain and comply with the requirements of the FLSA. Because this defense puts legal advice at issue, defendant concedes that it has waived privilege over documents that relate to the 2011 classification and advice it received regarding the position at issue. But defendant seems to contend that just because a document refers to an employee that fits in the category of Project Consultant/Inspector in terms of job title, that employee might not have had "inspector" duties and so that document would not fall in the waiver group. [Dkt. #123, at 9]. Defendant explains that there were all kinds of inspectors, with different duties, and that an employee called a "Project Consultant" in a document may not have inspector duties at all. But Judge Chang has essentially rejected a similar argument for the purposes of conditional certification [Dkt. #38, at 3-6; #131, at 8-9, 11], and the court has no way of know if a reference to Project Consultants in a document means one that inspects or one that doesn't. It was defendant's choice to apply the title haphazardly, so the waiver encompasses those documents.

Defendant's other defense is the source of the bulk of the parties' current spat. Section 259 of FLSA allows employers to escape liability altogether if they can show that they were acting in accordance with an official administrative action or interpretation. Defendant is pointing to the outcome of a 2017 Illinois Department of Labor Audit, which found that its classification decision was proper, to establish a complete defense to liability. *See Smart v. Porter Paint Co.*, 630 F.2d 490, 497 (7th Cir. 1980)(" . . . no employer shall be subject to any liability . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation, of the agency . . . . 29 U.S.C. s 259(a)" (quoting the Act)). But, as the defense is limited to regulations, rulings, or

6

interpretations of the Administrator of the Wage and Hour Division of the Department of Labor, it is unlikely to hold up here. 29 U.S.C.§ 259(b)("The agency referred to in subsection (a) shall be -- (1) in the case of the Fair Labor Standards Act of 1938, as amended--the Administrator of the Wage and Hour Division of the Department of Labor."); *Hawkins v. Securitas Security Servs. USA, Inc.*, 2013 WL 1337158, at *6 (N.D. Ill. 2013); *Berg v. Newman*, 982 F.2d 500, 504 (Fed. Cir. 1992)("To apply the statute to a regulation issued by . . . an agency not referred to in section 259, would extend the section 259 exception beyond its scope."); *Hodgson v. Square D Co.*, 459 F.2d 805, 810 (6th Cir. 1972); *Reed v. Brex, Inc.*, 2020 WL 429451, at *6 (S.D. Ill. 2020).

Still, it remains in the case, as plaintiff has not attempted to strike it before Judge Chang in the twelve months since defendant filed its Answer. Plaintiff raises the argument here, but a magistrate judge has no authority to dismiss a claim or strike a defense in a case that has been referred for discovery supervision. The apparently strategic choice of plaintiff's counsel not to strike the affirmative defense has left a significant loose end here, and made resolution of this dispute quite a bit more troublesome than it needed to be.

In any event, plaintiff's position is that, if defendant is going to rely the imprimatur of the IDOL audit to bless its 2017 classification decisions, then plaintiff is entitled to see everything the defendant shared with the IDOL to get that result, whether privileged or not. [Dkt. #117, at 7-8]. In other words, the plaintiff sees no substantive difference between defendant's good faith defense of reliance on counsel for classifications in 2011 and defendant's reliance on counsel in the IDOL audit in 2017. Defendant argues that, although it relied on the advice of counsel for guidance as to how it should respond to the IDOL audit – not surprisingly, of course – it is not relying on *that legal advice* to prove or establish any element of a good faith defense under Sections 259, 260, or 255(a).

7

[Dkt. #123, at 10-12]. In other words, whatever legal advice went into the result of the audit, it's behind the curtain; pay no attention to what's behind the curtain.

Neither side cites a case in support of their positions. [Dkt. #117, at 7-9; #123, at 10-12; #129, at 4-6]. That's not terribly surprising, as the issue only seems to have come up no more than a handful of times. Essentially, the question is whether the defendant is relying on the administrative decision or regulation or is relying on the advice of counsel, generally in implementing or interpreting the decision. *See, e.g., In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 306 (5th Cir. 2020)(distinguishing between § 259(a) reliance on "applicable law, administrative regulations, orders, interpretations and/or administrative practice or policy enforcement" and reliance on legal advice and finding no waiver); *Harter v. CPS §. (USA) Inc.*, 2013 WL 5882712, at *2 (D. Nev. 2013)(no waiver where defendant produced and relied on all communications with DOL staff, not privileged communications or advice from their pre-litigation counsel, to support their defenses). *But see Scott v. Chipotle Mexican Grill, Inc.*, 2014 WL 7236907, at *6 (S.D.N.Y. 2014) (finding no difference between defenses under § 259 or § 260 and finding any distinction between the two a matter of "artful pleading," and so finding implied waiver "where it was evident that [defendant] did in fact have advice of counsel for the very topic at issue.").

In sum, the audit "curtain" does not shield documents from discovery, but there is no waiver of the privilege – if applicable – as to materials defendant doesn't use as a "sword." Obviously, had plaintiff chosen to test the defendant's §. 259 defense with a substantive motion sometime in the last twelve months, resolution of this current discovery quarrel would have a more solid foundation. Then we would know exactly what defendant would point to in defending its case. But we don't, and we are left to work with what we have been given at this point.

All that being said, these considerations inform the discretion exercised in the rulings on the individual documents at issue, which follow. As already noted, the class is defined as Inspectors/Project Consultants, so the Section 260 good faith waiver applies to documents dealing with those job titles. There is no efficient way to parse the various duties each employee might have had, and to do so would stand the proportionality requirement of Fed.R.Civ.P 26(b)(1) on its head given that this a routine discovery dispute in a garden-variety FLSA case. And, as already noted, it was defendant's choice to cavalierly apply those job titles. Accordingly, defendant has waived the privilege as to the following documents and they must be produced: 4, 6, 8, 9, 10, 11, 12, 13, 14.

As for a fair number of other documents, defendants have engaged in overreaching which, as discussed previously, seems to be all too common in claims asserting the privilege. For example, an employee timesheet – nothing more than the factual record of an employee's hours and pay – does not become privileged just because it may have been handed to an attorney. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981)(party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2019 WL 2774126, at *3 (N.D. Ill. 2019). It simply does not reveal a client confidence or legal advice. *See Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 405 (7th Cir. 2018)(privilege applies to communications "only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence.").

Similarly, a job description that does not reveal edits or comments from counsel does not reveal a confidence or legal advice. *See Jacob v. Duane Reade, Inc.*, 2012 WL 651536, at *3 (S.D.N.Y. 2012)(while job description was non-privileged business document, job description along

9

with advice re: drafting for regulatory compliance was privileged).[1] Moreover, if these materials were to be submitted for the IDOL audit, how could they be withheld from discovery as privileged? *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). And the defendant's claims of privilege that cover emails scheduling phone conferences, asking for a document, and exchanging pleasantries are somehow confidential or examples of having sought legal advice are meritless. It simply cannot in good faith be claimed that this sort of document reveals client confidences or legal advice. For example, the following cannot in good faith be claimed to be privileged: "Thanks again for your time today. Here are the Word versions you requested. Have a great weekend!" (Document 84). While defendant makes no more than a handful of such baseless claims, these kinds of claims appear far too often. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 185 (N.D. Ill. 2018); *Towne Place Condo. Ass'n*, 284 F. Supp. 3d at 899–900. There is even a case where counsel claimed a photograph of the toilet was privileged. *See, e.g., Urban 8 Fox Lake Corp., supra* at *4. With the foregoing principles in mind, we conclude the defendant has failed to meet its burden of establishing the following documents are privileged and they must be produced: 19-25, 31-33, 38, 45, 77-79, 81-86, 89-90, 103, 133-136, 138-149.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/7/20

---

[1] While defendant does not develop an argument that any of these documents are protected by the work product doctrine – indeed, it only mentions "work product" once in its brief, in passing [Dkt. #123, at 11] – attorney comments on documents such as job descriptions or job offer letters clearly reveal mental impressions and are protected from discovery. Fed.R.Civ.P. 26(b)(3)(A)(ii); *Hickman v. Taylor*, 329 U.S. 495 (1947); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010)